UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...............................................................................X
                                                  :

UNITED STATES OF AMERICA,      :    17 Cr. 413 (AKH)

       -against-                          :    ECF Case

ALI KOURANI,
       Defendant.

...............................................................................X


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS


ALEXEI SCHACHT ATTORNEY A LAW

Alexei Schacht
123 West 94th Street
New York, New York 10025
(646) 729-8180
alexei @schachtlaw.net

Attorney for Defendant Ali Kourani

PRELIMINARY STATEMENT

This motion is about the way in which FBI agents improperly manipulated the defendant and his former lawyer into having the defendant make self-incriminating statements in a series of five non-custodial interviews. These illegally obtained statements now form the heart of the case against the defendant, as revealed in the complaint that quotes extensively from these interviews.

The agents accomplished this manipulation by falsely promising that the conversations they were having would remain confidential and by agreeing that the defendant would not be prosecuted based upon the information that he provided to the agents. The agents also misled Mr. Kourani and his then lawyer in other ways; and collectively the agents' actions render the statements involuntary. As such, these statements should be suppressed.

STATEMENT OF FACTS

Between about 2012 and 2016, the Government repeatedly approached the defendant at airports and in other public places asking him for information about Hezbollah, a State Department designated terrorist organization of which it suspected him of being a member. He repeatedly rebuffed the Government agents that spoke to him. During several of these meetings he was offered money by the FBI in exchange for being an informant against Hezbollah. He refused to take any money and denied that he had any information that the FBI wanted and he told the FBI agents that they could not be trusted.

Eventually in the Spring of 2017, worried about seeing his children again[1] and his relatives' safety, the defendant got a lawyer to help him to speak with the FBI. However, the

---

[1] Because his wife is not a citizen she was not allowed in the country and so could not bring the children.

1

defendant had several conditions that he wanted met. He wanted to not be charged with any crimes and he wanted to insure his family's safety and to be able to see his children.

The FBI promised confidentiality and agreed to the defendant's lawyer's request that what would be said would not be used against him. The interviewing FBI agents did say that they were capable of providing immigration help and other security related benefits to Mr. Kourani's family.

Before the second meeting the defendant's lawyer gave the FBI a written document summarizing, albeit quite poorly, the agreed upon conditions from the first meeting and the initial telephone conversation Mr. Denbeaux had with the FBI. This document is clear though that there would be no prosecution and that Mr. Denbeaux and Mr. Kourani are basically disappointed that the defendant's family's safety was not being guaranteed.

At the second meeting, however, the FBI promised that they could: 1) help the defendant to see his children in Canada within 6 weeks; 2) and to get his sister and father to the United States within two months and 3) to get his children safely to the United States no later than the end of August, 2017.

The defendant was interviewed in the presence of his lawyer on 5 separate occasions before being arrested. The Complaint and subsequent indictment, are based almost solely upon the defendant's own statements which he was told would not be used against him. The Department of Justice also issued a Press Release describing various facts admitted by the defendant and breaching in the most stark fashion the FBI's promise of confidentiality (Exhibit A). We now seek suppression of the statements made at those five meetings and all subsequent evidence that were the fruits of those involuntarily made statements.

ARGUMENT

THE STATEMENTS BY MR. KOURANI TO THE FBI SHOULD BE SUPPRESSED BECAUSE THEY WERE INVOLUNTARILY MADE

The FBI employed lies and deception in violation of the Due Process Clause of the Fifth Amendment so as to render the incriminating statements made by Mr. Kourani involuntary and inadmissible.

"The test of voluntariness [of a confession] is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined....'" *Rogers v. Richmond*, 365 U.S. 534, 544 (1961). If the government's use of trickery and deception is sufficiently egregious then it may render a confession involuntary and suppressible. Courts have followed a basic test for determining voluntariness. Because "[n]o single criterion controls whether an accused's confession is voluntary[,] whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988).

This totality test of voluntariness centers on "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of the law enforcement officials." *Id.* at 901–02. After considering these factors, the court decides whether "under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act." *Id.* at 902.

