UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
UNITED STATES OF AMERICA                                     :
                                                             :
        - v. -                                               :    Case No. 17 Cr. 413 (AKH)
                                                             :
ALI KOURANI,                                                 :    **DECLARATION OF**
                                                             :    **MARK DENBEAUX**
        Defendant.                                           :
                                                             :
                                                             :
............................................................ X

STATE OF NEW YORK            )
COUNTY OF NEW YORK           : ss.:
SOUTHERN DISTRICT OF NEW YORK )

    Mark Denbeaux, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

    1.     I am an attorney and Professor at Seton Hall University Law School. I have taught courses in constitutional law, criminal law and evidence. I am also the Director of the Seton Hall Law School Center for Policy and Research, which is best known for its dissemination of the internationally recognized series of reports on the Guantánamo Bay Detention Camp. Attached to this Declaration as Exhibit A is a copy of my Curriculum Vitae.

    2.     On about February 28, 2017, I called the FBI and left a message with FBI Special Agent Kerri Shannon that I had a client wishing to speak with the FBI. We exchanged calls and eventually I told her that my client was Ali Kourani, the defendant in this case. On about March 22, 2017, I spoke to FBI Special Agents Keri Shannon and Joseph Costello on the telephone about my client meeting with them; we scheduled the meeting to occur during the next several

days. I said that I knew that the FBI had been talking to my client and I wished to know more about what the FBI wanted from him. The FBI said that Mr. Kourani was well aware from his prior interviews what the nature of the FBI's interest was. I mentioned that the defendant was very nervous about his and his family's physical safety should anyone find out that he was talking to the FBI. I was assured that any meeting would "remain confidential."

3. We agreed to arrange a meeting and, on about March 24, 2107, Ali and I met Shannon and Costello in my office at Seton Hall Law School in New Jersey for what would be the first of five (5) meetings with the FBI. I understand that current defense counsel seeks to suppress the statements made by Mr. Kourani at each meeting. This declaration is made in support of that motion but does not contain every fact I know about this case.

4. At the outset, and repeatedly, Mr. Kourani expressed, among many other things that his family in Lebanon was in grave danger and would be even more so after he talked to the FBI. While no exact promises could be made that might insure the family's safety, the agents promised that they would do all that they could to: 1) get my client to see his children in Canada; 2) get my client's sister and father to the United States and 3) get my client's children safely to the United States no later than the end of August, 2017. I specifically remember Agent Shannon mentioned the August time frame regarding the children. However, because they had to rely on ICE and the State Department for help with visa and other issues there were delays that might alter these timetables. But they conveyed the sense that they were guaranteeing help with insuring safety.

5. Over the following months I repeatedly told the FBI agents that they had promised to secure my client's relatives' safety but the agents pushed back about this and said that while they would try they could not guarantee it. However, there was no dispute whatsoever

that my client would not be arrested based upon what happened at the meetings and that the information he gave would be kept between us and the agents' supervisors and not used against him.

6. Shortly after the first meeting I sent a text message to the FBI stating that I knew there would be no "promises" to Mr. Kourani. What this referred to was the fact that they had just told us that they would try but could not guarantee that they would: 1) get my client to see his children in Canada in less than 6 weeks, 2) get my client's sister and father to the United States in no more than two months and 3) get my client's children safely to the United States no later than the end of August, 2017. My text was not referring to the fact that the FBI promised us confidentiality and that the statements made by the client would not be used against him.

7. On April 2, 2017, I spoke to Agent Costello on the telephone and said that we really needed and Mr. Kourani deserved safety and security-related benefits for his providing information to the Government. The FBI told me that if my client gave helpful actionable intelligence to them that their job in assuring my client's family's safety would be much easier.

8. On April 3, 2017, we held the second meeting with the FBI. At the start of the meeting I provided the FBI with a typed summary of my notes concerning what was previously discussed between us (attached as Exhibit B). The document speaks for itself but it includes the fact that there would be no prosecution of my client. I expressed what I believed was a problem inasmuch as the FBI could not guarantee Mr. Kourani the immigration help that his family needed. They did later guarantee that they could help Mr. Kourani's children.

9. At the April 13, 2017, meeting there was still no clear deal regarding immigration benefits. Nonetheless, Mr. Kourani again spoke at length with the agents. Without a doubt there was still no dispute that my client would not be arrested. That is why when I was called on June

1, 2017 and told that he was arrested I was outraged and incredulous that I had been lied to and I felt tricked by the FBI.

Dated:       December 20, 2017

_____
Mark Denbeaux