UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...............................................................................X
                                                              :
                                                              :
                                                              :
UNITED STATES OF AMERICA,                :    17 Cr. 417 (AKH)
                                                              :
         -against-                                    :    ECF Case
                                                              :
ALI KOURANI,
         Defendant.

...............................................................................X


REPLY MEMORANDUM OF LAW

ALEXEI SCHACHT ATTORNEY A LAW

Alexei Schacht
123 West 94th Street
New York, New York 10025
(646) 729-8180
alexei @schachtlaw.net

Attorney for Defendant Ali Kourani

This Reply Memorandum is submitted in response to the Government's opposition to the defendant's pre-trial motions. It assumes the reader is already fully familiar with all prior proceedings and filings.

**It is Established that Specific Promises were made to the Defendant by FBI Agents**

The essence of the Government's arguments is that the FBI agents made no promises whatsoever to the defendant and that he simply "heard what he wanted to hear" (Memorandum at page 25).[1] This is just not true. Ali Kourani heard what was said. That is why, unlike in every case cited by the Government, the defendant's lawyer was present and has now sworn under oath that the FBI agents did in fact promise confidentiality and that the statements the defendant made would not be used against him.

The defendant has sworn under oath that the FBI promised him that "I would not be prosecuted for what I said" at the meetings (docket entry 27 at paragraph 12). This was not merely a promise by his lawyer but one made to the defendant personally by the FBI in his lawyer's and his presence. The defense lawyer also states under oath that the defendant was promised that what the defendant would say at the meetings would not be used against him (docket entry 28 at paragraphs 5 and 6 ).

By way of contrast, neither FBI agent has submitted anything under oath rebutting these facts. Rather, in an unusual technique, the prosecutors assigned to the case write as omniscient narrators discussing events as if they were there. Moreover, the prosecutors act as character witnesses vouching for the FBI agents' honesty and professionalism (pages 3, 11, and 36). These prosecutorial moves should be rejected.

---

[1] Parenthetical references are to the pages of the Government's Memorandum, docket entry number 32, unless noted otherwise).

The facts as alleged in our motion are that the agents' promises were verbal and made to the defendant personally by the FBI. In addition, the promise that what would be said would be kept confidential was memorialized in an FBI Form 302. The promise that the defendant would not be prosecuted based upon what he said is also mentioned in the lawyer's notes.[2] That is why his notes say "it has already been agreed" between the FBI and the defendant.

Having provided no sworn opposition from the two FBI agents at issue the motion to dismiss the indictment based upon illegally obtained evidence ought to be granted.

**If the Court Will Not Dismiss the Case a Hearing is Necessary**

The indictment is based entirely upon what the Government says are the defendant's statements. We know that because the Government's Complaint (docket entry 1) and version of the facts in their Memorandum (docket entry 32) are based entirely upon these statements. The statements were made after the defendant was told that what he would tell the FBI would be confidential and not used to prosecute him.

The Government cites cases and makes the claim that as a matter of contract law unauthorized promises cannot be relied upon by defendants. *See e.g., Arriaga v. United States*, 2009 WL 890652 (E.D.N.Y. 2009). I agree, but all available evidence is that these promises were ***authorized***. The FBI agents left the room to speak to supervisors during meetings with the defendant in order to get permission to make promises (docket entry 27 at paragraph 17) and specifically told the defendant and his lawyer that their supervisors were

---

[2] The notes themselves are not a contract or agreement and are badly written as notes often are. They are notes. But it memorializes the fact that the defendant was not to be prosecuted based upon what he said, although the notes simply state that there would be no prosecution. I certainly agree that this was not meant as blanket transactional immunity.

2

being apprised of all that was going on in the case. The Government has offered no evidence that these promises were not authorized. Indeed, they have offered no evidence.

But should the motion to dismiss not be granted we believe that a suppression hearing must be held to decide the facts in the case since there are major disputes as to what happened. Nonetheless, the Government makes the irrelevant claim on Page 40 that a hearing is not required where there are no "disputed issues of material fact."

Even in most of the cases on which the Government relies, and with much less compelling allegations than those made in this case, the courts granted evidentiary hearings. *See e.g., United States v. Rudaj*, 2005 WL 2508404 (S.D.N.Y. 2005) and *United States v. Sattar*, 2003 WL 22510398 (S.D.N.Y. 2003).

**The Government Relies Primarily upon Mischaracterizations of Defense Arguments**

On page 1 of the Government's Memorandum they totally mischaracterize the defendant's arguments and that style of creating and knocking down straw men then continues for 48 additional pages.

