UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

17 CR 417 (AKH)

_____

UNITED STATES OF AMERICA

-against-

ALI KOURANI

Defendant.

_____

BAIL APPLICATION ON
<u>BEHALF OF ALI KOURANI</u>

By: Alexei Schacht, Esq.
Attorney for Ali Kourani
123 West 94th Street
New York, NY 10025
Tel: (646) 729-8180
Fax: (212) 504-8341
alexei@schachtlaw.net

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

17 CR 417 (AKH)

_____

UNITED STATES OF AMERICA

-against-

ALI KOURANI

Defendant.

_____

Preliminary Statement

I write on behalf of my client, Ali Kourani to request a hearing before this Court at Your Honor's earliest convenience to determine the conditions of bail necessary to assure Mr. Kourani's appearance in court. No prior bail application has been made in the case. The Government opposes this application.

Introduction and Proposed Conditions of Release

Mr. Kourani is presumed to be innocent. The law is clear that prior to a conviction, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Moreover, in deciding a bail issue pursuant to the 18 U.S.C. § 3142, the "court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." United States v. Shakur, 817 F.2d

189, 195 (2d Cir. 1987). Mr. Kourani is not one of the people who need to be detained prior to trial. The facts in the case, discussed in more detail below, are clear: Mr. Kourani is neither a danger to the community nor does he pose a flight risk. He ought to be granted bail.

Counsel is prepared to offer the following conditions that, we respectfully submit, are more than sufficient to reasonably assure Mr. Kourani's appearance during the pendency of this case:

- *A personal recognizance bond signed by three financially responsible people;*
- *Travel restricted to the Southern and Eastern Districts of New York;*
- *Surrender of all travel documents with no new applications (the Government already possesses those documents);*
- *Strict Pretrial Service Supervision;*
- *Home detention with GPS monitoring, permitting him to leave for counsel meetings, religious services, work and court appearances - all with prior notification to Pretrial Services.*

Essential Facts

Having presided over a suppression hearing in the case your Honor is well aware of some of the facts in the case so I will simply highlight the ones that we believe are essential to deciding this application.

First, there should be no dispute that the defendant was not involved in criminal activity at the time of his arrest or in the couple of years leading up to it. Indeed, it was the defendant who approached the FBI offering his cooperation and help in exchange for the provision by the

3

FBI of safety for himself and his family. At that time the FBI obviously did not consider him to be either a danger to the community or at risk of flight, or they would have arrested him. In addition, both before and after receiving information from the defendant, the FBI kept close surveillance on Mr. Kourani and had they noticed any danger they could have arrested him. Indeed, the complaint stated that the alleged crime was completed in 2015. So the defendant poses no threat to anyone.

Second, we now know from the hearing that the "driving factor" in the decision to arrest Mr. Kourani at all was because the FBI did not consider him to be sufficiently forthcoming in his interviews with the FBI agents (167).[1] The FBI agents both testified that the defendant withheld information. But the FBI did not confront him with any facts but they surely would have had they wanted the process of cooperation to work out. The driving factor for his arrest, in other words, was not because the alleged crimes were considered to be serious or that he posed a danger or threat to anyone. Indeed, even now he is not alleged to have ever harmed anyone.

Third, we also know the defendant is a United States citizen who has lived here for more than 15 years. And while he has many extended family members in his native Lebanon that is literally the last place on earth that he can go. Mr. Kourani was almost killed there in the summer of 2016. Then his American passport was taken by the United States Embassy in Beirut and he was interrogated by FBI Special Agent Costello and others. Mr. Kourani still came back to the United States that he considers to be his only home. Now, after the complaint was unsealed in 2017 and his cooperation with the United States government has been revealed, his life will always be in danger. He is a target forever of Hezbollah, so traveling outside the United States is

---

[1] Parenthetical references are to the minutes of the suppression hearing unless noted otherwise.

a life threatening risk. There is literally no chance he will go to Lebanon as he might as well just hang himself in his cell now. So flight is not a real possibility.

Fourth, it now appears that the case against the defendant is weak inasmuch as all of the evidence comes from the mouth of the defendant who, according to the FBI itself, is not a fully credible person. Also, as we highlighted at the suppression hearing, there is substantial dispute about what the defendant even told the FBI. In that vein, we emphasized that Special Agent Shannon's hand-written notes in many places do not correspond with the typed version of those notes memorialized in her 302 reports and her testimony at the hearing. For instance, two simple examples are that:

1) in the FBI's notes it says that the defendant admitted being trained on "small arms" and in the 302 it mentions machine guns; and

2) in the notes it correctly states that the defendant asked for a job with a salary of about $120,000 but in the 302 it says that he simply asked for $120,000.

In conclusion, the case against the defendant is weak.

