USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

UNITED STATES OF AMERICA

-against-

ALI KOURANI,

                         Defendant.

------------------------------------------------------------- X

**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF FOR INEFFECTIVE ASSISTANCE OF COUNSEL**

17 Cr. 417 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

On June 28, 2017, defendant Ali Kourani ("Defendant" or "Kourani") was indicted of a number of terrorism-related offenses. *See* 18 U.S.C. 2339B. The core allegation linking all the charges is that Kourani was a member of, and offered material support to, Hizballah, a designated foreign terrorist organization. Statements by Kourani at meetings with the FBI are important items of evidence. Kourani moves for a finding that defendant's lawyer at the time, Mark Denbeaux, provided ineffective assistance of counsel by permitting the meetings and statements, and for an appropriate judicial remedy, presumably, precluding his statements from being used as evidence, or leads to evidence, and dismissing the indictment. For the reasons that follow, defendant's motion is denied.

## Background

### A. Factual Summary

The operative facts are set forth in this Court's April 26, 2018 opinion and order. *United States v. Kourani*, No. 17 CR. 417 (AKH), 2018 WL 1989583 (S.D.N.Y. Apr. 26, 2018).

Defendant was born in Lebanon in 1984, became a naturalized U.S. citizen in 2009, and received a Bachelor of Science degree in biomedical engineering and a Master of Business Administration degree in 2009 and 2013, respectively. The government alleges that defendant was a member of Hizballah's Islamic Jihad Organization, and that, after receiving military, tactical, and counterintelligence training, defendant acted on behalf of the organization in the United States.

The relevant conduct for the purposes of this motion largely occurred in 2017, during which Mark Denbeaux, defendant's previous lawyer, represented defendant over the course of five non-custodial interviews with FBI agents at Seton Hall Law School. Defendant participated in the meetings without securing any agreement of immunity.

At the start of the second interview, Denbeaux handed defendant's interviewers a memorandum, which stated in part that "[Kourani] is not seeking any kind of immunity or protection, because as it has already been agreed, he has committed no crime and faces no prosecution." *Kourani*, 2018 WL 1989583, at *2. The agents interviewing Kourani conferred among themselves and then returned the memo to Denbeaux without comment.

B.  **Procedural Summary**

Defendant was arrested on June 1, 2017 and charged with providing material support to a foreign terrorist organization. Defendant subsequently challenged the admissibility of his inculpatory statements. After an evidentiary hearing held on March 26–28, 2018, I denied Defendant's motion, finding that that defendant's statements were voluntary and no offer of immunity had been made to him. *Kourani*, 2018 WL 1989583, at *1.

## Discussion

The core of defendant's motion is an argument that Denbeaux provided ineffective assistance of counsel by allowing defendant to participate in the FBI interviews without first obtaining the benefit or protection of a proffer agreement. However, defendant's motion does not raise any issues not already addressed in my April 26, 2018 opinion and order denying defendant's motion to suppress and for a bill of particulars. *Kourani*, 2018 WL 1989583, at *1.

As a preliminary matter, defendant is seeking a finding of ineffective assistance of counsel even before the charges were filed against him. Customarily, a defendant's right to counsel attaches when charges are made. *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 213 (2008) ("[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel."); *see also Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992) ("A defendant cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached."). There are additional reasons to deny this motion.

The inquiry to determine whether counsel's assistance was so defective as to require reversal of a conviction has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001). Even if this test were to apply, I conclude that Denbeaux's representation does not meet this threshold.

Defendant argues that the decision by his previous lawyer, Mark Denbeaux, to allow defendant to testify without the benefits of a standard proffer agreement lacked a rationale or a strategic basis. Defendant characterizes Denbeaux's decision to rely on the FBI's purported promises of confidentiality as a "colossal legal mistake." Br., ECF 72, at 1. This characterization is contrary to the Court's findings in its suppression order:

> Kourani understood the situation he faced and had some level of familiarity with the FBI. He had previously been offered (and rejected) a written confidentiality agreement in 2016, indicating that he was at least aware that he could obtain a formal agreement from the agents. *He behaved strategically, seeking a meeting with FBI agents when his situation made doing so in his best interest*, and he sought out Denbeaux knowing that he had no expertise in immigration or family law and could help him only insofar that he wanted the FBI's help to resolve his immigration problems. There is nothing in the record to indicate that Kourani was particularly susceptible to coercion.

