H51TKOUC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                    17 CR 417 (CR)

ALI KOURANI,

        Defendant.

------------------------------x

                            New York, N.Y.
                            May 1, 2019
                            11:00 a.m.

Before:

          HON. ALVIN K. HELLERSTEIN,

                            District Judge

                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
AMANDA HOULE
EMIL BOVE
     Assistant United States Attorneys

ALEXEI SCHACHT
     Attorney for Defendant

H51TKOUC

| 1 | (Case called) |

 1      (Case called)

 2           MS. HOULE:  Good morning, your Honor, Amanda Houle and

 3      Emil Bove.  With the government at counsel table is paralegal

 4      specialist Margaret Shields as well as a special agent from the

 5      FBI, Keri Shannon.

 6           THE COURT:  Who is who?

 7           MS. HOULE:  First is Ms. Shields, to her right is

 8      Ms. Shannon.

 9           THE COURT:  Good morning.

10           MR. SCHACHT:  Good morning, your Honor, Alexei Schacht

11      for Ali Kourani.

12           THE COURT:  Good morning, Mr. Kourani.

13           How do you want me to proceed, Ms. Houle?

14           MS. HOULE:  Your Honor, if we could start, there's one

15      point that the parties just discussed which relates to two

16      limiting instructions that the government proposed, and we

17      understand from defense counsel this morning that they are

18      unobjected to.

19           THE COURT:  They're not objected to.

20           MS. HOULE:  That's correct.

21           THE COURT:  Is that right, Mr. Schacht?

22           MR. SCHACHT:  It is correct, your Honor.  They've

23      proposed one of their limiting instructions concerning an

24      expert witness, Mr. Levitt, who they want to call.  And I don't

25      object to the instruction, but I told the government I might

H51TKOUC

| | |
|---|---|
| 1 | object to some of his testimony, but that's a separate issue. |
| 2 | But I wanted to be clear about that. |
| 3 | THE COURT:  Should I know now what you're going to |
| 4 | object to? |
| 5 | MR. SCHACHT:  I need to talk to my client about it, |
| 6 | which I could do right now or I could do it tomorrow and send |
| 7 | the Court a letter.  I think it's also possible I won't object, |
| 8 | I just -- |
| 9 | THE COURT:  Why don't you take until Monday morning to |
| 10 | figure out what you want to do? |
| 11 | MR. SCHACHT:  I will know -- I'm meeting with my |
| 12 | client tomorrow, so I will have an answer tomorrow.  Thank you |
| 13 | very much. |
| 14 | MS. HOULE:  So just to be clear, your Honor, that's |
| 15 | the instruction that the government proposed in its April 23rd |
| 16 | letter as to Dr. Levitt. |
| 17 | THE COURT:  When do you want me to give this |
| 18 | instruction? |
| 19 | MS. HOULE:  Following Dr. Levitt's testimony. |
| 20 | THE COURT:  Mr. Schacht, is that okay with you? |
| 21 | MR. SCHACHT:  It is okay with me, your Honor.  My only |
| 22 | question is he's supposedly an expert on Hezbollah, I wanted to |
| 23 | talk to my client to make sure, we may have some objections |
| 24 | about some of the specific things that he would say.  I'm not |
| 25 | objecting to him as a witness coming to court. |

H51TKOUC

1        THE COURT:  You don't really know what he's going to

2   say, do you?

3        MR. SCHACHT:  I have spoken to the government and they

4   have given me a kind of verbal proffer of some of the things he

5   may say.

6        THE COURT:  What do the criminal rules provide on

7   this, Ms. Houle?  What do you have to give?

8        MS. HOULE:  Your Honor, the criminal rules as to the

9   notice we gave, we gave expert notice to the defense, and we

10   have separately had discussions with the defense about

11   additional specifics of Dr. Levitt's testimony.  We've also

12   turned over to the defense articles written by Dr. Levitt and

13   certain prior testimony that he gave so that they have a full

14   understanding of the topics he will discuss.

15        THE COURT:  So Rule 16 --

16        MR. SCHACHT:  Judge, I could be helpful I'm not

17   objecting to their notice.

18        THE COURT:  Let me do this, Mr. Schacht.

19        MR. SCHACHT:  Yes.

20        THE COURT:  Subparagraph G under Rule 16 provides at

21   the defendant's request, the government must give to defendant

22   a written summary of any testimony that the government intends

23   to use under Rule 702, 703 or 705 of the Federal Rules of

24   Evidence during its case in chief at trial.  So the question

25   is:  Did the government provide such a written?

1          MR. SCHACHT:  Yes, they have, your Honor.  But what my

2     possible objection is is the witness may describe certain

3     things that he says Hezbollah did; not that my client

4     personally did, but that other people supposedly in Hezbollah

5     did.  I may want to object to that and say that he does not

6     have a sufficient basis to say that Hezbollah did these certain

7     things.

8          THE COURT:  You'll be cross-examining him.

9          MR. SCHACHT:  I will have the right to cross-examine

10    him, yes.

11         THE COURT:  What if he's qualified as an expert on

12    this general subject?  He's going to testify in a manner that

13    you may find objectionable.  So the question is not whether

14    he's right or wrong but whether he's qualified to testify.  You

15    have your challenge at cross.

