J5EKKOU1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                          17 CR 417 (AKH)

ALI KOURANI,
                                        Jury Trial
            Defendant.

------------------------------x

                                        New York, N.Y.
                                        May 14, 2019
                                        11:05 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                                        District Judge
                                          And A Jury



                        APPEARANCES


GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
AMANDA L. HOULE
EMIL J. BOVE III
     Assistant United States Attorneys


ALEXEI SCHACHT
     Attorney for Defendant

ALSO PRESENT:  KERI SHANNON, Special Agent FBI
MARGARET SHIELDS, Paralegal, US Attorney's Office

1                    (In open court; jury not present)

2                    THE COURT:  At around 9:45 last night, we emailed to

3          both sides a proposed jury charge and a proposed verdict form.

4          Mr. Ross will mark the proposed jury charge as what I think is

5          my next court exhibit, which will be 4, and the proposed

6          verdict form as 5.

7                    There's a slight change in the top.  We'll give you

8          the copy that will replace the one we sent to you last night.

9                    I'd like to draw to your attention my procedures with

10         the jury charge.  Although I read much of this, I will also be

11         extemporaneous.  If someone on the jury asks for amplification,

12         I may reread, or explain, or depart in some fashion from the

13         literal words of the jury charge.  So I don't give out the

14         charge to the jurors.  It's just read orally.  If they have a

15         question, they'll come back and ask for guidance.

16                    Now, I do this because I've found, in many years of

17         practice, that when you give a long document to a person, that

18         person's reading is unreliable.  I've found the most

19         intelligent people read things wrong, and unless you are able,

20         I think, to relate to people and see what they understand and

21         what they don't, that there's things that can be misunderstood.

22                    Secondly, some people on the jury will be better

23         readers than others and will then take on the role of

24         explaining things to the other jurors if they have written

25         charges.  That's not good.  The jurors should be equal.  If

1    they need guidance, they should come out and ask for it.  So I

2    can involve both sides and myself in giving guidance.

3            Third, sometimes when juries deliberate for a long

4    time and become deadlocked in one thing or another, emotions

5    get very high, and it's a very good outlet as they feel to go

6    out and ask the judge to give them a better explanation of

7    something or other.  So for these reasons, I don't give out a

8    written charge.

9            This is the only copy you're going to get.  There's a

10   specific reason for giving you a separate page of things we

11   change, and I reserve the right, until I deliver the charge, to

12   make changes according to how the trial progresses.

13           This is how we'll proceed:  I'll ask the government

14   first what is the first page that you have on which they wish

15   to make a comment, and if the defendant has a page before that,

16   we'll listen to whoever has the comment on the first page.

17           So, Ms. Houle, you don't have to stand, you can sit.

18           MS. HOULE:  Page 11.

19           THE COURT:  What's the first page on which you have a

20   comment?

21           MS. HOULE:  Page 11, your Honor.

22           THE COURT:  Do you have anything before that,

23   Mr. Schacht?

24           MR. SCHACHT:  I'm just checking.  I'm sorry, I didn't

25   organize it exactly that way.

J5EKKOU1

1            No, I do not have anything before that.

2            THE COURT:  Okay.  Just one minute.

3            Page 11.

4            MS. HOULE:  Four lines up from the bottom of the page,

5    your Honor, there's a remaining reference to aiding and

6    abetting a violation of the IEEPA charge.  I just believe that

7    that reference to an aided and abetted --

8            THE COURT:  Yes, we didn't.

9            MS. HOULE:  -- can be struck.

10           THE COURT:  That slipped by, right.

11           So it will say "violated and attempted to violate an

12   executive order," et cetera.

13           MS. HOULE:  "Violated or attempted to violate."

14           THE COURT:  Yes, "or attempted to violate."

15           What's the next page?

16           MS. HOULE:  The next page is page 24.

17           THE COURT:  Anything before that, Mr. Schacht?

18           MR. SCHACHT:  Yes, your Honor.

19           THE COURT:  What page?

20           MR. SCHACHT:  On page 19, I would ask that your --

21           THE COURT:  One minute.

22           MR. SCHACHT:  Sure.

23           THE COURT:  Yes.

24           MR. SCHACHT:  On page 19, I ask that you not give a

25   conscious avoidance charge.  I just think, given the facts in

J5EKKOU1

1      the case, it's unnecessary and confusing.  There's no aspects

2      here of conscious avoidance.  The defendant allegedly confessed

3      to the crime, not with fully and affirmatively, not with any --

4                  THE COURT:  Ms. Houle?

5                  MS. HOULE:  I think, your Honor, that the conscious

6      avoidance instruction is appropriate.  The defense has

7      suggested, in his opening statement and through

8      cross-examination, that Hezbollah was a legitimate

9      organization, not a terrorist organization.  So, to the extent

10     that the defense is going to suggest that the defendant didn't

11     understand that Hezbollah was a terrorist organization, while

12     being embedded in this conduct --

13                 THE COURT:  I believe that Ms. Houle is correct.  So I

14     will overrule the objection.

