# MARK DENBEAUX

August 6, 2019

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Ali Kourani, 17 Cr. 417 (AKH)**

Dear Judge Hellerstein:

I write at the request of Ali Kourani's lawyer, Alexei Schacht, in connection with Ali's sentence in September. I met Ali when a friend of mine from Wisconsin asked me to help Ali with a hideous family and child custody dispute. My late wife, Marcia Denbeaux, a specialist in family law and custody issues, agreed to review his case. She concluded that there was no way that any domestic law would permit him to obtain custody and probably no way that he could even visit with his children. I advised him of this barrier and he returned to Wisconsin. I did not hear from him for many months and one day he called, asked to meet with me and told me that he might have information that the FBI seemed to want from him. He asked if I would arrange a meeting. I informed him clearly that it was a huge risk. He told me that he had run out of options and that there was no hope without the FBI assisting him. I arranged the meeting.

I want the Court to know that, as I testified at the suppression hearing, I never intended to harm my client and relied upon the FBI agent's word that he was a gentleman and would honor his commitment to not let anyone in the Lebanese community know that Ali was speaking to the FBI. And I trusted the other commitments that the agents made as well. I believed that this was a simple trade of assistance by Ali in exchange for immigration/security help for his family from the United States. I had no strategy beyond that and was not trying to trick anyone.

We did not need an immunity letter because the Government was not going to arrest him, or so I was led to believe. I assumed that since he was not arrested that the Government would have arrested him if they had proof he was a terrorist. So the fact that he was not arrested and that they were offering him money and safety for family members was a sign

that he did not need an immunity agreement. Indeed, Mr. Schacht told me that another FBI agent, one whom I have never met, testified at the trial that they offered Ali thousands of dollars "for his time" even though he provided no useful information. This was how the agents behaved with me, they acted grateful and as if they would help Ali just for speaking to them. And since they had no evidence against him (or they would have arrested him) their promise of confidentiality was sufficient for me since that meant the statements would not be used against him – in other words, would be kept confidential.

I did not think that written promises were necessary and Ali followed my advice. That was my fault and not his, and I am upset more than you can imagine at how this turned out.

The reason I go into this detail is to give more color to what happened and to ask that you be as lenient as possible in sentencing Ali. Although he recognized the risk, I deeply regret not persuading him to give up on his family and to avoid the FBI. But for my arranging the meetings and allowing him to talk freely with the FBI he would not be where he is. This case is unique in that sense and so I ask for mercy toward Ali who approached the FBI and followed my counsel in doing so.

Very truly yours,

Mark Denbeaux