To prevail on a claim of trickery and deception under the voluntariness test, the defense "must produce clear and convincing evidence that the [FBI] agents affirmatively misled [the defendant] as to the true nature of [their] investigation." United States v. *Okwumabua*, 828 F.2d 950, 953 (2d Cir. 1987) (*citing United States v. Serlin*, 707 F.2d 953, 956 (7th

3

Cir.1983)). It must also be shown that the misrepresentations materially induced the defendant to make incriminating statements. *United States v. Mast,* 735 F.2d 745, 750 (2d Cir. 1984).

Inculpatory statements are not involuntary simply when they result from a desire to cooperate, or from a defendant's ignorance of, or inattention to, his right to remain silent. *Id.* Further, the FBI agents' failure fully to explain the purpose of the interviews " 'does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead.' " *Okwumabua*, 828 F.2d at 953 (*quoting Serlin*, 707 F.2d at 956).

Indirect or general promises of leniency usually are not enough to render a confession involuntary. "In assessing the totality of the circumstances, vague promises of leniency for cooperation are just one factor to be weighed in the overall calculus and generally will not, without more, warrant a finding of coercion." *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002) (finding a statement voluntary where government agent said the prosecutor and judge would be made aware of the defendant's cooperation).

On the other hand, falsely promising specific favorable treatment when the questioner does not intend to honor the promise may cross the line and overcome a defendant's will to remain silent. *See United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995). And sometimes, even falsity is not enough: not all "[p]loys to mislead a suspect or to lull him into a false sense of security" are necessarily coercive. *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).

Ultimately, although law enforcement's affirmative misrepresentations could be coercive enough to render a defendant's statement involuntary, *United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991) (discussing waiver of the Fifth Amendment privilege), a statement should not be suppressed where a defendant merely "was moved to cooperate, rather than coerced." *United States v. Corbett*, 750 F.3d 245, 253 (2d Cir. 2014). Simply stated, the question is

4

whether a promise is false and specific enough to coerce a defendant to confess against his will. In the words of the Second Circuit, an officer's touting "unfulfillable promises or certain other misrepresentations...might render a confession involuntary," largely "because they overcome his desire to remain silent." *Gaines*, 295 F.3d 293, 299 (2d Cir. 2002).

The case of *United States v. Haak,* 215 F.Supp.3d 218 (W.D.N.Y 2016), is instructive. It involved a defendant who voluntarily spoke with government agents in a non-custodial setting but because he made statements under the mistaken belief that what he said would not be used against him to prosecute him those statements were suppressed.

As the Court in *Haak* ruled, "[t[here can be little doubt that Detective Zawierucha promised that in exchange for *Haak*'s cooperation, he would not be charged. Detective Zawierucha may not have made that promise in so many words, but his message was nevertheless loud, clear, and unmistakable." *United States v. Haak*, 215 F.Supp.3d at 228. The facts here are even more egregious than in *Haak*.

Now I analyze the facts here in light of *Haak* and the standard enunciated in *Green v. Scully*.

First, the characteristics of the accused:

At the outset, the defendant had been under tremendous law enforcement pressure for years, having been detained, questioned and searched on numerous occasions. The FBI's actions cost the defendant his job and, more, put tremendous pressure on him. And more, the FBI knew that his family members' lives were in danger in Lebanon from Hezbollah. The defendant, in other words, was under tremendous psychological pressure, some of it caused by the FBI. Indeed, he was being treated by mental health professionals for, among other things, the terrible stress he was under from worrying about his family and because of the FBI's pressuring of him. The pressure he was under that was not caused by the FBI, however,

5

might have been solved by the FBI had the FBI wished to help insure his family's safety. That is the background to what happened next which is that he went to the FBI sensing that they could protect his family and facilitate his desire to help the Government.