For example, the defense has not argued that the FBI promised total transactional immunity to the defendant, although the Government claims this on pages 1 and 16. Rather, the FBI offered essentially limited use immunity, the normal run of the mill sort of immunity that is offered every day to defendants in cases even more serious than this[3]. So

---

[3] The Government calls the defendant a terrorist even though he is not accused of committing any terrorist acts. And although, as a legal matter, the charges are irrelevant to the validity of these motions I must state that the defense strongly disagrees with the Government's version of what the defendant allegedly told the FBI in his meetings. For example, the defendant never said that he was trained to use a PKS machine gun (page 6). The agents' own 302s repeatedly state that he was trained in "small arms." The Government also mentions notes found in his home with the words "ESO" and "extradite him" (docket entry 31 at paragraph 6) as if that has some nefarious meaning. ESO is a term with which the defendant was unfamiliar (as mentioned in the relevant FBI 302 on page 4) and which Special Agent Shannon taught him. Extradite him refers to a N.Y.P.D. informant named Bachir Kourani whom Shannon said might be extradited.

what was promised was not unusual or extreme and unreasonable. Rather, the FBI suspecting the defendant of being involved with Hezbollah and wanting him to be an informant, offered him the security of knowing that he would not be arrested based upon what he said so that they could have a real dialogue with him and hopefully get him to be an informant. There is nothing bizarre or unusual about this. But by mischaracterizing this as a claim by the defense that transactional immunity was promised, the Government can then make the claim that that would be unusual. And they would be correct, but that is simply not the claim made by the defense.

Another example is that the Government twists what was said in the defendant and Denbeaux's affidavits to argue that the defense is not really claiming that the FBI made promises at all. For example, the Government posits that neither Denbeaux nor the defendant claims that the FBI agents at the meeting "ratified" the contents of Denbeaux's notes (page 11). This is absurd. Denbeaux describes his notes as a summary of what was discussed between "us" (obviously referring to defendant, Denbeaux and the agents since the summary talks about conversation between the agents and Denbeaux and Kourani) (docket entry 28). So there should be no mistaking our position that the agents made specific and clear promises. Likewise, when the notes say "no prosecution" (page 10) they do not refer to blanket transactional immunity but merely to limited use immunity.

A third example concerns the nature of the promises themselves. There can now be no dispute that, at a minimum, a promise of confidentiality was made to the defendant. According to the FBI's own 302 (Exhibit B attached to docket entry 26) confidentiality was promised. But in its 49-page document the Government successfully avoids addressing what it believes that promise meant. Rather, at pages 17, 18 and 26 they continue to mischaracterize the defense position about the promises, writing that the defense

4

argues that confidentiality means total transactional immunity. Again, we obviously do not make that argument.

A possible reason the Government avoids stating a clear position on the undisputed promise of confidentiality in this case is that at least two Circuits (the 9th and 11th) have held that statements made in reliance on promises of confidentiality may not be used against a defendant. *See Valenzuela v. United States*, 286 F 3d. 1223, 1230 (11th Cir. 2002); *United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir. 1982)(*dicta*). We believe that the statements here must be suppressed even if the only promise was the one memorialized in an FBI 302 made before the first meeting.

At bottom, we make a simple and clear argument: FBI agents promised the defendant and his lawyer in person that what the defendant said at the meetings would be confidential and that it would not be used to prosecute him. We have alleged this with sworn statements from the defendant and his lawyer. They will testify to this in greater detail under oath at a hearing.

The Government has provided no sworn opposition and has instead created straw men and skillfully avoided dealing head-on with the issues raised.

Indeed, the Government even offers the argument that the FBI agents did not even promise confidentiality because they would have to go to other government agencies in order to obtain immigration benefits for the defendant's family (Page 18). This is absurd. The FBI can obtain immigration benefits for people without having to reveal to other agencies the exact contents of meetings with informants.

In this very case, at the final meeting with the FBI, Special Agent Costello helped the defendant's brother who had a pending immigration case in which he (the brother) was going to be deported. What happened was that at the end of the meeting at Seton Hall

Costello mentioned that Kourani's brother had immigration court the following day and Costello agreed to help the brother with his case. So in front of the defendant, inside of the coffee shop on the first floor of Seton Hall Law School building, he emailed his supervisor in order to help the brother. The next day the brother's deportation was delayed.

**The Prosecutors as Expert Witnesses**

The Government repeatedly argues that no attorney could "reasonably" have believed that any sort of immunity was being offered by the agents (pages 13 and 15). There is no basis for these statements about what a reasonable lawyer would do or think. These arguments are simply the prosecutors' opinion, as if they are expert witnesses in the case. The Government does not claim that Denbeaux has committed perjury. He has sworn under oath (unlike the FBI agents) that his client was promised that his statements would not be used to prosecute the defendant. So obviously Denbeaux was made these promises. Was he unreasonable to have believed them? No. As discussed above, the promises were of a routine sort. They were not promises of full transactional immunity. It was reasonable for him to have believed the agents.

The Government also seems to be arguing, albeit very indirectly, that Denbeaux was legally ineffective for believing the FBI agents and for not getting a promise from a prosecutor. The Government, however, essentially puts this argument in my mouth (Page 38-39) and then knocks it down, arguing that the defendant cannot allege ineffectiveness since he was not in custody and had no right to an effective lawyer.