Fifth, were the defendant to be convicted at trial there is a substantial likelihood of success on appeal. The defense moved for suppression of his statements on the ground that they were involuntarily made. At the hearing the FBI admitted that Mr. Kourani was promised that what he would say to them would remain confidential from people in the Lebanese community (89-90). Obviously that promise was broken when he was arrested based upon those statements, which were referenced at length in the complaint and in a press release about the case. The defendant, as he testified, would certainly never have spoken to the FBI if they had told him that what he said would be provided to the public. These facts are not rebutted and were not addressed in the Court's decision (Docket Entry Number 51) denying suppression. That the

defendant spoke to the FBI only after being falsely promised confidentiality renders the statements subject to suppression. That this aspect of the motion was not even addressed in the Court's decision means that there is a substantial likelihood of success on appeal.

Keeping those facts in mind we turn now to the relevant legal standards that ought to be applied to these facts.

The Legal Standards and Authority

The Eighth Amendment to the Constitutions provides: "Excessive bail shall not be required." U.S. Const. Amend VIII. "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." Stack v. Boyle, 342 U.S. 1, 4 (1951). Consistent with these fundamental principles, the Bail Reform Act of 1984 "requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or community." United States v. Sabhnani, 493 F. 3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C § 3142(b)). Even "[i]f the court determines that a defendant's release on an unsecured bond presents a risk of flight,… the law still favors pre-trial release 'subject to the least restrictive further condition, or combination of conditions that [the court] determines will reasonably assure the appearance of the person as required.'" Id. (quoting 18 U.S.C. § 3142 (c)(1)(B)). Thus, a court may not order pretrial detention unless it finds "that no condition or combination of conditions will reasonably assure the appearance of the person" at trial. 18 U.S.C. § 3142(e).

As the Second Circuit has repeatedly recognized, "[u]nder this statutory scheme, 'it is only a limited group of offenders who should be denied bail pending trial.'" Sabhnani, 493 F .3d

6

at 75 (quoting Shakur, 817 F .2d at 195) (quotation marks omitted). Mr. Kourani is not in that group of offenders.

Argument

The proposed conditions of release, specifically home detention, obviate any perceived risk of flight and are more than sufficient to accomplish the aims of the Bail Reform Act.

As noted above, the Bail Reform Act requires the release of a defendant on the "least restrictive" conditions necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community." See 18 U.S.C. § 3142(c)(1)(B) (emphasis added). To determine the least restrictive conditions of release necessary to achieve the aims of the Bail Reform Act, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g); See also U.S. v. Sabhnani, 493 F .3d 63, 76 (2d Cir. 2007); United States v. Orena, 986 F .2d 628, 632 (2d Cir. 1993). An analysis of these factors compels the conclusion that the proposed conditions of Mr. Kourani's release are more than sufficient to accomplish the aims of the Bail Reform Act.

In evaluating the "least restrictive" Bail conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community" the court must take into account the nature of the offense charged, including whether the offense is a crime of violence or terrorism. Obviously Mr. Kourani is charged with crimes alleging terrorism

that might normally militate in favor of detention but the facts here are unlike any other reported case of which I am aware. The relevant factors are each discussed below.

1) The nature and circumstances of the offense charged: the defendant poses no danger to anyone in the community. The defendant approached the FBI long after any criminal conduct that he allegedly committed even occurred in an attempt to assist the Government. The unusual fact pattern is unique in cases with similar criminal allegations.

2) The weight of the evidence against the defendant: as discussed above, the whole case is based on the alleged defendant's statements. There is no proof to corroborate the defendant's own statements to the FBI, statements that the FBI testified were not fully credible. Moreover, the alleged statements of the defendant were altered to suit the FBI's allegations against the defendant. As discussed above, the FBI's handwritten notes in many instances do not match the 302s that appear to embellish the evidence to suit their needs. We challenge the Government to present any real evidence implicating the defendant in the charged crimes aside from the defendant's uncorroborated statements.

3) The history and characteristics of the defendants. The defendant in an American citizen who poses no threat to the United States. He had resided in the United States for more than 15 years. Mr. Kourani has worked or been in school almost continually since he moved to the United States.

4) The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release; The defendant poses no danger to the community and that is supported by years of surveillance by the FBI. Even the defendant's approach to help the United States government shows his determination to keep his community safe. Mr.

Kourani's eagerness to bring his family to the United States shows that he has no intention to harm the United States or anyone in it.

The government may argue that its case against Mr. Kourani is strong. The allegations, however, against Mr. Kourani will be sharply contested at trial. As discussed above, the only evidence against the defendant comes in the form of statements allegedly made by him to the FBI, the substance of which will be disputed at trial. The evidence at trial, therefore, is weak and so the government will not prevail at trial. In any event, the strength of the government case is generally considered the "least important" of the 18 U.S.C. § 3142(g) factors for the court to consider when determining the conditions necessary to satisfy the aim of the Bail Reform Act. See U.S. v. Jones, 566 F. Supp.2d 288, 292 (S.D.N.Y. 2008).

Conclusion

We urge this Court not to detain him simply because of the nature of the charges. Our bail proposal removes any possible concern of flight.

Respectfully submitted,

*/s/ Alexei Schacht*

Alexei Schacht, Esq.
Attorney for Ali Kourani
123 West 94th Street
New York, NY 10025
Tel: (646) 729-8180
Fax: (212) 504-8341
alexei@schachtlaw.net

September 5, 2018