*Kourani*, 2018 WL 1989583, at *4 (emphasis added). Defendant was "a well-educated and sophisticated actor." *Id.* at *7. Denbeaux, a professor of criminal law at Seton Hall Law School, was an experienced lawyer, and had represented Black Panthers in a previous criminal investigation.

Defendant's wife and children could not enter the United States. Nor could defendant's parents in Lebanon. Defendant's decision to meet with the FBI, assisted by Denbeaux, was part of a reasoned plan with the specific aim to gain the FBI's assistance with immigration authorities to allow his family to enter the U.S. That defendant's approach ultimately failed does not entitle him to the presently sought relief.

I found Denbeaux to be capable—"a smart, experienced counsel, with a deep background representing controversial defendants and negotiating with the FBI and prosecutors," *Kourani*, 2018 WL 1989583, at *5, who "knew how a proffer session worked," but who could not get one, and who tried to give his client, the defendant, a possible argument. *Id.* at *6. I ruled:

> These paragraphs of Denbeaux's memorandum largely confirm the testimony adduced at the evidentiary hearing. Denbeaux was trying to work around the proposition that Kourani was holding back vital information, waiting to exchange it for a firmer commitment that his family could immigrate to the United States and he could establish a relationship with his children. But he wanted the government to commit itself before he committed himself, and when these issues were not resolved, the meetings broke down and Kourani's arrest followed.

*Kourani*, 2018 WL 1989583, at *6. Denbeaux provided the representation that his client wanted.

Defendant asserts that he could have received a proffer agreement, had one been sought. Br., ECF 72, at 2. But this is not true. I ruled:

> I decline to read [paragraph 2 of the Denbeaux memorandum] as a conferral of immunity. In paragraph 2, Denbeaux writes that Kourani "is not seeking any kind of immunity or protection." Gov't Ex. 703, at ¶ 2. This is a telling proposition. *Kourani was not seeking any kind of immunity because he knew he could not get it.* The agents had made it clear that specific benefits or promises were off the table until Kourani cooperated fully.

*Kourani*, 2018 WL 1989583, at *7 (emphasis added). Moreover, the FBI agents who interviewed defendant had no authority to offer a proffer agreement. No prosecutors having such authority were present at the meetings.

Defendant's argument, that a proffer agreement "was obviously the only sensible legal strategy for any criminal law practitioner," is without merit. Denbeaux's statement, "it has already been agreed, [that Kourani] has committed no crime and faces no prosecution," had no

5

basis to it, for there had been no such agreement. *Kourani*, 2018 WL 1989583, at *2, *7. I ruled:

> this portion of the memorandum was an assertion by Denbeaux intended to "boot-strap" his effort to obtain some level of protection for Kourani in relation to his desperate efforts somehow to bring his endangered family to the United States. He knew that he had to reveal inculpatory information to the FBI, for the FBI, he believed, presented the only viable way to help his family. Denbeaux testified that he knew that Kourani was a member of Hizballah, a terrorist organization, before the meetings began. And in the March 23 meeting, the first of five, Kourani admitted to being a member of Hizballah and to receiving military training by the terrorist wing of Hizballah in Lebanon. To then state that "it has already been agreed . . . that he has committed no crime and faces no prosecution" reflects not a promise, but a skilled lawyer's effort to color the event.

*Kourani*, 2018 WL 1989583, at *7.

Defendant and Denbeaux were sophisticated actors who made decisions with the aim of accomplishing specific goals in light of significant risks. Defendant's motion is denied. The clerk shall terminate the motion (ECF 72).

SO ORDERED.

Dated: January 11, 2019
       New York, New York

                                ALVIN K. HELLERSTEIN
                                United States District Judge