16         MR. SCHACHT:  That's true, I could, but with certain

17    types of objections, even though you might sustain my

18    objection, it might be preferable for me to have this resolved

19    in advance of his testimony.

20         THE COURT:  I think, Mr. Schact, that this should be

21    the subject of an in limine motion and I should rule on this

22    before the jury is convened.

23         MR. SCHACHT:  Yes.  And your Honor, to be clear, I'm

24    not saying I'm even going to object.

25         THE COURT:  I understand that.

H51TKOUC

1          MR. SCHACHT:  I will let you know.

2          THE COURT:  If you do object, I would like to rule on

3     the issue before the jury is convened.

4          MR. SCHACHT:  That's fair, and if I do object, I will

5     make a brief motion in limine.

6          THE COURT:  When will I do that?

7          MR. SCHACHT:  I will do that by --

8          MS. HOULE:  Sorry to interrupt, I just note for

9     scheduling purposes Dr. Levitt is our second witness, so to the

10    extent this could be resolved before Monday, that would be

11    preferable.

12         THE COURT:  I understand.

13         MR. SCHACHT:  I could file the motion, if I file a

14    motion at all, by the close of business tomorrow.

15         THE COURT:  Let's go off the record for a moment.

16         (Discussion held off the record)

17         THE COURT:  I'm setting aside 2:30 tomorrow

18    afternoon --

19         MR. SCHACHT:  And your Honor, I'll let you know.

20         THE COURT:  Can I finish?

21         MR. SCHACHT:  Yes, your Honor.

22         THE COURT:  I'm setting this down for 2:30 tomorrow

23    afternoon for argument with respect to the specific aspects of

24    Mr. Levitt's testimony to which Mr. Schact wanted to object.

25         Now this raises the question, does Mr. Schact know

H51TKOUC

1      what it is Mr. Levitt will be testifying about?

2                  MS. HOULE:  Yes, your Honor.  We have given notice of

3      the substance of his testimony and the defense doesn't dispute

4      that.  They have said that our notice is sufficient.

5                  THE COURT:  So if you want to proceed with this

6      objection, we'll come into the 2:30 conference.

7                  MR. SCHACHT:  If I do not, may I submit a letter

8      tonight and we'll cancel court tomorrow?

9                  THE COURT:  Yes.

10                 Is that satisfactory?

11                 MS. HOULE:  Yes.  And my understanding is, regardless,

12     the defense will file a letter this evening that will either

13     lay out the objection or say that no conference is necessary.

14                 MR. SCHACHT:  Yes, I agree.

15                 THE COURT:  Okay.  Good.

16                 MS. HOULE:  So just to close the loop on this point,

17     your Honor, the government's motion for the limiting

18     instruction following Dr. Levitt's testimony is unopposed, and

19     we understand your Honor will give that instruction.

20                 THE COURT:  That's correct.

21                 MS. HOULE:  Thank you.  There's one other limiting

22     instruction proposed by the government that is not objected to

23     by the defense, and that is an instruction proposed in the

24     government's letter of April 22nd.

25                 THE COURT:  Which is that?

1      MS. HOULE:  It's on page 4, and it relates to the

2  topic of Mr. Denbeaux's testimony.  The government has proposed

3  that following Mr. Denbeaux's testimony that the jury be

4  instructed that the jury should rely on your Honor's

5  instructions as to the law and not any legal conclusions that

6  Mr. Denbeaux has offered or other instructions.  And the

7  defense does not object to that.

8      THE COURT:  What do you expect to elicit from

9  Mr. Denbeaux?  Is he going to be a witness, Mr. Schact?

10      MR. SCHACHT:  I'm undecided whether he will be a

11  witness.  If he is a witness, though, I plan on only eliciting

12  testimony from him concerning what occurred in the meetings

13  that the government has witnesses to also.  And those would not

14  be privileged conversations, obviously, because they occurred

15  in front of FBI agents.

16      THE COURT:  So you would not be giving -- you will not

17  be eliciting testimony about any legal advice that Mr. Denbeaux

18  gave to Mr. Kourani?

19      MR. SCHACHT:  I wouldn't seek to elicit any testimony

20  concerning confidential legal advice that he gave.  He did give

21  legal advice in front of the FBI agents.  They were together

22  for many hours.

23      THE COURT:  So whatever he's going to testify to, it's

24  going to be testified that he says it was given in front of FBI

25  agents.

H51TKOUC

```
1              MR. SCHACHT:  Yes, your Honor.

2              MS. HOULE:  Your Honor, even as to that testimony,

3      there is an implicit legal conclusion in Mr. Denbeaux's

4      analysis.  He handed the FBI agents a document that says that

5      the defendant had committed no crimes.  That is confusing for

6      the jury to hear a lawyer say that the defendant hasn't

7      committed any crimes, which is the ultimate question for the

8      jury, and it's an application of the law to the facts of this

9      case.  So we still believe that this limiting instruction is

10     appropriate.

11             THE COURT:  You'll be cross-examining Mr. Denbeaux on

12     that.  Why do you need my instructions?

13             MS. HOULE:  To make clear to the jury that they should

14     not be relying on Mr. Denbeaux's legal analysis.

15             THE COURT:  But you will cross-examine him on this.

16             MS. HOULE:  We will, your Honor, and although --

17             THE COURT:  Why should I be bolstering what you do?

18             MS. HOULE:  I don't think it's bolstering, your Honor,

19     because all we are asking is for the Court to make clear that

20     it is solely your Honor's province to instruct them on the law.

21     Typically any testimony relating to legal conclusions or legal

22     advice is excluded.  Here, the defense has indicated that they

23     want to present that testimony as it was relevant to

24     Mr. Kourani's state of mind.

25             THE COURT:  Are you okay with, Mr. Schact?
```

H51TKOUC

1          MR. SCHACHT:  I am okay with you, yes, telling the

2     jury that you're the judge of the law and your view of the law.