15                 If it's appropriate, things have changed, you can ask

16     me, before I deliver the charge, to consider the point again.

17                 MR. SCHACHT:  Thank you.

18                 THE COURT:  Next point, Ms. Houle?

19                 MS. HOULE:  Page 24.

20                 THE COURT:  Yes.

21                 MS. HOULE:  It's the second paragraph, and it's the

22     second line of that paragraph, "made an agreement or came to an

23     understanding to violate a particular law."  We would request

24     that "a particular" be struck and replaced with just "the law."

25                 THE COURT:  You're correct.  Have you folks come up

J5EKKOU1

1    with a better indictment to read?  We have it?  Okay.  Thank

2    you.

3         Next?

4         MS. HOULE:  Page 26.

5         THE COURT:  Yes.

6         MS. HOULE:  In our proposed instruction, your Honor,

7    we had proposed that there be a reference to the fact that a

8    conspiracy -- that the defendant is presumed to be a part of a

9    conspiracy until he affirmatively withdraws or the venture is

10   terminated, and your Honor had removed that portion from the

11   charge.  We think it's appropriate here to include that because

12   the evidence in this case will show that there were periods of

13   time where the defendant was in the United States, trained and

14   ready to attack, but was not committing any additional conduct,

15   and I imagine that the defense will focus on that in their

16   arguments.  So the jury needs to understand that until the

17   defendant affirmatively withdrew or the conspiracy was

18   otherwise terminated, he was still a member.

19        MR. SCHACHT:  Judge, I --

20        THE COURT:  Where is it that you want me to say that?

21        MS. HOULE:  At the end, your Honor.

22        MR. SCHACHT:  Judge, I would object --

23        THE COURT:  One minute.

24        Before the paragraph "However"?

25        MS. HOULE:  No, your Honor.  After the paragraph

J5EKKOU1

"However."

            THE COURT:  What's your point, Mr. Schacht?

            MR. SCHACHT:  My point, Judge, is that my client is

charged in the indictment from being a member of a conspiracy

between 2002 and 2015, and so I just don't see it as an issue.

If he withdrew from the conspiracy in 2013, or 2012, or 2009,

he is still guilty.  It doesn't really matter.

            MS. HOULE:  We agree, your Honor, but this is an

accurate statement of the law, and it's applicable to the

evidence here.  So we think it's appropriate.

            THE COURT:  One minute.

            I can insert something like this:  "Once someone

knowingly and intentionally joins a conspiracy, he remains a

conspirator until either the conspiracy ends or that person

leaves."

            MS. HOULE:  That's fine.  Thank you, your Honor.

            MR. SCHACHT:  I object to that, but...

            THE COURT:  And I will insert it at the end of the

middle full paragraph on page 26.

            Next?

            MS. HOULE:  Page 38, your Honor.

            THE COURT:  Yes.

            MS. HOULE:  In the second paragraph, there are

references to overt acts being alleged in the indictment, but

we are no longer providing the jury with the specific overt

J5EKKOU1

1   acts alleged in the indictment, so we believe that those

2   references should be struck.

3           MR. SCHACHT:  I agree, your Honor.

4           MS. HOULE:  So what I would propose, your Honor, is

5   that --

6           THE COURT:  There should be a period after "overt

7   contacts" and "alleged in the indictment" should be deleted?

8           MS. HOULE:  I think, your Honor, what would do it is

9   if the second line read:  "In order for the government to

10  satisfy its burden of proof with respect to the overt act

11  requirement, it is not necessary for the government to prove,"

12  then delete the rest of that sentence, and the beginning of the

13  following sentence, so we would pick up at, "To prove that the

14  defendant himself committed any overt act, it is sufficient for

15  the government" --

16          THE COURT:  I'll accept that.

17          MS. HOULE:  And then the final sentence in that

18  paragraph, it would just end at "in furtherance of the

19  conspiracy."

20          THE COURT:  Okay.

21          Next?

22          MS. HOULE:  41.  Assuming that Mr. Schacht doesn't

23  have anything before that?