Second, the conditions of the interrogation:

The defendant, knowing he had repeatedly been offered benefits, including cash, for helping the FBI got a lawyer to help him to speak to the FBI. The meetings were non-custodial and in his own lawyer's office at Seton Hall Law School. The conditions, when combined with the statements by the FBI and his lawyer, clearly conveyed to the defendant that what he would say would not be used against him. There was no confusion or ambiguity in this falsehood.

Third, the conduct of the law enforcement officials:

The defendant specifically wanted confidentiality and that was promised to him. That promise was not vague. It was specific and made to an attorney. The promise of confidentiality was even memorialized in an FBI Form 302 (Exhibit B). Mr. Kourani did not want to be arrested or prosecuted based upon what he would tell the FBI. Mark Denbeaux got the FBI to agree to these terms and Denbeaux made a writing that he gave to the FBI memorializing this "no prosecution" promise (Exhibit B to the Denbeaux Declaration).

The FBI eventually guaranteed Mr. Kourani's family's safety and said that they would do all that they could to help him. They offered to get him a job. The defendant sent his resume to the FBI. There can be no doubt that in the defendant's mind what he would say to the FBI would not get him arrested or be used against him. He thought the FBI was getting him a job. There is simply no prior case with a fact pattern that is so egregious and unique, even *Haak* is far less so. Clearly Mr. Kourani was misled about the nature of the investigation in that he thought he would not be arrested based upon what he said. The key issue about

6

which the FBI misled him induced the defendant to talk.

Significantly, the offers to help his children and to get him a job were possibly less guaranteed than the promises of confidentiality and non-prosecution, inasmuch as Mr. Kourani and Mr. Denbeaux argued with the FBI about the slowness of the FBI's help for his family. There were never any arguments at all about confidentiality or prosecution.

Obviously all of these facts combined to overcome the defendant's natural reticence to talk to the FBI. They had been questioning him for years and he never told them anything meaningful. He was in essence silent. When things in his life changed, he wanted to help the Government in order to help his family and to see his children and had a lawyer seek out the correct people in the Government. That lawyer got the defendant the guarantees he wanted. The defendant's will to remain silent was totally overcome by the false promises of the FBI, made not only to him but also to his lawyer. As a result, these statements were involuntary and ought to be suppressed.

### ALL EVIDENCE OBTAINED AS A RESULT OF UNCONSTITUTIONAL INTERROGATIONS SHOULD BE SUPPRESSED AS FRUIT OF THE POISONOUS TREE

Evidence obtained through direct or indirect violation of an individual's Fourth rights must be excluded from trial as fruits of the poisonous tree. *See Brown v. Illinois*, 422 U.S. 590, 604–05 (1975) (finding statements made after an illegal arrest inadmissible as fruits of the poisonous tree); *Wong Sun v. United States*, 371 U.S. 471, 484–85 ("The exclusionary prohibition extends as well to the indirect as the direct products of such [unlawful] invasions."). Because Kourani only made admissions to the agents after being promised that what he said would not be used against him, all subsequent statements and evidence obtained therefrom should be excluded from trial.

Such evidence includes, but is not limited to, all statements made following his arrest and while in custody and all evidence obtained during the execution of a search warrant at his home. This search warrant was based on the statements made by the defendant in his non-custodial interviews and would not have occurred without the illegally obtained statements.

## CONCLUSION

For the foregoing reasons, Ali Kourani respectfully moves for an Order suppressing all statements, and any other evidence obtained from him in violation of his constitutional rights, or in the alternative, for a hearing on the issues raised herein, and for any other relief this Court deems just and proper.

Dated: January 9, 2018
      New York, New York

ALEXEI SCHACHT ATTORNEY AT LAW

By:    /s/ Alexei Schacht

Alexei Schacht
alexei@schachtlaw.net
123 West 94th Street
New York, New York 10025
Tel: (646) 729-8180

Attorney for Defendant Ali Kourani

TO:    A.U.S.A. Emil Bove
         A.U.S.A. Amanda Houle
         U.S. Attorney's Office for the Southern District of New York
         One St. Andrews Plaza
         New York, NY 10007