While it is true that Denbeaux would have done well to have gotten the agreements in written form from a prosecutor, we are not basing this motion on ineffectiveness.

6

Another way that the prosecutors' irrelevant opinions are used, this time to vouch for the FBI agents, is when the Government writes that the FBI agents could not possibly have made promises of immunity. For example, they write that "No agent would behave in that fashion" (page 3) and the agents conduct was "beyond reproach" and done in a "professional manner" (page 36). The Court is supposed to take the prosecutors' word for it. They have interviewed the agents and can tell the Court that the agents behaved appropriately. Fortunately the justice system in this country does not work that way.

These attempts to vouch for the credibility of agents who have not even submitted sworn statements should be rejected out of hand.

**The Defendant is Sophisticated**

The FBI made verbal promises to the defendant and his then lawyer that they would not use what he said at the meeting against the defendant. The Government goes to great lengths to argue that the defendant is sophisticated. And they are right; he is. And it is exactly for that reason that he wanted and received the promise of confidentiality and use immunity. That is why Denbeaux's written summary says that the meetings were not proffers or plea negotiations – there was an agreement that he would not be charged based on what he said at the meetings, not that he would never ever be charged for any crime ever. These were Denbeaux's notes, not legal contracts. Obviously there was no plea negotiation, the defendant was not arrested and since there was no case in court there was no plea to negotiate.

The Government also argues incorrectly that the defendant was looking to the agents for a job with the FBI itself (page 30). That is not true; he was asking the FBI agents for help in getting a job in his field of study in engineering. This was made clear by the defendant

at the meeting on April 14, 2017. Indeed, it is even correctly memorialized in the FBI agents' Form 302 (on page 1) about that meeting.

**The Promises were Authorized**

The Government argues that the promises were not authorized by anyone in "authority" (page 13). But the agents represented themselves as having the authority to make this promise. They agree in the 302 that they promised confidentiality. Even if it only related to "security" concerns as the Government at one point argues (pages 19 and 20) it was immediately breached as the Government's Complaint and the Department of Justice's Press Release announcing the arrest "outed" the defendant as an informant who provided information to the government.

The Government cites and makes much of *United States v. Rudaj*, 2005 WL 2508404 (S.D.N.Y. 2005), but that case merely says that unauthorized promises of immunity are not enforceable as contracts, but the Government has offered no evidence (the prosecutors' unsworn legal arguments about events in which they had no involvement are not evidence) that these promises were unauthorized. Rather, as mentioned in the defendant's affidavit, on at least one occasion the FBI agents left the meeting to consult with their supervisors. All indications were that everything the FBI agents did and said was authorized by higher-ups in the Department of Justice.

Any in event, the law is clear that even an unauthorized promise that is not enforceable may cause a statement to be involuntary if relied upon by the defendant, and no case cited by the Government contradicts this basic legal principal.

**The Government Also Mischaracterizes the Law**

The Government practice of mischaracterizing facts continues with its discussion of the law. We cited the case of *United States v. Haak,* 215 F.Supp.3d 218 (W.D.N.Y 2016). It involved a defendant who voluntarily spoke with government agents in a non-custodial setting but because he made statements under the mistaken belief fostered by law enforcement that what he said would not be used against him to prosecute him those statements were suppressed. We believe that the case applies here.

At page 26 the Government quotes from the case, "[t[here can be little doubt that Detective Zawierucha promised that in exchange for *Haak'*s cooperation, he would not be charged" and contrasts *Haak* with this case where the Government claims there are no clear promises of immunity. But the Government leaves out the rest of the quote from *Haak* that "***Detective Zawierucha may not have made that promise in so many words, but his message was nevertheless loud, clear, and unmistakable***." *United States v. Haak*, 215 F.Supp.3d at 228 (emphasis added). *Haak* makes the point that if a defendant gets the "message" that he will not be charged in exchange for talking then a statement may be involuntary even if the promise is not written or made formally. Here, this promise of non-prosecution based upon statements made at the meetings was loud and clear. The defendant and his lawyer heard it. This sophisticated defendant sought and received such a promise. And without it he would never have talked. So his statements were involuntary as a result.

## CONCLUSION

For the foregoing reasons, Ali Kourani respectfully moves for an Order dismissing the indictment, or alternatively suppressing all statements, and any other evidence obtained from him in violation of his constitutional rights, or in the alternative, for a hearing on the issues raised herein, and for any other relief this Court deems just and proper.

Dated: February 12, 2018
      New York, New York

ALEXEI SCHACHT ATTORNEY AT LAW

By:   /s/ Alexei Schacht

Alexei Schacht
alexei@schachtlaw.net
123 West 94th Street
New York, New York 10025
Tel: (646) 729-8180

Attorney for Defendant Ali Kourani