3     I have seen their specific language, but I don't want to be

4     accused of later on sandbagging the Court or the government.

5          THE COURT:  Let's be clear, the government wants me to

6     say at some point during or immediately following Denbeaux's

7     testimony as follows:  You heard testimony regarding certain

8     legal conclusions and advice by Mark Denbeaux.  It is my duty

9     to instruct you as to the law.  It's your duty to accept my

10    instructions of law and apply them to the facts as you

11    determine them.  You must take the law as I give it to you.  If

12    you have heard any legal principles different from any that I

13    state to you in my instructions, it's my instructions that you

14    must follow.  Mr. Denbeaux's legal conclusions may not replace

15    your own.  "Your own" is wrong here.  Should not replace those

16    I give.

17         MS. HOULE:  Yes, your Honor.

18         THE COURT:  That's what the government wants, your

19    Honor.  Mr. Schacht, do you want me to give that?

20         MR. SCHACHT:  No, I don't want you to give that, but I

21    don't object to it.

22         THE COURT:  If you don't object, I'm going to give it.

23    If you object, I will consider it.

24         MR. SCHACHT:  That's fine, but what I wanted to say

25    though, because I don't want to have a fight in front of the

H51TKOUC

1    jury later on, I do plan --

2            THE COURT:  There will be no fighting before the jury.

3            MR. SCHACHT:  I do plan on making the argument,

4    though, that the things that Mr. Denbeaux said to the FBI in my

5    client's presence affected my client's state of mind.  And so I

6    want to be able to make the argument that what Denbeaux said,

7    even if it was erroneous, affected my client's state of mind.

8    And I think I should be allowed to make that argument.

9            THE COURT:  I don't know exactly -- I understand what

10   you want to say, and unless the government objects, you can

11   make those arguments.

12           MS. HOULE:  We don't object to that argument.

13           THE COURT:  Do not.

14           MS. HOULE:  That's correct.  But we do think that it

15   warrants this limiting instruction.

16           THE COURT:  The instruction should be more specific

17   than this.  Am I going to tell the jury at some point something

18   that is the same or is different from what Denbeaux says?

19           MS. HOULE:  Well, your Honor, we don't know exactly

20   what Mr. Denbeaux is going to say, but for example --

21           THE COURT:  Yes, you do.  We heard it in the

22   supression hearing.

23           MS. HOULE:  Right.  So at the supression hearing he

24   said things like:  It was my understanding that receiving

25   military training from Hezbollah in Lebanon was not a crime in

H51TKOUC

1   the United States.  That is not the law.

2           THE COURT:  Why is that relevant for him to say that?

3           MS. HOULE:  It's not relevant, but that's what he

4   testified to at the supression hearing as the basis for his

5   advice and his conclusion in that document that he's going to

6   testify about that the defendant had not committed any crimes.

7           THE COURT:  Okay.  I got your point and I will give

8   the instruction that you want me to do.

9           MS. HOULE:  Thank you, your Honor.

10          This leads to the point of the waiver of the

11  attorney-client privilege.  The defendant filed a document with

12  the Court acknowledging that he's waiving privilege, that he's

13  prepared to have Mr. Denbeaux testify and be questioned about

14  advice that was given.  And so the government proposed an order

15  to the Court so that the government may review the defendant's

16  communications with Mr. Denbeaux in advance of trial.  And that

17  includes text messages and emails that were seized from the

18  defendant's accounts.

19          THE COURT:  Mr. Schact?

20          MR. SCHACHT:  She's correct, your Honor.  I don't

21  object to that.  As you know I uploaded it on ECF.  My client

22  signed that waiver.

23          THE COURT:  But Ms. Houle wants me to sign an order.

24          MR. SCHACHT:  Yeah, I'm fine with that, your Honor.

25  Honestly, I think this is not even really going to become an

H51TKOUC

1    issue at trial, but it's fine if you sign it.

2              THE COURT:  Do you want me to sign it, Ms. Houle?

3              MS. HOULE:  Yes, your Honor.

4              THE COURT:  Hand it up.

5              Without objection, I will sign this order.

6              So we'll call it order regarding production by

7    defendant.  Okay, Ms. Houle?

8              MS. HOULE:  That's fine, your Honor.  It isn't limited

9    to production by the defendant because we already have in our

10   possession some of the defendant's communication.

11             THE COURT:  I said hereby ordered that following his

12   testimony, prior counsel, that's Mr. Denbeaux, shall produce to

13   the government, et cetera.

14             MS. HOULE:  Right.  And then there's a paragraph that

15   follows that that relates to relevant communications that are

16   already in the government's possession, and so the order would

17   cover those as well, and that's not objected to by the defense.

18             THE COURT:  Order regarding waiver of attorney-client

19   privilege.