24          MR. SCHACHT:  I do not.

25          MS. HOULE:  Okay.

J5EKKOU1

```
1            This is in the paragraph that begins "First," and I'm

2    looking at the second line.  What we would propose, your Honor,

3    is for this to say:  "That criterion is satisfied, as a matter

4    of law, if you find the defendant is guilty of one of the

5    crimes charged in Counts One, Two, Three, or four."

6            And, your Honor --

7            THE COURT:  One minute.

8            MS. HOULE:  Sorry.

9            THE COURT:  Okay.  It should be three or four?

10           MS. HOULE:  Right.  I apologize, your Honor --

11           THE COURT:  So here's the line:  "First, if the

12    defendant committed a crime of violence that can be charged in

13    federal court, that criterion is satisfied, as a matter of law,

14    if the defendant is found guilty of one of the crimes charged

15    in Counts One, Two, Three, or Four."

16           MS. HOULE:  Thank you, your Honor.

17           MR. SCHACHT:  I agree, your Honor.  I was going to

18    make that comment as well.

19           THE COURT:  Good.

20           Next?

21           MS. HOULE:  The next page that I have is page 66.

22           MR. SCHACHT:  I don't have anything before that.

23           THE COURT:  Okay.

24           MS. HOULE:  The last line of this page, your Honor,

25    when you define what it means for something to be proven by a
```

J5EKKOU1

1    preponderance of the evidence, there is a reference -- it

2    relates back to the theory of venue, that some act happened in

3    the Southern District of New York, but there are two theories

4    of venue here.  There is also the 3238 that's described at the

5    beginning.  So what we would propose is striking that second

6    line in the last paragraph and, instead, just inserting "to

7    prove something by a preponderance of the evidence means to

8    prove that it is more likely true than not."

9            THE COURT:  Here's the way I think the last paragraph

10   should read:  "I should note that on this issue, and this issue

11   alone, the government may prove venue if it shows by a

12   preponderance of the evidence that it is more likely than not

13   that any act in furtherance of the crimes charged occurred in

14   the Southern District of New York.  The beyond a reasonable

15   doubt standard is not required for venue.  It is required for

16   every other issue."

17           MR. SCHACHT:  That's fine with me, your Honor.

18           MS. HOULE:  Your Honor, sorry, the issue that I'm

19   raising is that there are two ways that we could prove venue

20   with respect to Counts One through Seven, and that is either as

21   your Honor just described or by showing that the location where

22   the defendant was first arrested was in the Southern District

23   of New York.

24           THE COURT:  There are a number of changes I would do

25   here.  The first two paragraphs, I'll leave as is.

J5EKKOU1

1          Starting with the "With respect" paragraph, "With

2     respect to all the counts, including, but not limited to, Count

3     Eight," I'm going to strike "with respect to all of the counts,

4     including, but not limited to, Count Eight."  The paragraph

5     will start as follows:  "Venue is also appropriate, and it is

6     required for Count Eight that the defendant caused an act in

7     furtherance of the crime charged to occur within the Southern

8     District of New York."  I skip the next sentence, delete it.

9     "The government need not prove that the crime itself was

10    committed in this district or that the defendant himself was

11    present here.  It is sufficient to satisfy this element if any

12    act in furtherance of the crime occurred within this district.

13    I should note that on this issue of venue, and this issue

14    alone, the government may prove venue if it shows by a

15    preponderance of the evidence that it is more likely than not.

16    The beyond-a-reasonable-doubt standard is not required for

17    venue.  It is required for every other issue."

18          I think that captures what we're saying.

19          MS. HOULE:  Thank you, your Honor.

20          THE COURT:  You want me to read it again?

21          MS. HOULE:  Yes.  Thank you.

22          THE COURT:  Starting with the third paragraph:  "Venue

23    is also appropriate, and it is required for Count Eight, that

24    the defendant caused an act in furtherance of the charged

25    crime -- in furtherance of a crime charged to occur within the

J5EKKOU1

1  Southern District of New York.  The government need not prove

2  that the crime itself was committed in this district or that

3  the defendant himself was present here.  It's sufficient to

4  satisfy this element if any act in furtherance of the crime

5  occurred in this district.  I should note that on this issue of

6  venue, and this issue alone, the government may prove venue if

7  it shows by a preponderance of the evidence that it is more

8  likely than not that venue existed.  The

9  beyond-a-reasonable-doubt standard is not required for venue.

10  It is required for every other issue."

11        MS. HOULE:  Thank you, your Honor.

12        THE COURT:  Next?

13        MS. HOULE:  Page 68.

14        THE COURT:  Yes.

15        MS. HOULE:  After the government submitted its

16  requested charge, the parties entered into a stipulation as to

17  the accuracy of the transcripts, and so we did not call

18  Mr. Ehab Ali, and so we would propose, your Honor, that in that

19  second paragraph, the first line remain, everything after that

20  line in that paragraph be deleted and replaced with "The

21  parties have agreed that the translations are accurate."

22        THE COURT:  Okay.

23        MS. HOULE:  And for that final paragraph to remain as

24  is.

25        THE COURT:  I don't know that we need the final

J5EKKOU1

1    paragraph.  I say that with respect to all the exhibits.  I

2    don't have an objection to it being there, but it's redundant.