20             MS. HOULE:  Thank you, your Honor.

21             THE COURT:  Are you okay with that as a title,

22   Mr. Schact?

23             MR. SCHACHT:  Yes, your Honor.

24             THE COURT:  I have signed it.  Ms. Jones will file it.

25             MS. HOULE:  Thank you, your Honor.

H51TKOUC

1          Your Honor, there are two open --

2          THE COURT:  So this means that potentially the trial

3     will stop at the conclusion of Mr. Denbeaux's testimony, and

4     you will then get production of various documents.

5          MS. HOULE:  Right.  That's possible, your Honor.  We

6     don't expect that will slow down the trial schedule.

7          THE COURT:  Well, normally you would be starting

8     cross-examination immediately upon the conclusion of

9     Mr. Denbeaux's testimony if he testifies.

10          MS. HOULE:  We still plan to start immediately

11     following his testimony, your Honor.

12          THE COURT:  Okay.

13          MS. HOULE:  Your Honor, there are two open issues

14     relating to the charge.  The parties disagree about what

15     instruction should be given regarding the defendant's

16     statements, and also whether or not there should be any

17     instruction on corroboration.  I don't think that your Honor

18     needs to address those points in advance of the beginning of

19     trial, we could save that for the charge conference, provided

20     Mr. Schact will not open and to say anything to indicate that

21     corroboration is necessary legally.

22          THE COURT:  Am I correct, Mr. Schact, there is to

23     independent requirement of corroboration under federal law?

24          MR. SCHACHT:  I don't think you are correct.  I don't

25     think all the elements of the crime need to be corroborated, I

H51TKOUC

think the current state of federal law is there needs to be

some evidence.  I think the government agrees with this.  Their

view is that there is some evidence that supports what the

defendant said, although I also agree with the government that

perhaps you should delay decision upon this once the evidence

is in, because we don't actually know yet, even though we both

made predictions about what the evidence will be.

THE COURT:  I think you're both entitled to a clear

ruling on this.  Have you given me your proposed instruction?

MR. SCHACHT:  Yes, your Honor.

THE COURT:  Ms. Houle?

I know you have, Mr. Schact.

MS. HOULE:  As to corroboration, we don't believe that

any instruction is appropriate.  The law is clear that

corroboration is not required, that the confession may itself

be sufficiently reliable to support a conviction, and that the

question of corroboration is for your Honor to decide when

deciding whether the confession is admissible, and then to

address any arguments by the defense following the government's

presentation of its evidence under Rule 29 or Rule 33.  This is

not a function of the jury to decide corroboration and to

include an instruction which suggests that there is an

additional requirement when there's not.

THE COURT:  I agree with that, Mr. Schact.

MR. SCHACHT:  Your Honor, I don't know how could you

1   agree with that because what just said is self-contradictory.

2   She said there is no requirement of corroboration and it's for

3   you to decide whether there's corroboration.  It can't be both.

4              THE COURT:  I can decide if the confession or

5   admission by the defendant is admissible, whether it's

6   sufficiently reliable to be admitted.  That's my burden, and I

7   will do that.  Once it's in evidence, once I say okay, then

8   there's no more legal obligation of telling the jury you have

9   the point of corroboration.

10             MR. SCHACHT:  I don't think you can find that, though,

11  until you know what the evidence is.  You found already as a

12  matter of law that it was voluntarily given, but that's a

13  separate legal analysis from whether or not it's corroborated

14  sufficiently to be reliable, and you don't yet know what the

15  evidence is going to be because the trial hasn't happened yet.

16             THE COURT:  Well, I think the government would

17  probably not be using Mr. Kourani's statements first, or am I

18  wrong?

19             MS. HOULE:  So we will be introducing Mr. Kourani's

20  statements through the tomorrow of the FBI witnesses, but there

21  will be additional evidence of that, of his conduct, your

22  Honor.

23             THE COURT:  In what sequence?

24             MS. HOULE:  We will begin with the testimony of an FBI

25  special agent who did not interview the defendant.

H51TKOUC

1          THE COURT:  What will that witness say?

2          MS. HOULE:  The first witness will be an FBI agent who

3     will testify about the search of the defendant's residence as

4     well as an interview of the defendant in 2016 at Newark

5     Airport.  We will then put on Dr. Levitt's testimony.  We will

6     then put on witnesses describing evidence obtained from the

7     defendant's computer and electronic accounts.

8          THE COURT:  So I will have plenty of basis to

9     determine reliability.

10          MS. HOULE:  That's correct, your Honor.

11          THE COURT:  Okay, I'm not giving this instruction.

12          MR. SCHACHT:  Your Honor, I object to that, because

13     you're prejudging the evidence.  You haven't heard what any of

14     these people will say.

15          THE COURT:  In any event, it doesn't go to the jury.

16     If you're right about your position, it means I should not

17     allow this statement to come into evidence.  Once it's in

18     evidence, the jury doesn't have anything to say on it except as

19     a matter of weight of all the evidence and whether it satisfies

20     the beyond a reasonable doubt standard.

21          MR. SCHACHT:  The way the evidence is coming in, then

22     you would be able to make that finding once you heard the

23     evidence.  I don't see how you could make the finding not

24     having heard the evidence.