3              MS. HOULE:  That's fine, your Honor.

4              THE COURT:  I can take it out, Mr. Schacht?

5              MR. SCHACHT:  Yes, that's fine, your Honor.

6              THE COURT:  Okay.  Next?

7              MS. HOULE:  Page 73.

8              THE COURT:  Yes.

9              MS. HOULE:  In the second full paragraph, the second

10   line has a reference to a cooperating witness.  We would just

11   ask to strike that reference since there's no cooperating

12   witness here, and that may be confusing for the jury.

13             THE COURT:  Done.

14             MS. HOULE:  Page 74.

15             THE COURT:  Yes.

16             MS. HOULE:  The last sentence of the first paragraph

17   is a reference to recorded conversations.  We would just move

18   to strike that, as there are no recorded conversations in

19   evidence.

20             THE COURT:  Done.

21             MS. HOULE:  The next page is 77.

22             THE COURT:  Okay.

23             MS. HOULE:  Here, your Honor, the stipulations between

24   the parties, there is one stipulation as to what a witness

25   would say if called to testify, but there are several

1      stipulations that certain facts are true.  So what we would

2      propose is that the second and third lines of this charge be

3      struck and replaced with:  "A stipulation of fact is an

4      agreement between the parties that a certain fact is true or

5      that a witness, if called, would have given certain testimony."

6                  THE COURT:  Okay.

7                  MS. HOULE:  And then for the last line to remain.

8                  THE COURT:  What about the next sentence, "You must

9      accept as true"?

10                 MS. HOULE:  That's fine, your Honor, we can retain

11     that as well, "You must accept as true the fact stipulated and

12     that the witness -- or that the witness would have given the

13     testimony."

14                 THE COURT:  Done.

15                 MS. HOULE:  We don't have any additional changes, your

16     Honor.

17                 THE COURT:  Mr. Schacht?

18                 MR. SCHACHT:  Your Honor, page 81, I would ask that

19     you not give this uncalled witness equally available charge.  I

20     don't think it's factually accurate, and for that reason alone,

21     I think you should not give it.  There are certain witnesses --

22                 THE COURT:  Are you intending to argue this point?

23                 MR. SCHACHT:  I'm not going to argue that there are

24     witnesses that the government should have called that they

25     didn't call.  I am going to argue that they don't have

J5EKKOU1

compelling evidence and compelling witnesses, but I'm not going
to say they're out there in the world, and they failed to call
them.

MS. HOULE:  Your Honor, I think that the defense has
already opened the door to this instruction.  There has been
cross-examination of several of the FBI agents about people who
they interviewed and whether those people were witnesses in
this case.  That cross alone demands this instruction, your
Honor.

MR. SCHACHT:  I disagree, your Honor.  The reason why
is because, if the FBI interviewed people -- well, first of
all, you have to make the assumption I know who those people
are.  I don't necessarily know.  And then the second assumption
is, if they said something that would be helpful to my client,
it's not true that I could even necessarily call them.  I'm not
allowed to call a person who might say, I don't know if Ali
Kourani is in Hezbollah or Ali Kourani is not in Hezbollah,
because you wouldn't allow that testimony because if the person
doesn't really have any way of knowing -- because I think the
reality of what happened is, certain people were interviewed,
they weren't good witnesses for the government, and so the
government didn't call them.  Yet, witnesses, I think, without
my prompting, mentioned that there were people interviewed.
One witness said -- I think Agent Costello said that he had
interviewed eight people.  He was creating the implication, I

J5EKKOU1

1    think, after interviewing those eight people, he conducted some

2    further investigation as a result of interviewing those eight

3    people.  And I just want to be able to say the government has

4    not brought any cooperating witnesses, or any eyewitnesses, or

5    any witnesses who can say that they've seen or heard my client

6    do anything illegal.

7              MS. HOULE:  Your Honor, the defense does know who all

8    of those witnesses were who were interviewed --

9              THE COURT:  Excuse me.  Why don't I just take out the

10   middle sentence and keep the rest?

11             MS. HOULE:  I'm sorry, your Honor, but we don't think

12   that that's sufficient.  The point is that he had an equal

13   opportunity or lack of opportunity to call these witnesses.

14             THE COURT:  I'm not sure.  I don't know.

15             MS. HOULE:  I'm sorry, your Honor, but I would also

16   note that it's not limited to the cross-examination of Special

17   Agent Costello.  This came up, as well, in the

18   cross-examination of Special Agent Ganci, and there, the

19   defense went so far as to elicit hearsay about what one of

20   those witnesses would say about the defendant's membership in

21   Hezbollah.

22             THE COURT:  I don't know if the defendant had an

23   ability to get information from these witnesses.

24             MS. HOULE:  They're his family members, your Honor.

25             THE COURT:  Not all these people were talking about

J5EKKOU1

1     family members.

2                    MS. HOULE:  Most of them are, especially the ones that

3     the special agents were cross-examined about.  And we turned

4     over all the 302s from those interviews.  Those people are in

5     United States, they're in New York, for the most part.  He

6     absolutely had an opportunity to call those people.