25          THE COURT:  I am not giving this instruction.

H51TKOUC

1          MR. SCHACHT:  I have my objection.  Thank you.

2          THE COURT:  What else?

3          MS. HOULE:  The final contested instruction, your

4   Honor, is what instruction should be given regarding the

5   defendant's statements.  The parties agree that there should be

6   some instruction regarding the defendant's statements, that it

7   should include an instruction that the jury should consider

8   what weight, if any, to give the defendant's statements.

9          And the government believes that, in addition, that

10  instruction should include an instruction to make clear to the

11  jury that the defendants -- that the statements were properly

12  admitted, and that they were obtained in a lawful manner.  That

13  instruction is consistent with instructions given by many

14  courts in this district.

15         THE COURT:  I read the briefing on the issue.  The

16  precise wording of what I say will be taken up in the charging

17  conference.

18         MS. HOULE:  Understood, thank you, your Honor.

19         THE COURT:  Anything else?

20         MS. HOULE:  Finally, your Honor, we would just like to

21  allocute the defendant on a rejected plea offer.  The

22  government made an offer to the defendant that he may plea to

23  the indictment with guidelines of life imprisonment but he

24  would reserve his right to appeal the supression decision in

25  this case as to his statement.  That offer was rejected --

H51TKOUC

1          THE COURT:  In other words --

2          MS. HOULE:  -- and the defendant indicated he wanted

3     to proceed to trial.

4          THE COURT:  -- it was a conditional plea.

5          MS. HOULE:  Yes, your Honor.

6          THE COURT:  Okay.  Mr. Kourani, you've heard what

7     Ms. Houle just said, right?

8          THE DEFENDANT:  Yeah, I did.

9          THE COURT:  Did you understand that description of the

10    government's offer to have been one that was given to you?

11         THE DEFENDANT:  I mean honestly --

12         THE COURT:  Do you want to ask the question,

13    Mr. Schact?

14         MR. SCHACHT:  Your Honor, my client understands that

15    that's what the offer was and he rejects that offer.  I would

16    prefer --

17         THE COURT:  Let me make clear why I'm asking these

18    questions.

19         MR. SCHACHT:  My client rejects that offer because he

20    rejects the charges in the indictment that they were seeking or

21    offering him to plead guilty to.

22         THE COURT:  I don't need to have reasons.  I want to

23    tell you this, Mr. Kourani, why I'm asking these questions.

24    You have a constitutional right to rest on your presumption of

25    innocence.  You have a constitutional right to require the

H51TKOUC

1     government to try its case.  You have no obligation to say

2     anything against yourself.  The government must prove the case

3     beyond a reasonable doubt.

4           But what the government is doing is saying that look,

5     I gave you an offer, it should be that if the jury will find

6     against you at the trial you will not be able to say later on

7     that I didn't know I had a chance to have a plea; if I knew I

8     had a chance to make a plea, I would take it, so this

9     conviction can't stand against me, the sentence can't stand

10    against me.

11          That's the purpose of this.  The government wants to

12    protect itself, and it has a right to do that, to make it clear

13    on the record that it has made an offer to you and that you,

14    with advice of counsel, have rejected that offer.  And I gather

15    from what you said from what Mr. Schact said and what Ms. Houle

16    said is that that is the case, that the government made an

17    offer, you rejected that offer.

18          MR. SCHACHT:  Your Honor, I just feel like the record

19    needs to be clear though, or clearer.  You're using the word

20    "offer," we can dispute that --

21          THE COURT:  The offer being --

22          MR. SCHACHT:  The offer being life in prison, a

23    guidelines of life in prison.  Most normal people who speak

24    English don't think guidelines of life in prison is an offer.

25          THE COURT:  Whether it's an offer or not is not the

H51TKOUC

1    point.  They offered you to accept a plea which would involve a

2    guidelines sentence of life imprisonment.

3             Is that right, Ms. Houle?

4             MS. HOULE:  Yes, your Honor.

5             THE COURT:  Is it mandatory minimum life?

6             MS. HOULE:  No, your Honor, a mandatory minimum of ten

7    years or mandatory ten-year sentence on one of the charges.

8             THE COURT:  What's my discretion at sentencing?

9             MS. HOULE:  It would have been ten years to life.

10            THE COURT:  Okay.  So your offer to take a plea was

11   that Mr. Kourani would expose himself, if he pleaded guilty, to

12   a sentence that I would give that would have a range of ten

13   years to life.

14            MS. HOULE:  That's correct.

15            THE COURT:  Is that what you understood, Mr. Kourani?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Mr. Schact, the offer is not to life

18   imprisonment, it's ten years to life.

19            MR. SCHACHT:  I agree.  I agree.

20            THE COURT:  Mr. Kourani understood that and rejected

21   the plea.  Rejected, decided not to plead guilty.

22            MR. SCHACHT:  Yes.

23            THE COURT:  And stands on his constitutional right go

24   to trial.

25            MR. SCHACHT:  Yes, your Honor.

H51TKOUC

1           THE COURT:  Ms. Houle, what else?

2           MS. HOULE:  Your Honor asked that we confirm at this

3    conference that we produced 3500.  We have, your Honor.  To the

4    extent that we meet with witnesses through the rest of this

5    week or weekend we will produce those additional materials on a

6    rolling basis.

7           THE COURT:  Anything, Mr. Schacht?

8           MR. SCHACHT:  Yes, your Honor.  The only remaining

9    issue from my perspective is I submitted certain voir dire

10   questions in a document of April 20, my proposed voir dire

11   questions.  And it's quite important, your Honor, to my client,

12   that your Honor in some way, shape or form, ask the questions

13   or the substance of the questions that I proposed in really

14   most importantly like questions 12 to 15.