7                    MR. SCHACHT:  Judge, I can't call those people because

8     they don't have any relevant testimony.  The government would

9     have objected, and you would have rightfully sustained the

10    objection.  I can't call a witness to say, I've never seen the

11    defendant commit a crime.

12                    MS. HOULE:  If it wasn't relevant, then why did he

13    cross-examine all of the FBI agents about what those people

14    would have said, including over our objection with regard to

15    the defendant's brother, Moustapha?  It's page 65 of the

16    transcript.

17                    MR. SCHACHT:  Judge, the reason I asked FBI agents

18    about who they'd spoken to is because I wanted to point out --

19    and I'm going to point out in summation -- that the FBI has

20    conducted a very thorough, complete investigation, and, as a

21    result of that complete and thorough investigation, they've

22    been unable to bring a single witness to court to implicate --

23                    THE COURT:  I don't think that's a proper argument.

24                    MR. SCHACHT:  It's not proper for me to say the FBI

25    has conducted a good investigation?

J5EKKOU1

1          THE COURT:  What's that got to do with anything?

2          MR. SCHACHT:  It's got to do with a lot.  I'm making

3     the point that they've been unable to bring evidence to court,

4     despite the fact that they've done a marvelous investigation.

5          THE COURT:  What evidence are you talking about?

6          MR. SCHACHT:  I'm talking about the fact that they

7     don't have a recording of my client doing anything illegal,

8     they don't have an email from my client doing anything illegal,

9     they don't have a witness observing or overhearing my client

10    doing anything illegal.  They've introduced tons of emails, and

11    tons of Google searches, and all kinds of electronic proof, and

12    none of those things are themselves illegal.  Obviously, the

13    government's free to argue that they corroborated --

14         THE COURT:  Here's my ruling:  "There are several

15    persons whose names you've heard during the course of the

16    trial, but who did not appear at the trial to testify.  You

17    should not draw any inference or reach any conclusions as to

18    what other persons would have testified to had they been

19    called.  The question you have to decide is whether the

20    evidence in the trial proves beyond a reasonable doubt the

21    crimes charged against Ali Kourani."

22         MR. SCHACHT:  That's fine with me, your Honor.

23         MS. HOULE:  I don't think, your Honor, that addresses

24    an argument that has already been made to the jury through

25    cross-examination that these particular witnesses were

J5EKKOU1

1   interviewed and that they have not been called here to testify,

2   including the defendant's brother, which is page 65 of the

3   transcript.

4           THE COURT:  They may not be subject to subpoena.

5           MR. SCHACHT:  I'm not sure which brother they're

6   talking about.

7           THE COURT:  Moustapha.

8           MR. SCHACHT:  Moustapha is not in the United States.

9           THE COURT:  He wouldn't be subject to subpoena.

10          MS. HOULE:  It's his brother.  He remains in contact

11  with his brother, your Honor.  And this isn't the only person

12  who came up during cross-examination.  I note, again, that the

13  defense cross-examined Special Agent Costello specifically

14  about whether those people were going to be witnesses in this

15  case, which suggests to the jury that the FBI had an obligation

16  or the only opportunity to call them.

17          THE COURT:  If you had objected, I would have stricken

18  the question.

19          MS. HOULE:  Well, we renew our objection, your Honor,

20  then, to the testimony at page 65.

21          THE COURT:  It's too late.

22          MS. HOULE:  Then I think, then, your Honor, it's not

23  too late to strike that, but also to address this argument that

24  has been presented through cross-examination of several

25  witnesses, the best remedy would be to give this instruction.

1          MR. SCHACHT:  Judge, as to Moustapha, as far as I'm

2     aware, there is a warrant for his arrest, I believe.  He's not

3     in the United States.  Subpoenaing him in another country, I

4     wish I had the power to give people visas.  He's not a U.S.

5     citizen.  I can't parole him into the United States.  I don't

6     think I could call him.

7          MS. HOULE:  The defense --

8          THE COURT:  There's ways you can get his testimony if

9     you wanted to.  Here's what it's going to be:  The second

10    sentence that I deleted will have in its place "Each party had

11    the right to call witnesses.  You should not draw any

12    inferences or reach any conclusions as to what other persons

13    would have testified to had they been called.  The question you

14    have to decide is whether the evidence in the trial proves

15    beyond a reasonable doubt the crimes charged against the

16    defendant, Ali Kourani."  We're still going with that.

17         MS. HOULE:  Thank you, your Honor.

18         MR. SCHACHT:  You have my objection, your Honor.  I

19    object to that charge.

20         THE COURT:  You like the charge?

21         MR. SCHACHT:  No, you changed the language.

22         THE COURT:  I added:  "Each party had the right to

23    call witnesses."

24         MR. SCHACHT:  Yes.  I think that somewhat shifts the

25    burden to me when I have no obligation to call any witnesses.