15          THE COURT:  What do you want me to focus on?

16          MR. SCHACHT:  Your Honor, I want you in the voir dire

17   to in some way ask questions specially of the potential jurors

18   regarding anti-Arab and anti-Muslim bias.

19          THE COURT:  I will to that.  Let me told you how I

20   will do it.  First, I will ask general questions on their

21   ability to serve on the case; they don't know what kind of case

22   it is, just a matter of time.  And I will tell them that it

23   will be a trial that should finish within two weeks.  Right?

24          MR. SCHACHT:  Yes, I agree.

25          MS. HOULE:  Yes, your Honor.

1          THE COURT:  And then I discuss what the indictment is

2     generally, just a matter of accusations, not proof.  I tell

3     them it's the government's burden of proof to establish beyond

4     a reasonable doubt that the defendant is guilty of the crime

5     charged in the indictment, that the defendant has pleaded not

6     guilty to the indictment, and that means that these are issues

7     of fact that must be tried and decided by the jurors based

8     solely on the evidence you will hear presented in court.  Then

9     I talk about the burden of the government and the presumption

10     of innocence.  So I cover all those grounds and I think those

11     cover most of your questions.

12          And then I introduce counsel from the government, and

13     then I introduce defendant and counsel for the defendant.  And

14     I ask this question:  I say defendant is an Arab and a Muslim.

15     He has the same rights under our Constitution as would a

16     defendant of any other ethnicity or religion.  Is there anyone

17     who feels that they cannot be fair to him because of his

18     ethnicity and religion.  Are you okay with that?

19          MR. SCHACHT:  Yes, I'm okay with that, thank you.

20          Also one of the other questions I think that I

21     highlighted was there have been news articles about the case,

22     it's possible there will be news articles during the trial.  I

23     think asking whether they have any prior knowledge of the case

24     might be appropriate.

25          THE COURT:  I give a brief summary of the indictment.

1   I don't show the indictment.  I ask:  Prior to today have you

2   heard of Hezbollah?  Since 1997 the U.S. Secretary of State has

3   designated Hezbollah as a foreign terrorist organization.  Some

4   of the evidence in this case will relate to Hezbollah's

5   involvement in military conflicts in foreign countries, which

6   may include Israel, Lebanon, Iran and Syria.  Do you have an

7   opinion about Hezbollah, its designation as a foreign terrorist

8   organization, or about military conflicts in the countries that

9   I mentioned that would affect your ability to be fair and

10  impartial in this case?

11              MR. SCHACHT:  I consent to that, thank you.

12              THE COURT:  I go on.

13              As you can tell from the trial, you will hear evidence

14  concerning allegations of the provision or attempted provision

15  of material support to Hezbollah, receipt or attempt to receive

16  military training from Hezbollah, conspiracy to possess machine

17  guns and destructive devices, and unlawful procurement of U.S.

18  citizenship by naturalization.  Do any of you have any

19  independent knowledge about the laws governing such allegations

20  that would prevent you from being fair and impartial?

21              Do you have any opinion about the alleged crimes or

22  laws concerning the alleged crimes that might prevent you from

23  being fair and impartial in this case?

24              Do you speak, read, or understand Arabic?  If so, you

25  are required to rely solely on the translator's translation,

1   not your own.

2              Have you read or heard anything about the case in the

3   newspaper, on the internet, on TV, or by any other source?  If

4   so, provide details.

5              This trial may generate media attention.  You need to

6   follow my instruction that you should absolutely avoid reading

7   or watching media reports concerning the case, including

8   coverage of the case on social media, such as Facebook,

9   Twitter, Instagram, SnapChat and text blogs until after the

10  case is over.

11             Based on anything that you have read, seen or heard,

12  have you formed any opinion about the defendant Ali Kourani?

13             You may hear evidence at trial of criminal activity

14  committed by people other than the defendant.  You may not draw

15  any inference from the fact that those individuals that are not

16  on trial here.  You also may not speculate as to the reason why

17  other persons are not on trial here.  Would any of you be

18  unable to accept that instruction?

19             I don't think I want to give that.  That's part of the

20  charge afterwards.

21             Do you have any bias, prejudice or other feelings for

22  or against -- I will skip that.

23             That's essentially what I will be --

24             MR. SCHACHT:  Thank you, your Honor, that's acceptable

25  to us.

H51TKOUC

1           THE COURT:  That covers your point?

2           MR. SCHACHT:  Yes, it does.

3           THE COURT:  So as I understand it, the government has

4   proposed and the defendant has accepted the idea of an

5   anonymous jury.

6           MR. SCHACHT:  Well, not anonymous from us, no.

7           THE COURT:  Tell me what it is.

8           MR. SCHACHT:  What we agreed to is that the jurors in

9   public, in the courtroom, will be called by their numbers,

10  whatever their numbers are, but that we in the defense and the

11  government will know who the jurors are.  So it's not full

12  anonymity.  That's what I consented to.

13          MS. HOULE:  Yes, we agree with that, your Honor.

14          THE COURT:  Two questions.  We were not planning to

15  have names, the jury clerk would send up the jurors for the

16  array each with a number.