J5EKKOU1

```
1          THE COURT:  Here's my suggestion:  "There are several

2    persons whose names you have heard during the course of the

3    trial who did not appear at trial to testify.  The government

4    is not required to call each and every witness in interviews.

5    You should not draw any inferences as to what any absent person

6    would have testified to had they been called.  The question you

7    have to decide is whether the evidence in the trial proves

8    beyond a reasonable doubt the crimes charged against the

9    defendant, Ali Kourani."

10         MR. SCHACHT:  I object to that, your Honor.  I

11   think --

12         THE COURT:  I've taken out the question --

13         MR. SCHACHT:  I think the jury should be permitted to

14   draw inferences about what noncalled witnesses may say.

15         THE COURT:  No.  Only if there is some particular

16   basis for suggesting that they're being suppressed.  We're

17   going with this one, what I just read.  Should I read it again?

18         MR. SCHACHT:  No.  Thank you, your Honor.

19         MS. HOULE:  Your Honor, again, for the Court to

20   instruct the jury that the defendant had an opportunity to call

21   witnesses is not a burden shift.  That's an instruction that's

22   regularly given in this court.  If you wanted to remedy or

23   address the defense's concern, you could include a line about

24   how the defendant has no burden, but that doesn't mean that he

25   didn't have the opportunity to call witnesses.
```

1          THE COURT:  I understand.  We're going with what I

2      read out.

3          MR. SCHACHT:  I only have one more comment about the

4      proposed jury charge, your Honor.

5          THE COURT:  If Mr. Schacht opens the door to you on

6      this issue, there are ways that you can rebut it, Ms. Houle.

7          Go ahead.

8          MS. HOULE:  Yes, your Honor.  I'm sorry, your Honor,

9      but we believe that he's already opened the door on this issue.

10          THE COURT:  Mr. Schacht?

11          MR. SCHACHT:  Yes, your Honor.

12          THE COURT:  What's your next point?

13          MR. SCHACHT:  My next point is page 84.  This ties

14      into my pretrial request to charge, and so I'll just basically

15      renew that application, just for the record, for possible

16      preservation for appeal purposes, but I don't believe that the

17      jury should be instructed that the statements obtained from my

18      client by the government were lawfully obtained.  I think that

19      they should also be charged that they could find on their own,

20      the jury could, that they were involuntarily made, my client's

21      statements, but that is an issue for which the jury should be

22      allowed to make their own determination.  Just for the record,

23      I'll just recite a couple of the things that I cited earlier.

24      Obviously, this was already fully briefed, but I cited the case

25      of Crane v. Kentucky, at 476 U.S. 683, and both sides briefed

1      this in writing, but I want to renew that application.

2                  THE COURT:  Denied.

3                  MR. SCHACHT:  And then, your Honor, I have one final

4      request, which is not included.  It's something that I'd ask

5      for you to include in the jury charge, which is that, I think,

6      given the particular facts of this case, I would ask that you

7      make it clear to the jury that it is not a crime to like or

8      even be a supporter of Hezbollah, that the crime is providing

9      material support.  The reason why I ask for that instruction --

10     and it could simply be one line -- is that I think a reasonable

11     jury could conclude --

12                 THE COURT:  Where do you want me to say it?

13                 MR. SCHACHT:  I want you to say it when discussing the

14     indictment, that --

15                 THE COURT:  Give me the page.

16                 MR. SCHACHT:  -- when you're discussing -- I'll give

17     you the page.  In page either 13 or 14, just because I think a

18     reasonable view of the evidence could be that my client likes

19     Hezbollah or believes in the mission of Hezbollah, and so, in a

20     colloquial sense, is a supporter of Hezbollah, but that that's

21     not illegal in the United States, but providing material

22     support, obviously, is illegal, just so he's not convicted

23     because he looked at some YouTube videos.

24                 MS. HOULE:  Your Honor, the instruction does not --

25                 THE COURT:  One minute.

J5EKKOU1

1          If it goes anywhere, it will go somewhere on page 17.

2          I don't think these need any further embellishment.

3     Your request is declined.

4          MR. SCHACHT:  All right, your Honor.  I would ask,

5     then, that you include the full statutory language, so that

6     it's clear -- it's even in the indictment -- that the provision

7     of educational or medical supplies to Hezbollah is not a crime.

8     That's specifically included, so, then, the jury will

9     understand that it's possible to support a foreign terrorist

10    organization in certain ways and have it not be criminal.  I

11    think that that's actually in the indictment.

12         MS. HOULE:  Your Honor, there is a line on page 15.

13    In the second full paragraph, it says:  "The term 'material

14    support or resources' does not include medicine or religious

15    materials."

16         MR. SCHACHT:  I did not see that.  I apologize.

17         THE COURT:  That's covered.

18         Next point?

19         MR. SCHACHT:  Your Honor, I have no further points

20    about the jury charge.  I have just motions to dismiss.