17          Say the procedure.

18          DEPUTY CLERK:  They send up the cards with a number.

19  We refer to each juror as a number.  We don't get their names.

20          THE COURT:  We don't see their name and you don't see

21  their name.  That's the way we are going to proceed, because I

22  thought you wanted an anonymous jury.

23          MR. SCHACHT:  I would object to that for the simple

24  reason that I think -- I don't care if the jurors are anonymous

25  from the public, but I don't want the jurors in their own minds

H51TKOUC

1    to think that they need to be anonymous from my client because

2    there's some reason to fear him.

3            THE COURT:  So how would you do that?

4            MR. SCHACHT:  I have no idea.  It was the government's

5    proposal.

6            THE COURT:  If the names are going to be known to

7    counsel, why can't we use names?

8            MS. HOULE:  The concern is, your Honor, about the

9    jurors' names being said in open court, that there are others

10   who could come to observe the trial who would take note of

11   those jurors' names.  So that is why we proposed an anonymous

12   jury.

13           We don't object to -- we agree with defense counsel

14   that it is appropriate for the parties and the Court to know

15   the jurors' names and they should be referred to by their

16   number when described publicly.  I wonder, your Honor, if it

17   could be sort of the same procedure as normal where there's a

18   printout that comes up with the names of the jurors, but then

19   they are just given numbers at that point, and that we use

20   those numbers to refer to them publicly.

21           THE COURT:  We could try do that, I suppose.  What do

22   you propose, three copies come, one for the Court, one for the

23   government and one for the defense?

24           MS. HOULE:  That sounds right.

25           THE COURT:  We're not sure how this could be

H51TKOUC

1    implemented.  I think what we need is a conference to

2    conference Mr. Schact and Ms. Houle and Ms. Jones and the jury

3    clerk to see if we could accommodate you.  Frankly, I had been

4    planning on having a totally anonymous jury and just refer to

5    them by the number.

6              MR. SCHACHT:  I'm happy to participate in a conference

7    with whomever, but I object to a totally anonymous jury.

8              THE COURT:  I understand.

9              MS. HOULE:  I believe when that printout comes the

10   jurors are already assigned numbers.  We would use those

11   numbers when referring to them.

12             THE COURT:  Ms. Jones said no.

13             DEPUTY CLERK:  They're assigned a number but they're

14   not told that number.  If I go juror number one, who is going

15   to come and take a seat in the first chair?  They don't know

16   their names when they come up here.  They barely know their

17   numbers when we seat them here.

18             MS. HOULE:  Does it say the number on the card they're

19   given?

20             DEPUTY CLERK:  It does, every juror has a number, but

21   they're not told that number upstairs.

22             MS. HOULE:  Is it on the card that they have that they

23   can hand up?

24             DEPUTY CLERK:  They don't hand the card, the jury

25   clerk hands them the cards.

29

H51TKOUC

 1          THE COURT:  We get a stack of cards, we put those

 2   cards in this revolving box, Ms. Jones spins the box and takes

 3   them out one by one.  She uses names, but the numbers would not

 4   be evident on the cards in terms of how we would use it.

 5          Look, I will do whatever you both want to do, so work

 6   it out with Ms. Jones and work it out with the jury clerk.

 7          MS. HOULE:  Thank you, we will.  And I understand that

 8   Judge Oetken recently did this in a trial about two months ago,

 9   so we will figure out exactly how it was done there.

10          THE COURT:  Ms. Thomas, the jury clerk will be coming

11   up here and you can discuss it with her.

12          MS. HOULE:  Thank you, your Honor.

13          THE COURT:  Anything else?

14          MR. SCHACHT:  You addressed all my points.  Thank you,

15   your Honor.

16          MS. HOULE:  Nothing from the government, thank you,

17   your Honor.

18          THE COURT:  So we have rehearsed the procedure.  We're

19   going to proceed with 14 people.  We will seat the total number

20   of jurors that will equal the number of 14 plus 16 peremptories

21   regarding the 12 and two peremptories regarding the alternates.

22   So we have 32 that we seat.

23          I ask all the questions that I ask.  The jurors will

24   give a personal statement in response to who they are and where

25   they went to school and where they grew up, what papers they

30

H51TKOUC

read, what the magazines are, what interests they have on the

internet.  I will give them an instruction throughout not to

use the internet, they're not do any research on their own,

they're not to be on social media or tell what they're doing.

And then we exercise the peremptories.

In response to various questions, some jurors will ask

to be excused, and we'll decide whether they have an adequate

excuse or not generally at the sidebar.  Challenges will be

made as we go along at the sidebar.  I will rule on them.  If a

juror is excused, another juror will be taken and put in that

juror's place and asked the general question is there anything

so far that should be brought to my attention.

At the end of the process, all the challenges for

cause will have been ruled on, ready for peremptories.  The

peremptories will be done at your table.  The government and

the defense will each have a piece of paper and a pad and write

down the numbers of the jurors as to which they exercise

peremptories, ten for the defendant, six for the government.

That is as to the first 28 jurors that are seated.  At the end

of this process -- with regard to these 28, there's another

part of the process with the alternates, but with regard to the

28, 16 jurors will be excused.  If you coincide with any

peremptories or don't ask the peremptories, I will excuse the

jurors from number 28 down.  So at the end of the process there

are twelve jurors.