21         THE COURT:  Does the government have anything further?

22         MS. HOULE:  No.  Thank you, your Honor.

23         Your Honor, I did have one question:  Is it your

24    Honor's practice to send the exhibits to the jury room?

25         THE COURT:  It is my practice not to send the exhibits

J5EKKOU1

1   to the jury room.  It's my practice to have the exhibits

2   collected, and if the jury wants it, they can have it.  I will

3   try to ask them to define, and ask them in particular, and

4   limit it that way, but it's not my practice to send in all the

5   exhibits.

6          MS. HOULE:  Perhaps, your Honor, then, on page 96 of

7   the charge, where you note that the jurors may request

8   particular testimony, you could also note that they can request

9   a particular exhibit if they provide the exhibit number.

10         MR. SCHACHT:  That sounds okay to me, also, but how

11   are they going to provide the exhibit number if they're not

12   given a list of the exhibits?

13         THE COURT:  They've been taking them down.

14         MR. SCHACHT:  Okay.

15         THE COURT:  Here's the opening lines:  "Have the

16   foreperson send me a note dated with the time, describing the

17   particular item of a particular witness' testimony you wish to

18   hear or the exhibits you may wish to see.  Please understand

19   that it may take some time to recover the evidence you request.

20   You should continue to deliberate in the meantime.  Also, if

21   you do send me any notes," et cetera.

22         MS. HOULE:  Thank you, your Honor.

23         THE COURT:  Anything else?

24         MS. HOULE:  No.  Thank you.

25         THE COURT:  Anything else?

J5EKKOU1

1           MR. SCHACHT:  Nothing.  Thank you.

2           THE COURT:  Okay.  So except as either side objected,

3     is the charge satisfactory to the government?

4           MS. HOULE:  Yes, your Honor.

5           THE COURT:  To the defendant?

6           MR. SCHACHT:  Yes, other than as I objected.  Thank

7     you.

8           THE COURT:  That's what I said.

9           Okay.  See you tomorrow at 10:00 o'clock.

10          MR. SCHACHT:  Judge, could I just briefly make my

11    motions to dismiss?

12          THE COURT:  Oh, I'm sorry, Mr. Schacht.  Yes.  Hold on

13    a minute.  Thank you for reminding me.

14          We haven't gone over the verdict form, before you get

15    on to the motions, which is Court Exhibit 5.  Are there any

16    problems with the verdict form, Ms. Houle?

17          MS. HOULE:  No.  Thank you, your Honor.

18          THE COURT:  Mr. Schacht?

19          MR. SCHACHT:  No problems.  Thank you, Judge.

20          THE COURT:  Okay.

21          I need two minutes.

22          (Pause)

23          (Continued on next page)

24

25

J5EAAKOU2                        Charge Conference

1        THE COURT:  OK.  Mr. Schact, motions?

2        MR. SCHACHT:  Your Honor, I'll simultaneously make a

3   motion at the close of the government's case and the close of

4   the defense case --

5        THE COURT:  Yes.

6        MR. SCHACHT:  -- to direct a verdict in my client's

7   favor.  In particular, I would ask that your Honor dismiss

8   Counts Three, Four and Five, which are the counts dealing with

9   military training and machine guns and explosive devices.

10        I think in particular those three counts, there was a

11   total lack of corroboration for the statements made by my

12   client.  And I know you denied my jury charge earlier on, the

13   need for requirement of a corroboration of a confession, but I

14   would ask that you consider at this time dismissing those

15   counts because the evidence did not corroborate what he said on

16   those counts.  And when you made your earlier ruling you had

17   not yet heard the evidence at the trial.

18        Thank you.

19        THE COURT:  So Counts Three, Four and Five is what you

20   think the government hasn't proved, right?

21        MR. SCHACHT:  I am moving to dismiss all eight counts

22   but I think in particular --

23        THE COURT:  Well, let's focus on Three, Four and Five.

24        MR. SCHACHT:  Yes.

25        THE COURT:  It charges that the defendant sometime in

1    or about 2011 in Lebanon and elsewhere knowingly received

2    military type training from and on behalf of Hezbollah.  That's

3    a key section.  So, the evidence is that when he was 16 --

4    that's as of 2000 -- he went to boot camp and then he went

5    twice more.  One of them was in 2011.  And I think the evidence

6    shows, if I remember correctly, that he had advanced training

7    in the use of various kinds of weapons and explosives.

8             Mr. Bove, do you want to handle this?

9             MR. BOVE:  Yes, your Honor.

10            Thank you.

11            THE COURT:  I think it's better if you stand.

12            MR. BOVE:  Yes, your Honor.

13            So, the evidence on Counts Three, Four and Five comes

14   from a couple of sources.  Two agents, special agents Shannon

15   and Costello testified at trial about the military type

16   training that is at issue in Counts Three, Four and Five.  And

17   they described it as your Honor just did, statements by the

18   defendant that he attended an Islamic Jihad Organization

19   training in Lebanon, specifically, a place called Birkat Jabrur

20   in approximately 2011.