H51TKOUC

1          The paper you will write on also will have a space for

2    the alternates, and you will each have one challenge for the

3    alternates, and the alternates will be chosen from jurors 29,

4    30, 31 and 32.  Again, if you coincide or don't exercise

5    peremptory, I will excuse jurors from 32 down, so at the end of

6    this process we have twelve jurors plus two alternates.

7          I think if I gave you 15 minutes each that would be

8    sufficient to exercise peremptories.

9          Here is Ms. Thomas.

10          I suggest we go off the record and work this out if

11   that's okay with everybody.

12          MR. SCHACHT:  Yes, your Honor.

13          MS. HOULE:  That's fine, your Honor.

14          (Off the record)

15          THE COURT:  Linda Thomas, jury clerk, has come up to

16   the courtroom and she will address the lawyers and tell us how

17   they can proceed in the way that both sides want.

18          MS. THOMAS:  As far as an anonymous jury selection

19   will go, when the jurors are pooled in on the return date that

20   they are expected to be here, they will be given a number, each

21   and every one of the jurors will be given a number.  I will

22   have access to their names.  So in the courtroom when they come

23   up, they will actually have a card which will have their

24   number.  So this way they don't forget, because I think one of

25   the concerns was that may not remember or know what their

1    number is, but they will have a card which will reflect their

2    juror number.  I will be the only one that has access to the

3    names.

4              THE COURT:  No, both lawyers want to have access

5    themselves, and so that in public, in the courtroom, the jurors

6    will be referred to only by number.

7              MS. THOMAS:  That's fine, because then I will provide

8    you with the usual jury panel list which has the corresponding

9    number and their name, so that list will reflect -- that's the

10   list that you usually get.

11             THE COURT:  Yes, and we get one copy, which Ms. Jones

12   gets.  We'll need three copies then.  And can you each live

13   with one copy?

14             MS. HOULE:  Yes, your Honor.

15             MR. SCHACHT:  Yes, your Honor.

16             MS. THOMAS:  The cards will not have their name.

17             THE COURT:  We'll tell the jury to take the first

18   seat, the second seat, the third seat.

19             MS. THOMAS:  That's fine.  As long as you call out

20   their number, it shouldn't be a problem.  The lawyers have to

21   remember not to use their names, because they will have access

22   to the list.  So that will be an issue more so in the

23   courtroom, you guys are going to have to remember not to say

24   their name, because now you're going to have access to the

25   names.  You just have to be aware that you should only be

H51TKOUC

referring to them by number.

THE COURT:  And these numbers -- how many people are you going to send up?

MS. THOMAS:  You requested 75.

THE COURT:  So they will be numbered one through 75.

MS. THOMAS:  One through 75.

MS. HOULE:  Thank you, your Honor.  Understood.  And we appreciate the clarification on the procedure.

MR. SCHACHT:  That procedure is agreeable.  Thank you very much.

THE COURT:  Thank you, Ms. Thomas.

I think we're finished.  Some other ground rules, the questioning, of course, will be from the podiums, there are two, use either one.  And if you want to approach the witness to give them a hard copy of something or other, you needn't ask for permission, you just do it.  In addressing the jury, I don't require you to stand at the podium, you could move around.  The bar between you and the jury is neutral territory. Don't put papers, don't put books on there, don't lean on it. Separation between you and the jury.

I permit and encourage objections during openings, closings, and all arguments.  Any objections while the evidence is coming in will just be "objection," there will be no speaking objections.  If an issue is going to be coming up, anticipated, bring it to my attention, because once I start I

H51TKOUC

1   will not grant any sidebars unless I feel I need it.

2          It would be the normal trial day begins at 10 o'clock,

3   ends at 5 o'clock, unless I have another matter scheduled.

4   We'll have a mid-morning break.  We'll have an hour and quarter

5   break for lunch.  We may or may not have an afternoon break.

6   That will be the normal way to go.  I don't plan to sit on

7   Friday of next week.  And I think from what you told me, that

8   we should finish by the very beginning of next week.

9          MS. HOULE:  Yes, your Honor.

10          THE COURT:  Okay.

11          MS. HOULE:  Your Honor, sorry, if we could have one

12   moment?

13          (Pause).

14          THE COURT:  The first day of trial we'll need a

15   courtroom larger than this.  Check with Brigitte on Friday to

16   find out where that courtroom is.

17          DEPUTY CLERK:  Right now it's 23B, but that's subject

18   to change.

19          MS. HOULE:  Your Honor, just one point about the

20   objections.  As your Honor knows, there was information in this

21   case and evidence that was covered by the Classified

22   Information Procedures Act.  To the extent that the defense

23   asks a question or raises an objection that would touch on

24   classified information, we would request to say, "Objection,

25   CIPA," so that your Honor understands the basis for our

H51TKOUC

1   objection, and that that could require further discussion at a

2   sidebar.

3           THE COURT:  I just want you to object, I can then

4   rule.  If I can't rule -- I see, if you want to object, just

5   object and I will rule, and if you need further consideration

6   you will tell me that this needs a sidebar suggestion.

7           MS. HOULE:  Understood, your Honor.

8           THE COURT:  Okay, I think we're finished.  I will see

9   you tomorrow at 2:30 or Monday at 10.

10           MR. SCHACHT:  Thank you very much.

11           MS. HOULE:  Thank you, your Honor.

12           (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25