21            Firstly, Rule 29, as your Honor knows, the government

22   gets all the inferences available from the evidence.  So, the

23   one agent's testimony is enough to get passed Rule 29 but there

24   is corroboration.  In those interviews at Seton Hall the

25   defendant actually circled or he had his attorney identify the

J5EAAKOU2                          Charge Conference

1   specific weapons that he was trained on.  So, it's not just,

2   the evidence is not just what the agent said.

3            THE COURT:  And there's a picture in particular of him

4   brandishing a machine gun under the photographs of Ayatollah

5   Khomeini and --

6            MR. BOVE:  That photograph, your Honor, is from a

7   Facebook record and it is not a photograph of the defendant

8   just so we're clear.  And so, we're not relying on that for

9   purposes of this was argument.  What we are relying on though

10  is that it's Government Exhibit 807.  It's a packet of photos

11  of weapons that the agents showed to the defendant at Seton

12  Hall.  And he said, I'm concerned about initialing them myself

13  but Mr. Denbeaux can put a mark on them.  These are the ones

14  that are used.  So he identified an Glock, an MP5, an AK-47, a

15  PKM, that belt-fed machine gun and a rocket propelled grenade

16  launcher.  So, that's a physical document, Government Exhibit

17  807, that corroborates what he said in the interview.

18            In addition, there are travel records in evidence that

19  show that the defendant went to Lebanon in June of 2011 just

20  before the training started.  He left in August right after.

21  So, we're entitled at this phase to all the inferences in our

22  favor.  So, the agents' testimony is enough but there is some

23  corroboration here and I just described it.

24            THE COURT:  Thank you, Mr. Bove.

25            I deny the motion with regard to Three, Four and Five

1    for the reasons discussed by Mr. Bove.

2              What about the other counts?

3              MR. SCHACHT:  Your Honor, my argument is really the

4    same as to the other counts.  I think that there is a lack of

5    corroboration.  And I don't want to belabor the point too much

6    but the types of corroboration that Mr. Bove is talking about

7    are all from the defendant.  So, my defendant's, my client's

8    statements are not corroborated.  Looking at the pictures and

9    saying that's a gun, that's all from him.

10             And so, that's my argument, your Honor.  It is simply

11   not corroborated in any way other than from himself and I know

12   about the travel records.  I know he's gone back and forth to

13   Lebanon a number of times.  We have that in evidence.  I don't

14   think that corroborates the fact that he's been in Lebanon.

15   That doesn't corroborate the fact that he had military training

16   or did anything illegal.

17             THE COURT:  Mr. Bove.

18             MR. BOVE:  It's really an incredible perspective,

19   judge, that's being offered.

20             THE COURT:  Don't use epithets.  Just answer.

21             MR. BOVE:  The defendant confessed to this, judge.  He

22   admitted to doing it to each and every element of each and

23   every count in the indictment.

24             THE COURT:  Is there any evidence, aside from his

25   words?

J5EAAKOU2                    Charge Conference

1            MR. BOVE:  Yes, your Honor.  The different sources of

2    evidence are on his laptop, his e-mail account, the Facebook

3    records, the physical evidence seized from his apartment, a set

4    of notes where he wrote down an acronym for the IJO himself,

5    wrote down some of the training and the tasks that he carried

6    out.

7            So, the corroboration issue, we believe it's about

8    reliability.  Is the defendant's confession reliable?  It's

9    facially an issue that can be raised at this procedural posture

10   under Rule 29?  But there is sufficient corroboration.  Even

11   just the circumstances of the meetings.  The defendant asked

12   for these meetings.  There's sufficient corroboration to find

13   the defendant's statements are reliable.  They were

14   appropriately deemed admissible by your Honor and there's other

15   evidence in the record that backs this up.

16           THE COURT:  I deny the motion for the reasons

17   discussed by Mr. Bove.

18           Anything else, Mr. Schact?

19           MR. SCHACHT:  No.  Thank you, your Honor.

20           THE COURT:  Mr. Bove?

21           MR. BOVE:  No, your Honor.  Thank you.

22           THE COURT:  So, tomorrow morning at ten o'clock

23   Mr. Bove will open.  We'll have the first summation.  He said

24   that he will keep it within two hours.  Mr. Schact will have

25   the second summation and Mr. Bove will have a short reply, and

J5EAAKOU2                    Charge Conference

1    it'll be time for me to instruct the jury also.  They'll

2    deliberate on Thursday and whatever else.  We're going to work

3    this Friday unless the jury has resolved the case.

4              MR. SCHACHT:  Thank you, your Honor.

5              THE COURT:  OK.

6              (Adjourned to Wednesday, May 15, 2019 at ten a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25