RECEIVED
SDNY PRO SE OFFICE

# MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District SOUTHERN DISTRICT OF NEW YORK |
|---|---|
| Name (under which you were convicted): ALI KOURANI | Docket or Case No.: 1:17-cr-00419-AKH-1 |
| Place of Confinement: UNITED STATES PENITENTIARY, P.O. BOX 1000, MARION, IL | Prisoner No.: 79196-054 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| v. | ALI KOURANI |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    UNITED STATES DISTRICT COURT/SOUTHERN DISTRICT OF NEW YORK, 500 PEARL STREET, NEW YORK, NY 10007

    (b) Criminal docket or case number (if you know): Case No: 1:17-cr-00419-AKH-1

2. (a) Date of the judgment of conviction (if you know): JURY VERDICT: 5/16/2019

    (b) Date of sentencing: DECEMBER 03, 2019

3. Length of sentence: 480 MONTHS

4. Nature of crime (all counts): COUNT(1): providing material support or resources to terrorists 2339(b) COUNT(2): conspiracy to provide material support or resources to Hizballah(2339B); COUNT(3): receipt of military type training(2339D); COUNT(4) conspiracy to receive military type training; COUNT(5) conspiracy to possess, carry&use machine guns and destructive weapons-924(c)-TERMINATED AFTER SUPREME COURT DECISION; COUNT(6) penalties, violates any license or order(making or receiving a contribution of funds, goods and services to and from Hizballah(1705); COUNT(7) penalties, violates any license or order(conspiracy to make or receive any contributions of funds, goods and services to and from Hizballah(1705); COUNT(8): Procurement of citizenship or naturalization in connection with an act of international terrorism(1425).

5. (a) What was your plea? (Check one)

    (1) Not guilty ☒   (2) Guilty ☐   (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?
    N/A

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☒   Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☒    No ☐

8. Did you appeal from the judgment of conviction?    Yes ☒    No ☐

9. If you did appeal, answer the following:

    (a) Name of court: UNITED STATES COURT OF APPEALS, FOR THE SECOND CIRCUIT/THURGOOD MARSHALL US COURTHOUSE

    (b) Docket or case number (if you know): 19-4292

    (c) Result: DISTRICT COURT JUDGMENT AND CONVICTION IS AFFIRMED

    (d) Date of result (if you know): OCTOBER 14, 2021

    (e) Citation to the case (if you know): N/A

    (f) Grounds raised: (1) Whether district court erred in denying defendant/appellant ALI KOURANI'S motion to suppress confessions he made during a series of interviews with the FBI; (2) Whether the district court erred in denying KOURANI'S motion claiming ineffective assistance of counsel; (3) Whether the district court erred in declining to provide KOURANI'S requested jury instructions; (4) Whether the evidence adduced at trial was sufficient to support KOURANI'S conviction; (5) Whether KOURANI's sentence of 480 months of imprisonment was procedurally and substantively unreasonable.

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☒

        If "Yes," answer the following:

        (1) Docket or case number (if you know):

        (2) Result:

        (3) Date of result (if you know):

        (4) Citation to the case (if you know):

        (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☒    No ☐

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: SAME AS ABOVE

        (2) Docket or case number (if you know): SAME

        (3) Date of filing (if you know): JULY, AUGUST, DECEMBER, 2022

(4) Nature of the proceeding: N/A

(5) Grounds raised: Request for JENKS ACT MATERIAL/Reconsideration of suppression motion based on new evidence/ Plain error concerning Jury Instructions. Request for discovery.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application? Yes ❑ No ☒

(7) Result: NO RESULT YET

(8) Date of result (if you know): N/A

(b) If you filed any second motion, petition, or application, give the same information: N/A

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application? Yes ❑ No ❑

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application? N/A

(1) First petition: Yes ❑ No ❑

(2) Second petition: Yes ❑ No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** SEE ATTACHED *( Ground 1 through 9)*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground One:** TO NINE

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why:

The defendant doesn't know why his previous attorneys didn't file such issues ?

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

  Yes ❑    No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

  Yes ❑    No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

  Yes ❑    No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

GROUND SEVEN—SAME AS ABOVE

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑   No ❑

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑   No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑ No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑ No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑ No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑ No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑ No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ALL GROUNDS RAISED HERE FOR THE FIRST TIME. I AM NOT A LAWYER. I WAS GIVEN INEFFECTIVE ASSISTANCE OF COUNSEL.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ☒ No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.  Same Court and docket number, issues raised, request for JENCKS ACT material/Reconsideration of suppression motion based on new evidence/Plain Error concerning jury instructions/Produce discovery material.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:  PEGGY CROSS-GOLDENBERG, 52 DUANE STREET, 10TH FLOOR, NEW YORK, NY  10007

(b) At arraignment and plea:  PEGGY CROSS-GOLDENBERG/SABRINA P. SCHROFF, 80 BROAD STREET, 19TH FLOOR, NEW YORK, NY  10004

(c) At trial:  ALEXI  MARC SCHACHT, 123 WEST 94 STREET, NEW YOURK, NY  10025/LAWRENCE MURRAY HERRMANN, 3251 76th STREET, 2ND. Fl., JACKSON HEIGHTS, NY  11372

(d) At sentencing:  SAME AS C(1)

(e) On appeal:

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☒

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    (b) Give the date the other sentence was imposed:

    (c) Give the length of the other sentence:

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐     No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

**SEE ATTACHED MOTION**

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:
DISMISS THE CASE.  RETRIAL.  RESENTENCE.

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

(month, date, year).

Executed (signed) on ___MARCH 03, 2023___ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
                    Plaintiff,                    Case No. 17-cr- 417
                                                  (AKH)
v.
ALI KOURANI,
                    Defendant.


DEFENDANTS' MOTION TO VERIFY THE TIME TO FILE HIS 28 U.S.C.
S. 2255 MOTION AND REQUEST FOR EXTENSION OF TIME TO FILE THE SAME IN PRO
SE

        Comes now the Defendant ALI KOURANI, IN PRO SE, (hereafter referred to

as "the Defendant") with his above captioned MOTION TO VERIFY THE TIME TO

FILE HIS 28 U.S.C. S. 2255 PETITION/MOTION AND REQUEST FOR EXTENSION OF

TIME TO FILE THE SAME IN THE PRO SE CAPACITY; and in so doing avers the

following in support thereof:

I.   THE DEFENDANT MOVES THE COURT FOR VERIFICATION AS TO THE TIME FOR
     THE FILING OF HIS S.2255 MOTION IN THIS CASE.

28 U.S.C. S. 2255(f) provides in relevant part that a motion pursuant to

section 2255 must be filed within one year of "the date on which the jud-

·gment of conviction becomes final." The United States Supreme Court has

held that a judgment and conviction becomes final when the time expires

for filing a Petition For Certiorari contesting the appellant's courts'

affirmation of the conviction." See Clay v. United States, 537 U.S. 522,

525, 123 S.Ct. 1072, 155 L.Ed. 2d 88(2003); accord Moshier v. United States,

402 F.3d 116, 118(2nd. Cir. 2005)(citations omitted).

Here, the Circuit affirmed Defendant-Kourani's conviction on July 27, 2021.

Then, the Second Circuit denied the petitioners petition for rehearing by

the panel or rehearing EN BANC on October 7th, 2021. (See APPENDIX-A)

The Defendant moved the Supreme Court of the United States to extend his

-1-

time to file a PETITION FOR WRIT OF CERTIORARI, which the Clerk of The Court approved until March 7, 2022. (See APPENDIX-B)

The Defendant failed to file a WRIT OF CERTORARI in the Supreme Court due to the institutional lockdown where he was/is incarcerated because of the COVID-19 pandemic. As a result of the COVID-19 lockdown the Defendant became infected as a result. Accordingly, in late February, 2021, the Defendant had one year from March 7, 2022 to March 07, 2023 to file his petition. It appears that March 07, 2023 is the date by which the Defendant must file his S.2255 petition. The Defendant hereby moves the Court to verify the March 07, 2023 date as the date for the filing of the Defendants' S.2255 in this case.

The Court should understand and be aware that the Defendant is currently confined to the "Communication Management Unit" at the United States Penitentiary, Marion, Illinois. See BOP Program Statement 5214.02 and Aref v. Lynch, et al., 833 F.3d 242(D.C.Cir. 2016). Due to the circumstances beyond the Defendants' control and the movants' various health conditions, all the mail deliveries were delayed and postponed, which led to missing important discovery and court transcripts, complexity of the legal issues at hand, and the fact that the Defendant has/had little experience in litigating motions and with no legal assistance. The Defendant respectfully asks the Court for an additional (60) days from March 07, 2023, up to and including May 07, 2023. The Defendant envisions that the Court will have and review his petition before March 07, 2023. The Defendant asks the Courts' indulgence and allow him to bring to your honors' attention the hardship(s) the Defendant is facing in writing his S.2255 petition/ motion. As the Defendant has explained in prior motions he is missing most of the discovery in this case; and the government never reached out

-2-

18)

to the Defendant to arrange the transfer or acquisition of the case file

discovery in this case; and, even with their awareness that I'm proceeding,

IN PRO SE, coupled with the fact that my trial and appellate attorney sent

all the discovery back, I am at a loss to be able to move forward with any

meaningful ability to prosecute my S. 2255 petition.  The Complexity of my

legal issues at hand, for example, as to COUNT#8, NATURALIZATION FRAUD,

where the case law in United States v. ALEXI SAAB this Court appointed

him an immigration C.J.A Panel attorney, while I was falsely and deliber-

ately charged with that count with no  help. . .especially now when I need

it most.  The harsh sentence. . .which is equivalent to a life sentence. . .

require the interests of justice to be served in my case with a full and

fair presentation of the arguments on collateral attack, and necessitate

the appointment of counsel.  In so doing it is the Defendants' request

that your Honor will consider appointment of counsel in this case, on my

behalf, due to the complexity of issues and the attendant harships I face

in my austere form of confinement at this time.

Dated:  December 27, 2022

Respectfully submitted,

ALI KOURANI
DEFENDANT-IN PRO SE
ADDRESS:  #79196-054
P.O. BOX 1000
Marion, Il  62959


CERTIFICATE OF SERVICE

I, the undersigned, hereby place my MOTION TO VERY TIME AND EXTENSION OF
TIME in the "Prison Mailbox" for delivery in the U.S. Mail, postage pre-
paid, this 27th day of December, 2022, to all parties.

s/ ALI KOURANI
ALI KOURANI


-3-

19-4292-cr
*United States v. Kourani*

Appendix A -

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2020

No. 19-4292-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

ALI KOURANI, AKA ALI MOHAMED KOURANI, AKA JACOB LEWIS, AKA
DANIEL,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: APRIL 13, 2021
DECIDED: JULY 27, 2021

Before: KEARSE, CABRANES, AND POOLER, *Circuit Judges.*

Appendix - A-

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of October, two thousand twenty-one.

United States of America,

        Appellee,

v.

Ali Kourani, AKA Ali Mohamed Kourani, AKA Jacob Lewis, AKA Daniel,

        Defendant - Appellant.

**ORDER**

Docket No: 19-4292

Appellant, Ali Kourani, filed a petition for panel rehearing, or, in the alternative, for rehearing *en banc*. The panel that determined the appeal has considered the request for panel rehearing, and the active members of the Court have considered the request for rehearing *en banc*.

IT IS HEREBY ORDERED that the petition is denied.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

18)

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

January 20, 2022

Mr. Ali Kourani
Prisoner ID 79196-054
USP Marion
P.O. Box 1000
Marion, IL  62959

Re:  Ali Kourani
v. United States
Application No. 21A346

Dear Mr. Kourani:

The application for an extension of time within which to file a petition for a writ of certiorari in the above-entitled case has been presented to Justice Sotomayor, who on January 20, 2022, extended the time to and including March 7, 2022.

This letter has been sent to those designated on the attached notification list.

Sincerely,

**Scott S. Harris**, Clerk

by

Lisa Nesbitt
Case Analyst

Ground One
-----------------

"There's a picture in particular of him [defendant] brandishing a machine gun under the photograph of Ayatollah Khomeini".

Judge Alvin Hellerstein

"As the judge said that, the reality hit me hard that I just had the most unfair, racial biased and pretense trial, a rail road show!Just because the image the judge pictured me in never existed. "

Defendant Ali Kourani

The question that asks itself, how did the judge have such a conclusive guilty picture of the defendant, although that dangerous picture never existed? The judge used that no existential picture to deny the dismissal of a 10 years for count 3 & 4 (trial trans. -1-). How did the trial attorney let that happen? Sure after judge Hellerstein made the statement, AUSA Bove clarified that's not the defendant in such picture. The incident happened during the charge conference away from the eyes and ears of the jury. The trial was over and the prejudicial damage had occurred and here are the reasons how the defendant trial attorneys failed their client.

A- Admission of inflammatory and Irrelevant evidence: the trial court violated the defendant's due process rights with its erroneous admission of Facebook (F.B) pictures and accounts that don't belong to the defendant, don't constitute a crime and irrelevant to the crime charged.

1. The AUSA introduced a F.B account for a man named Ali Kourani(Trial Exhibit -1-), other than the defendant. (The Kourani family is too big and no surprise if there were more that 2000 Ali Kourani out there). This Ali Kourani, we nickname here AKII, so we won't confuse the court or the public as the prosecutor did during the trial, is a relative of the defendant and that's why they resemble each other, especially with the thick eye brows. AKII lives in Lebanon, in a region run by Hezbollah and its supporters. AKII like Hezbollah and share their propaganda. The AUSA introduced AKII F.B. Hezbollah pictures because one time, few years ago, the defendant send him (AKII) a copy of his Lebanese passport on his email. The prosecutor didn't show that the passport copies were used in any illegal way. The juror, the judge and anyone sitting in the court room could only see a government exhibit (Trial exhibit-1-) of a F.B. account titled "Ali Kourani", same name of the defendant, with pictures of Hezbollah leaders, soldiers with guns and which doesn't belong to the defendant. The AUSA with such trick became a magician seeking trickery not justice. The defendant's attorney should have objected to the introduction of such confusing F.B pages and wild criminal speculation the AUSA tried to infer in the mind of the jurors. Defendant's attorney had in evidence that the defendant's copies of his Lebanese passport were never used illegally and should have object to their

-1-

2. AUSA introduce F.B. Account of Bilal Kourani (B.K.), who is also a relative of the defendant and resides in Lebanon. B.K. has a F.B picture of himself carrying a Klashinkoff standing under the picture of a famous Shia Clergy "Sader" who is the spiritual leader of "Amal" party the political rival of Hezbollah in Lebanon. Now imagine this scenario, during the trial of one of the protestors of January 6 attack at Capitol Hill, the government introduce a F.B. pictures of the defendant/ protester 's friend. A friend whose F.B. profile clearly show that he is very devoted democratic party member and own guns. The picture of this friend with gun, were evidence of the protester/ defendant violent action to over turn the election. Sure no defense attorney or court will accept an introduction of irrelevant and inflammatory evidence like that . Neither would a prosecutor, with a reasonable mind, would openly make a joke of himself. In the defendant's trial everything bias, prejudicial and paint a bad image of the defendant by association or speculation was introduced with no objection or an evidentiary hearing request form his attorney. The prosecutor introduced B.K. F.B pictures flashing money, guns, like any rapper in the U.S, and even pictures of his friends with guns (trial exhibit -2-)( till this day the defendant doesn't know who are those people with guns) to brainwash the court and jurors and demonize the defendant. Then the prosecutor stated, that the defendant went on a training camp with Hezbollah in 2011 in Lebanon, and as evidence he deleted FB conversation between him and BK. The trial attorney should have objected for such speculation and requested evidentiary hearing before the trial, first because BK was only 12 or 13 years old in 2011 and second a deleted/ non existing alleged evidence is no evidence because it can not be examined by the defendant and third the trial attorney should have made the government produce such deleted messages from Bk FB account or the least get an affedative from him (BK). The prosecutor know there is nothing such messages his only goal was to introduce the inflammatorily pictures of guns, clergy, with black turban, and people that look like the defendant and has his last name to fixate voilent / terrorists image of the defendant in the juror's mind.

3. Then the prosecutor introduced the profile pictures of Mohamad Sadek, with his dad, who is a famous Shia Clergy, and leader of Hezbollah Mr. Nasrallah, another famous Shia clergy, a family picture ( trail exhibit 3). The prosecutor introduced such pictures for the same reasons of deception and brain washing mentioned above in NO 1 & 2. Again the prosecutor talked about deleted messages, but the trail didn't show any criminal activity between Sadek and the defendant or even any criminal activity on Sadek side, or else he could have been indicted or mentioned as a codefendant. The trial attorney failed to show the jurors that international presidents and politicians meet with Mr. Nasrallah. The trail attorney could have asked the prosecutor to retreive the deleted messages from Sadek F.B. account but instead gave them a carde blanche to parade irrelevant and inflammatory pictures. The trail attorney could have called Sadek, who has PhD from a European college, as a witnesses or at least get his affidative about the conversation.

4. Introducing an ISIS anthem (Trail exhibit 4). The prosecutor ultimate farce in trail is introducing a ISIS extreme

7. Pictures of the house of the defendant's parents in Lebanon with a picture of Mr. Nasrallah in the living room as the only proof that he received funds/ services (count 6 & 7) from Hezbollah. First that house doesn't belong to the defendant and there was no stipulation on that and second that house was built by the Lebanese government after the Israel forces destroyed the old parent's home during the July 2006 aggressive invasion. There was not even a shredded evidence that the defendant participate any how in building that house. Then the court sentenced the defendant for 20 years based on count 6 & 7, just based on such pictures and even though the judge stated at one point during sentence (Sentence Trans.-1-) that the defendant should not be punished for his family actions.

8- The government exhibited ostentatiously a cart fully loaded with weapons, with the star appearance for the belt fed machine gun. The jurors were obviously fearful of the machine gun that they asked the judge couple questions about it and at different occasions. There was also an interrogatory question about the machine gun in count 5, which after trial was terminated due to a Supreme Court decision. This cart of terrorizing weapons should not be introduced to the jurors as an evidence of military training especially the only other related evidence is a group of pictures marked with star. The weapons itself is not an element of the crime charged in count 3 & 4. Even if the defendant owned all of these guns and were never used in any criminal activity or were not owned against the law, the government can NOT introduce them as evidence since it violates defendant's right to bare arms. The crime charged in count (3, 4 & 5) is training by an F.T.O., there is no crime in itself to train how to use arms and the tool / weapon is not the crime in itself. The trial attorney should have objected to such evidence and prosecutor's evidence should only weigh on training by / for an F.T.O. In another trick, about guns, the prosecutor introduced as an evidence that someone searched on the website "eBay" the word gun (trial exhibit -6-). First all government's witnesses ( FBI agents, computer forensics, AUSA paralegal) all testified that there is no evidence the defendant did such search from the seized laptop. Second that search is not illegal or constitute any crime. Third no weapon or gun was ever been purchased on eBay. Fourth and most important, the prosecutor applied one of his tricks here as it look like he edited the photos of the screen shot of the eBay search. A quick look at the search results, introduced by the government, the viewer could easily noticed that there are several items listed, with a price range between $10 & $20. No where in the U.S you can buy a gun for $10 not even a sling shot. the prosecutor goal was never to prove the alleged crime beyond reasonable doubt, but otherwise within the scope of fear, prejudice, terror and misconception. The prosecutor wrote almost a 30 page brief to the appellate court and attached 62, SIXTY TWO, pages of the fake / photo edited, eBay search and that's how much importance the prosecutor gave to such absurd and misunderstood events. The defendant's attorney (

-4-

trial and appeal) should have not felt under the spell of the prosecutor and should have never allowed such farce evidence to be used.

9. there are so many other evidence in the trial, the defendant here he can not remember because he doesn't have his discovery or because he moves this court through this motion to exclude them by other means.

All of the above evidences NO 1-9, should have been excluded from the prosecution of this case because first its inflammatory, second its irrelevant, third its substantially unfair prejudice and fourth its NO/ NADA probative value to the alleged crimes. Sure, if the prosecutor had a strong case he wont introduce any of that evidence and if he wanted to take every mentioned evidence above (NO. 1 to 9) singularly, they may prevail in the argument that such singular evidence had not all the effect on a jury verdict. But as proven above, all such evidence constituted the majority of trial and prosecution proceedings. The prosecutor introduce such inflammatory evidence to paint a terrorist picture of the defendant with a brush of a magician and the colors of fear, terror, deception, manipulation, diatribe, defamation and calumniation. the government painted a terrorist picture of the defendant by the preponderance of inflammatory and irrelevant evidence. The whole theme of the trial was to invoke social biases, prejudicing jurors against the defendant and leading them to misconstrue other evidence. If this case was strong, guilt could have been proved without involving deceptions, lies, and anthems that inject racial bias and undue prejudice. The defendant's attorney had an obligation to ban all the government's evidence that don't have factual links to the case. The defendant's attorney should have prevented the prosecutor from scaring the jurors of the defendant and playing on their fear and emotions. The trial was like a flask of red wine, every time the prosecutor introduce an irrelevant , inflammatory, and pernicious evidence, he dripped a blood drop in the flask. Every time he introduce a provocative anthem, a cart of guns and unrelated actions of family and friends he dripped a blood drop. At the end of the trial that flask of wine was overflowing with blood, that the defendant is not willing to drink. And that's how you make the judge and surely the jurors, create this imaginable image of the defendant, out of fear and deception, in their head, a fake "jihadist" , "a picture in particular of him brandishing a machine gun under the photograph of Ayatollah Khomeini", to be found guilty by friend/ family associations, by F.B. pictures never yours, by guns you never had, by an anthem, you rather go blind before you watch it, by your native tongue, by your race, by discriminations and prejudice bias. The government had all that evidence (NO. 1 to 9) before they arrested the defendant but never charged him with any crime until the FBI interrogated him. A corroboration evidence is no evidence if it doesn't have any element of the crime. Evidence mentioned in NO. 1 to 9 should not have been admitted because the prosecutor gave them great importance through all the trial, especially in the closing argument and definitely influenced the judge's decision and juror's deliberation. Such evidence should have been excluded because their danger of unfair prejudice substantially outweighed the probative value, which was none. The evidence carried a substantial risk of unfair prejudice to the right of the defendant of fair trial. The

-5-

12) defense attorney gave the prosecutor a paved highway to admit prejudicial extrinsic evidence that is supposed to prove propensity then to allow propensity evidence in sheep's clothing. All of the above evidence, which literally describe all the category of evidences introduced in this trial, were unfair prejudice, confusion of the issues, misleading the jury and the judge, extending the time of the trial by almost two third, waste of time and needless presentation of cumulative evidence. In definition, "unfair prejudice' refers to an " undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" or "evidence designed to elicit a response from the jurors that is not justified by the evidence". Even a person's reading habit, literary tastes or political views can not be used as evidence against the defendant. In conclusion, the prosecution should have focused their attention on evidence that directly related to the defendant and the elements of his crime charged and that's how you only serve justice and apply the law.

Ground Two:

"Brady and Discovery Violations"

1.    The trial attorney failed to request from the government
a letter that shows the Defendant didn't commit any crime, as
charged in the indictment, at least from July 2013 or at
January  2015 till the day he was arrested in June 2017.   Such
letter was the duty of the attorney, since similar letter was
given in a similar case (United States v. Alexei Saab).   The
attorney could have used that letter to rebut the governments
arbitrary concoctions during the prosecution of this case as in
conspiracy charges, an affirmative defense strategy, statute of
lilitation, rebuting the governments narative that the Defendant
was trying to flee and join Hizballah and in senteceing (as the
Defendant stopped the alleged crimes on his own and should be
sentenced to much less time than others of similar cases caught
red handed). (Sentencing Trans. 1 + 2 )

    The judge had instructed the jury (trial transcripts -2-)
that they can NOT find the Defendant guilty of a conspiracy if he
voluntarily left the conspiracy and such letter could have emph-
asized this point and others to the jurors.

2.    "Witnesses and Informant Names"

    The Defendant's attorney (trial & appeal) were ineffective
when they failed to have the government reveal the names of the
true witnesses/informants that initiated the prosecution of this
case.   They failed to ask the government to unredact the informant's
names from the 302's reports.   Even after A.U.S.A. Houle testified
in court that they gave all those names to the Defendant's attorney,
what benefits they got from the government to impeach the govern-
ments other witnesses as the F.B.I. agents and how their initial

-1-

accusations of the Defendant had no probative value to initiate this wild investigation. Before trial, the Defendant ask his trial attorney to subpeona one of those informants to trial, the trial attorney followed upon the request with the A.U.S.A. via email, A.U.S.A. Haule requested to talk about this matter on the phone, as if in directly asking the attorney to keep informant matters off the record in a dilberate intention to keep the probable cause of prosecution in a dark closet. The informant was never called to trial where his tesimony could have shown he had no morals, vindictive hate toward the Defendant and his family and the massive package of benefits, as immunity from prosecution in real terrorism cases and money, the government had paid them.

3.  The government failed to produce important discovery materials from the following agencies: (unknown itelligance agency that inter-rogated the Defendant , I.C.E., Homeland Security, T.S.A., N.Y.P.D. Intelligance and others). Such discovery is important to the case and could have helped the Defendant in impeaching the government's witnesses, especially the F.B.I. agents and rebutt the government narratives. For example and not limited to all correspondence/reports between F.B.I. agents that investigated the Defendant and D.O.J. attorney "Lorito Lukose," I.C.E. attorney "Adam Pampoulous," A.U.S.A. "Andrew Bateman" and F.B.I. supervisor "Jeffery Hunter." Such correspondence would have rebutted the governments pretense that the F.B.I. agents "personally" promised the Defendant and his att-orney and the United States Government is not liable for such promise because it was never aware of such promise. The promises included confidentiality of the meetings, no prosecution and the

assurring saftey of the Defendant's family by granting them visa's
and bringing the Defendant's two United States citizen children
back to the United States.  Also such correspondence would have
with no doubt, proved that the F.B.I. agents and by authority
relation, the United States government lied to the Defendant
and later on to this court when they didin't keep their promises.
The government didn't produce a video recording of the Defendant's
interrogation on June 1, 2017 at 26 Federal Plaza, where A.U.S.A.
Bove declare he is aware of the F.B.I. promises and willing to ful-
fill such promises if the Defendant cooperates.  F.B.I. agent
Costello even promised the Defendant and his attorney during that
day that he will be home by the weekend if he cooperated.  The
government didn't produce any correspondence/reports between
them and international governments as Canadian, Jordianian, Labanese,
etc. that shows the maximum coerecion that was applied on the Def-
endant and his family which gave him no choice but to sit with the
government for the fear of his and his family's life.  The trial
attorney failed to call such government agents whom the F.B.I.
agents labeled as higher ups that authorized all their promises.
The discovery of the governments agencies correspondence can rebutt
the governments narrative that the Defendant confessed  voluntarily
but otherwise showed the coercion and the overreaching of the
governments subjected the Defendant and his family to.  As an ex-
ample during the supression hearing and later in the other court
proceedings, the government stated under oath, that a promise of
confidentiality was not applicable since the Defendant was asking
the government to protect his family, especially his children, by
bringing them from overseas and which required the F.B.I. to reach

-3-

out to other agencies as immigration and which make the Defendant's
cooperation become public. Then later in trial, the honest F.B.I.
agent Batista, testified under oath that the F.B.I. Task Force,
included an I.C.E. agent for immigration proceedings and as a
liason between the F.B.I. and Immigration to keep F.B.I. and
Immigration needs in closed circuit.  The N.Y.P.D. Intelligence
were involved extensively  in the investigation but the Govern-
ment failed to produce any related materials because such materials
would show that an arrest  in 2013 was intentional and a result of
an on going investigation not as a reason to start investigation.
N.Y.P.D. I discovery material will show how informants were telling
lies about the Defendant and his family out of hate and holding
grudges.  Those subject matter material could exonerate the
Defendant from all charges, supported different defense strategy,
and prove that the United States Government higher ups (D.O.J. &
others) authorized the F.B.I. agents promise of confidentaility
and no prosecution.

4.   The government started recording the Defendnat's phone calls
in July 2013.  The Government produced the phone records and all
recordings untill around December 2016 (the Defendant here is
certain of the year, but not certain of the month because the
A.U.S.A. office never sent the Defendant discovery after his
previous attorney returned them back and the Defendant was pro-
ceeding pro se).  The phone calls starting from January 2017
until the Defendant was arrested were surprising never produced.
The importance of such calls is that it would have shown that the
Defendant's attorney "Denbaux" did  confirm the government's
promise of which most important is "No Prosecution" (the govern-
ment can not argue that such conversation are confidential and

-4-

cannot be recorded since it never redacted the text messages be-
tween the Defendant and his attorney.  Such calls also show that
just before the Defendant had reached out to his attorney "Denbaux"
to talk to the government, the F.B.I. were still going around to
the Defendant's family and friends to inquire  about him, to have
him cooperate and send him serious threats.  Such call recordings
clearly show how the F.B.I. diliberately deprived the Defendant
of his United States born children and the coercion the Defendant
was under.

Ground Three:    "Ineffective Assistance of Counsel"

The Defendant's trial attorney failed to present evidence
that rebutted the government's accusations and exonerate the
Defendant from the charged crimes.  The attorney failed to present
evidence of the involuntariness of the Defendants confession and
the untruthfulness of the government in presenting it's case.

1.   Supression Hearing (S.H.) during the supression hearing to
surpress the Defendant's alleged confessions, his attorney failed
to issue a "protective order" to limit the hearing to the issues of
the supression hearing  of the Defendants statements.  The Defend-
ant respectively asked his attorney to have the judge issue such
order, but he failed to do that.  The hearing in return turned out
to be a "Bench Trial" for the Defendant where as the A.U.S.A. and
the judge asked the Defendant and all other witnesses about the
elements of the crime charged.  The judge later on used such irr-
elavant answers to the subject matter of the hearing to deny the
supression hearing of the confession.

2.   Even more the trial attorney allowed the government to intro-
duce marital conversations, which is protected by the law of
confidentiality between the Defendant and his wife before he got
arrested and made it public.  Sure the government could argue,
against the law, that the confidentiality laws doesn't apply to
the Defendant since they already broke the F.B.I. promise of
confidentiality of the meeting with him.  The Defendant's attorney
should have moved to redact any marital  material the A.U.S.A. did
not want to use, especially messages that are private and include
spouse intimacy and not related to any investigation.

-1-

3.    The attorney also failed to have the Defendant evaluated or
prepared for the "S.H." and trial by a pyschologist.  The attorney
knew that the Defendant sufferred from axiety and depression and
was on medication.  Then the attorney failed to present to the
Court with the Defendant's medical record especially from the
time he met with the F.B.I. During that time the Defendant was
seeing the pyschologist twice a week, traumatized by the govern-
ment outreach, jobless, homelessness, intentionally deprived
from his children and going through a divorce.

4.    The Defendant's attorney failed to introduce to the court
text messages between the Defendant and his first attorney
"Denbaux"    that shows how really the events of the meetings
with the F.B.I. went as for what the government promised about
confidentiality and no prosecution.  The Government bragged and
made a great deal of ONE text message between "Denbaùx"    and
the F.B.I. agent Castillo in which Costillo said "no promises"
and "Denbaux    replied "I understand."  But the topic of what          ⬅
they were talking about was very ambiguous and showed no relation
to the meeting with the Defendant.  Even the Defendnat didn't know
about such message until the supression hearing.  On the other hand
the Defendant had at least 10 text messages or more (Exhibit text
messages) between him and Denbaux"    where they talked about the
government promises to the Defendant.  The government paraded one
enigmatic text message between Denbaùx    and the F.B.I. agent, while
the Defendant's attorney had more than 10 text messages as clear and
truthful as sun in day light that show with no contention how the
U.S. government (higher ups)gave irrefutable promises    that incuded
no prosecution, confidentaility and assurances of safety.  What's

-2-

more , the Defendant clearly asked his attorney "Denbaux" for
all agreement with the government to be documented and signed
by both sides and "Denbaux" horribly faulted to do that.

5.  The trial attorney failed to keep the supression hearing
sealed.  The hearing got alot of media attention which certainly
affected the trial proceedings.  The hearings main objective was
to preserve the government's promise of confidentiality, so how
you go about that in public as its said you lost your privacy
over a privacy lawsuit.  The Defendant took the stand and a
closed court could have helped him with his anxiety concerning
his and his family's saftey.  An open court proceeding fogged the
Defendant's anxious mind, which failed him to mention major events
as his text messages with his attorney or the death threats he was
subjected to in American Consulate in Beruit and before his meeting
with the F.B.I.

6.  The judge turned the "S.H." to a bench trial where he found
the Defendant guilty as charged and documented that in a supression
opinion.  The trial attorney should have asked the judge to recuse
himself from the case before trial since he stated clearly in the
"S.H." decision, the Defendant was guilty as charged.  The judge
supported his opinion by the Defendnat's attorney "Denbaux"
admissions as a star witness for the government, against his client,
violating the Defendants Constitutional right of privileged attorney
client communication.

7.  The trial attorney should have moved the venue of the trial
after the "S.H." decision got so much attention  by bad media re-
views against the Defendant.

8.  There were too many attempts by the government through their
informants as sting operations, to incriminate the Defendant and

the government failed.  The trial attorney failed to bring such witnesses to the trial, ask for the names of such witnesses about such failed attempts of material support to an F.T.O. or hiring a "Jihadist" for an F.T.O.

9.  The trial attorney failed to produce documents to the jurors and the court where the Defendant warned others of Hizballah and their threats.

10.  The trial attorney's failed to show the court and the jurors the governments failed attempted murder and assassination of the Defendant in Beirut  Lebanon.  The Beirut embacy counsular intentionally and dilberately upon orders from the F.B.I. and other government agencies, confiscated the Defendant's U.S. Passport, preventing him and his two U.S. born chidren from leaving Lebanon, even though they classified his status with "Subjected to  Direct Class Hit, for the U.S. government to intentionally leave the Defendant and his children, who are all U.S. national citizens, subjected to death threats and assassination is direct involvement in such attempts.  The Defendant's attorney should have moved the court to dismiss the indictment because of the governments horrendous actions in putting the Defendant and his family intentionally subjected to grave danger.  The U.S. government already gave the Defendant a death sentence in Beirut, harsher than the 40 year sentence he later got.

11.  There are other minor events where the  government mislead the jurors and the Defendant's attorneys had the evidence to rebut the government and failed.

As when the government said that the Defendant was trying to flee the country before his arrest, and all evidence point that he was going no where. (Trial Trans - 5)

-4-

12. The same arguments and statements mentioned above No 1 through 11 should have been raised during all other court proceedings and the Defendant's attorney failed to do that.

12)

Ground Four:

"Structural and Constitutional right Violations"

1.    Speedy trial violation; after the Defendant was indicted there
was a period of time (Exhibit Docket Sheet) more than 90 days which
were excluded from the speedy trial timing without the Defendant
being aware of such extensions and their justified reasons.   The
Defendant was always pushing his attorney for trial so there were
no reason to give the government a break.   In one incident the
Defendant's public defender attorney was more worried about the
busy schedule of the A.U.S.A. Bove, who was on trial for the
Venuzulan president's relative, than about the Defendant's
constitutional right to a speedy trail.

2.    Failure to object to the venue of count 8 and its realted
erroneuous jury instructions.   The Defendants attorney failed to
move the court to dismiss count 8.   the Defendant did his citizen-
ship in Garden City, New York and its there were the alleged crime
of count 8 happened.   Garden City is not under the jurisdiction
of the Federal court of the Southern District of New York.   The
trial attorney failed to object to the judge's erroneuous instruct-
ion on count 8 venue.   The judge instruction stated the venue of
count 8 is the proper venue by a perpondence of the evidence.
First the government only provided evidence that supported their
narative of the Defendant who lied during his citizenship interview.
The Defendant lied when he answered no to a question if he was part
of a terrorist organization.   Such alleged lies took place in Garden
City, New York only.   If the judge meant by preponderance of the
evidence, the alleged material support to an F.T.O. that took place
in New York City and which the government proved none, then the

-1-

statute for material support is different than the Statute of
International act of terrorism as charged in count 8. In addition
New York City is not an interantional city in respect to Garden
City but rather a national one. The erroneous instruction of count
8 venue should have been raised as a plain error by the Defendant's
attorney and here by this motion raised this issue for the first
time. What's more lying on an immigration application is governed
by a totally different statute than the statute stated in count 8.
The Defendant's attorney should have moved the court to dismiss
count 8 or ask for a direct verdict.

3.  Statute of limitation on all counts as charged:
According to the Defendant basic understanding of the laws re-
spectfully (18 U.S.C. §3282) the government had five years to indict
the Defendant on a non capital offense. The government didn't in-
dict the Defendant untill June 27, 2017 and most of the alleged
crimes happened between 2008 and 2011. Keeping in mind the govern-
ment serious investigation of the Defendant started in July 2013.
The attorney failed to put such defense in front of the court.
Also as for lying on an immigration application, the government
have three years to charge a crime. The subject of statute of
limitations is complicated for the Defendant's basic experience
in the law. But he is very aware that another defendant (United
States v. Alesci Saab) whose terrorism indictment is a copy'paste
of the Defendant's indictment in this case, he was able to prevail
on most charges by following the statute of limitations defense,
of course, as mentioned before, supported by a letter from the
government showing when the alleged crimes ended.

4.  The Defendant's attorney didn't seek proper jury instruction
or otherwise take remedial measures when such instructions were

-2-

denied by the judge.  They failed to ask the court to properly
instruct the jury about the voluntariness of the Defendant's
confession based on a congressional law and Supreme Court
decisions.  The Defendant doesn't understand how his attorneys
failed horribly in making the court apply recognized laws on
admissions and voluntariness of confession.  The attorney should
have seeked a stipulation with the government on such issues,
raised it in a plain error due to the fact that the instructions
were contrary to established federal laws  jury  instruction to
this case.  The attorney's failed to give instructions on the
credebility of the F.B.I. agents testimony. They also failed to
give instructions on the statute of limitations on the legality
of sharing public information, as pictures with U.S. enemies and
other instrcution that can be deduced from "Saab trial".  The
attorney failed to object on all the government interrogatory
questions that violated the Defendant's due process rights.  The
Defendant's attorney failed even to ask the jurors one interrogatory
question as for the voluntariness of confession, the credibility
of the F.B.I. agents, charges' enhancement or others.  The att-
orney failed to object on all instructions concerning count 8 and
giving proper instrcution on conspiracy charge and when it ends.
Also the attorney failed to give instrcutions of political views,
hear say, religious views, public  information and others.
5.  The attorney didn't object to the introduction of marital
conservations, pyschological records and attorney client communi-
cations.  Marital text messages were used extensively by the pro-
secutor in a misleading way.  The Defendant's attorney didn't bother
themselfs to ask the government to redact the message parts they
was not going to use.  Before his arrest the Defendant was seeing

a therapist twice a week and was asked by his therapist to write his thoughts down to discuss them later during theraputical sessions. The government used such notes in a misleading way as if they were directed to the F.B.I. agents that interrogated him. All of such writing were misused and misrepresented to the jury. Although the notes were clear expressions of emotions and thoughts that should never been exposed to the public. Introduction of the whole of marital messages and pyschological notes prevented the Defendant from taking the stand during his trial.

6. The defenses attorney didn't object to the introduction of all evidence from the "Apple" laptop seized from the Defendant. The government and the defense knew very well that the laptop <u>was not functional at the time it was seized</u> and at the time it was presented during the trial. The laptop was never the Defendant's personal computer and was never protected by a password. The laptop was regularly used by the Defendant's family, friends and others. The laptop has been to Lebanon, Canada and other places. The laptop was even at one point in the custody of a government informant and agents (TSA, FBI). As the F.B.I. agents, computer expert and the A.U.S.A. paralegal testified there was no evidence that the Defendant was the one using the laptop during the government's evidence was viewed and there was no crime committed using the laptop. The laptop had more than one million files, 750 K documents and 5.5 K multimediea, all of which,the prosecutor introduced les sthan 50 files. The government only introduced such evidence to mislead the jury, needless presentation of cumulative evidence and inflammatory effect. Such inflammatory files effected the dilberation of the jurors as it did with the judge when he

imagined the Defendant in a "Jihadi" image.

7.   The trial attorneys failed to call experts on the following subjects even with repatitive requests from the Defendant.

Expert on the Middle east politics that could give a fair, moderate and alternative view of where the Defendant was from and counter balance the radical        ˜ view the government tried to give of the Defendant.  Witness expert to evaluate the F.B.I. agents who interrogated the Defendant and their credibility.  There was evidence that the F.B.I. Agents edited their draft notes from the five meetings with the Defendant before his arrest (Shannon testimony "S.H.") concerning their promises.  There were great contradictions between the two F.B.I. agents Castilo & Shannon testimony, cross eximination , 302's reports and drafting notes.  Although the trial attorney didn't cross examine agents Castilo & Shannon more than twenty minutes max.  F.B.I. agents Costilo during trial cross examiniation his most common answers were "I don't understand" "I don't remember" and that's the agent who solely wrote and signed the complaint.  Actually the defense attorney should have moved the court to strike Costilo's tesimony after he showed a weak memory and intellectual during trial.  A witness expert could have shown the contradictions and the unreliability of the agents (Costilo & Shannon).

8.   Failure to object to the introduction of alleged and irrelavant crimes of the Defendant's family.  The prosecutor spent half the trial talking about the Defendant's irrelevant matter.  Not one single member of the Defendant's family is his co-defendant.  Introducing family evidence was unfairly prejudice.  "Unfair prejudice refers to an undue tendacy to suggest decision on an improper

basis, commonly, through not necessarily an emotional one or designed to elicit a response from the jurors that is not just-ified by the evidence." The probative value of family evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury or undue delay, waste of time or needless presentation of accumulative evidence. What's more the prosecution actions, especially during his closing, were unprofess-ional and immoral concerning the family of the Defendant as showing a private picture of the Defendant's dad and his step mom and talking about fake marriage. This same governemt was never able to bring any criminal charges against the Defendant's family when they were living in the United States and they all left voluntarily not as fugitives sneaking out. Then for the same government to talk about such allegations (fake marriage, fake I.D., etc.) as a guilty verdict is the ultimate farce. Even the judge admitted lately during the sentencing (sentencing 1) that the Defendant should not be punished for his family alleged crimes. Should the defense's attorney objected to the introduction of such punative claims, the judge would have agreed and the Defendnat could have a better and fair trial and no unintended prejudice. The jurors would have had way less meaningless, needless and a waste of time evidence, for example when the prosecutor was talking about the Defendant's family history of "illegal" immigr-ation to the United States all the court fell asleep.

9. When the Defendant was arrested, the government appointed a Public Defender attorney, Mrs. Goldenberg. Mrs. Goldenberg in private asked the Defendnat a question and took his answer to the prosecutor who was in a different room. later on trial, the prosecutor introduced what the Defendant alleged said in private to Mrs. Goldenberg as an evidence. Mrs Goldenberg didn't carefully

protect the interest of her client as she "gave him up" to the
F.B.I." as they kept him in their custody overnight. Then she
made it seem for the Defendant as he will be going home the next
day after he met the government. Mrs. Goldenberg promised the
Defendant a different set of regular clothes for the next day
after his arrest. Then the next day after he sat with the
government, the Defendant was moved to M.C.C. and surely without
his new set of clothes but an orange jumpsuit. Mrs Goldenberg
fell for the government's tricks & dragged her client with her.
But at the end its the Defendant who pays for all such mistakes.
Mrs. Goldenberg should not have talked to the government after they
had just broke all their promises to the Defendant the most importantly
the "no prosecution". The defense attorney should have called Mrs.
Goldenberg as a witness on the grounds of the governments never
ending tricks or deception.

10. In his closing argument, A.U.S.A. Bove stated to the jury that
the F.B.I. agents who questioned the Defendant are credible.
A.U.S.A. Bove was specifically pointing at F.B.I. agent Shannon
who was seated on the prosecutors bench the whole trial. Then he
talked of 26 federal plaza and a day care hitting the Oklahoma City
bombing in the 1990's. The F.B.I. agents testified that the Defen-
dant never surveiled the plaza and the internet search on 26 federal
plaza was for the purpose of getting a certificate of conduct from
the F.B.I., requested during that time by this government from the
Defendant for immigration requirements.


Grounf Five: "Trial Stipulation"

The defense attorney failed to discuss all of the trial stipu-
lations with the Defendant. The defense attorneys were stipulating

with the government to convict the Defendant.

1.   There were more than 14 stipulations between the defense attorney and the government.  The defense attorney never discussed any stipulations with the Defendant before he signed it.  All such stipulations were in the best interest of the government and deprived the Defendant from the elements of reasonable doubt.  The stipulations were unfair prejudicial evidence that lowered the standard for the governemt to prove its case.

2.   The stipulations regarding the laptop search should   not been introduced as mentioned before in irrelavant evidence discussions.

3.   Stipulation regarding American Self Storage records should not of been introduced since the N.Y.P.D. Intelligence had made regular visits to the facility.  A stipulation should have been included that nothing illegal was going on there.

4.   A stipulation on Islamic Jihad is part of Hezbollah.  There is no physical or reliable evidence that Hezbellah run an external operation apparatus and all the international operations the government related to Hezbollah were based on newspaper articles and hear say.

5.   The stipulation about C.I.S., C.B.P. translations F.B. and other card blànche by the defense attorney to the government to admit evidence of confussion of issues, needless presentations of cumulative evidence and inflammatory material.

6.   A stipulation regarding the Defendant's lack of U.S. government authorization is actually an agreement of guilty plea on the most important    crime of count 6 & 7.  The stipulation should have been that the government didn't warn the Defendant from violating its sanctions as required by law.  During trial there was no evidence that the Defendant received or sent funds to Hezbollah and

the other services allegedly provided are covered by counts 1 & 2
(material support).   The stipulation was supposed to    dismiss
count 6 & 7 for duplicity.   The defense attorney signed all the
governments stipulations without objections and in return deprived
the Defendant from the element of reasonable doubt, innocence of
certain elements of a crime and made the trial a rail road show.
The defense attorney never even discussed the importance or the
objective of such stipulation with the Defendant.   The Defendant
didn't understand the concept of stipulation and he only became
aware of it during trail.   The Defendant didn't become aware of
some of the other stipulations  until the appeal process and after
he started reading the transcripts.   The Defendnat didn't understand
that a stipulation give solid graound for the government to turn a
newspaper article about Hezbollah covert operations into undisputed
evidence ,the prosecutor talked about in his closing argument.   The
Defendant would never have agreed to any such stipulations.   On
the other hand, the defense attorney didn't submit a stipulation on
irrelevant evidence, inflamatory evidence, missing evidence, hearsay
and the list goes on and elsewhere as the Defendant here is not an
attorney.   All  the stipulations were a dream come true for the
prosecutor and leaped them halfway through to manipulate the court
and the jurors.

Ground Six:

"Appeal Attorney issues"

1.    The Defendant asked the appellate attorney Mr.  Tomao to re-
sign from the case several times and he would not comply.

2.    The Defendant, early on, realized that his appeal attorney has
no experience with terrorism cases.  For example, the Defendant had

to explain to him the terrorism enhancement applied to sentencing.

3.     The Defendant brought to Mr. Tomoa's attention previous attorney's errors and mistakes and he refused to raise such issues on direct appeal and stated that I should reserve for a 2255 motion. But the point was some of those errors were plain error, like introduction of marital text messages, which prevented the Defendant from taking the stand, redacted witness names when the judge gave a jury instruction that the Defendant was able to call any witness or the wrong jury instruction on the venue of count 8.

4.     During the direct appeal process, the Defendant was on quarentine, with very strict lock down in the cell and had no access to a type writer, law library or discovery.  Mr. Tomoa refused to type write the Defendant "supplemental pro se brief" refused to correct trial transcripts refrences and refused to send his paralegal to M.C.C. so that the Defendnat can visually see his 3500material.  Even more Mr. Tomoa ignored the Defendant's request for a laptop access, where other attorney's were able to give their clients such access (United States v. Alexei Saab).

5.     In late 2020, the relation between Mr. Tomoa and his client reached a dead end and he asked him to resign again.  Mr. Tomoa refused to resign.  Before the appeal hearing in one week, Mr. Tomoa called the Defendant and asked him if he still wanted him to represent the Defendant, he responded that he has no option since the hearing is in one week, fearful that he may have to proceed pro se.

6.     Mr. Tomoa refused to have his Defendant    participate in the appeal hearing even though he was aware that the appellate court may have to ask the Defendant about his supplemental pro se brief, especially it was clearly hand written.

GROUND SEVEN:  CONTINUED-ATTACHMENT:

SENTENCING ERRORS.  1.  The sentencing of the defendant was unfair and here he attacked Judge-Pooler's decision from the appellate court as his best defense.

2.  At sentencing the defense attorney failed to have the defendant read the revised PSR before sentencing.

3.  The defense attorney failed to ammend the sentence proposed by the PSR from life to 20 years since the charge that carries life(as a sentence) was dropped after the PSR was written and the PSR recommended all charges to run concurrent with the maximum sentence of 20 years.

4.  The defense attorney didn't properly show the S. 3553 factors to reduce the sentence especially when the government didn't give any credit for the defendant's assistance.  The judge should take into consideration such assistance.  The fact that the defendant had left the crime on his own while nooone was injured should be considered for a reduction of sentence.

5.  The attorney was very unprepared to stop the prosecutor from mis-leading the judge by presenting an ISIS video that was last viewed in 2013, not as the prosecutor said said(the day the defendant was arrested), that the labtop the government was talking about was not functional ! The Nike boots were no the defendants' size !(Trial Exhibit ISIS ANTHEM, SENTENCING TRANS. 1&2)or the defendant was trying to flee where as the judge has ruled during the trial; the defendant was not fleeing(TRIAL TRANS. 5).  The attorney was not aware of the sentence durations of every count.

GROUND EIGHT:

PROSECUTORIAL MISCONDUCT.

1.  The prosecutor was threatening to prosecute the defendant's brother with no probable cause in order to coerce him.

2.  The prosecutor lied about the promises, hid evidence and manipulated other evidence(s).  SEE GROUNDS ONE THRU 9.

3.  AUSA-HOULE lied to the court when he stated all witnesses names were given to the defendant. (TRIAL TRANS-3).

4.  AUSA-BOVE lied tot he court about a fake "Belgian passport." (TRIAL TRANS.7).

5.  The prosecutor failed to preserve evidence as in the SIM card case or deleted messages all of which will exonerate the defendant.

<u>GROUND EIGHT-CONTINUED ATTACHED:</u>

6.   The prosecutors were racist in their actions as the directed the
paralegal to research the seized labtop file for only arabic videos.
As if arabic is the official language of terrorists/terrorism.
7.   Even when the judge ruled that the defendant was not going to flee
(TRIAL TRANS-5) the prosecutor still disobeyed the courts! decision
and said the the defendant was trying to flee during the appeal procedures
and sentencing.
8.   All of such actions and similar ones should have the court dismiss
this case entirely with unfair prejudice.   <u>SEE GROUNDS ONE THRU 9.</u>

<u>GROUND NINE:</u>

<u>MULTIPLICITY CHARGE ERROR</u>

The same evidence the government used to convict the defendant on COUNT
6 and 7 were used to convict him on COUNTS 1 and 2(material support) but
ought to give the defendant 20 years; the sentence applicable to COUNTS
6 and 7.   In 1996 the U.S. Treasury Department Office of Foreign Asset
Control("OFAC") issued regulations implementing these sanctions.   There
was no evidence at trial that OFAC has contacted the defendant to notify
him of these sanctions and this is ineffectiveness of counsel as to
whether or not the issue of the necessary mens rea to violate 50 U.S.C.
S. 1705(a)(TRIAL TRANS-6).

12/ *Ground 7: Sentencing*

1    POOLER, *Circuit Judge*, concurring in part and dissenting in part:

2        I concur with the dispositions in this case with one exception: affirming the

3    sentence. The district court did not err in calculating the Guidelines range, and it

4    articulated various reasons for imposing 480 months—40 years—of imprisonment.

5    Nevertheless, I decline to affirm a sentence that effectively requires Kourani to spend

6    the rest of his adult life in prison, especially when Kourani's actions have not directly

7    injured anyone. Such a disproportionate sentence "shock[s] the conscience." *United*

8    *States v. Rigas*, 583 F.3d 108, 124 (2d Cir. 2009) (internal quotation marks omitted).

9        Other defendants who have committed similar crimes received lesser sentences.

10   *See, e.g.*, Sentencing Memorandum by USA, Minute Entry, *United States v. Abdurasul*

11   *Hasanovich Juraboev*, No. 15-CR-95 (E.D.N.Y. 2017), ECF Nos. 244, 251 (sentencing a

12   defendant who was affiliated with ISIS, wanted to kill President Obama, and schemed

13   to bomb Coney Island to 180 months', or 15 years', imprisonment); Sentencing

14   Submission by USA, Judgment in a Criminal Case, *United States v. Wesam El-Hanafi*, No.

15   10-CR-162 (S.D.N.Y. 2015), ECF Nos. 197, 211 (sentencing a defendant who provided

16   financial support and surveillance information to Al Qaeda to 15 years' imprisonment);

17   Sentencing Memorandum by USA, Filed Judgment in a Criminal Judgment, *United*

18   *States v. Mohamed Ibrahim Ahmed*, No. 10-CR-131 (S.D.N.Y. 2013), ECF Nos. 96, 101

19   (sentencing a defendant to 111 months', or 9.25 years', imprisonment for providing

20   money to and engaging in weapons training with Al-Shabab). These shorter, yet still

12)

Ground 7

21    very serious sentences, for comparable conduct suggest that Kourani's sentence is

22    "greater than necessary to achieve the goals of § 3553(a)." *United States v. Dorvee*, 616

23    F.3d 174, 188 (2d Cir. 2010) (internal quotation marks omitted).

24         Here, had the district court ordered the sentences imposed for each of his

25    convictions to run concurrently, Kourani would have served 20 years in prison and

26    subsequently been deported. This is sufficient to accomplish the goals of imposing an

27    adequate punishment, deterring future criminal conduct, and avoiding unwarranted

28    sentencing disparities. *See* 18 U.S.C. § 3553(a). Instead, Kourani must serve twice that.

29    Although a 20-year sentence is below the Guidelines range, in certain areas of the law,

30    without careful consideration of an individual defendant's circumstances, the

31    Guidelines may "generate unreasonable results." *Dorvee*, 616 F.3d at 188; *see United*

32    *States v. Stewart*, 590 F.3d 93, 153 (2d Cir. 2009) (Calabresi, J., concurring) (noting that

33    the terrorism enhancement is "undeniably broad" and "has dramatic consequences on

34    the applicable Guidelines range"). Growing concern exists about the fairness of the

35    exceedingly high sentencing enhancements on "material support" of terrorism crimes,

36    particularly where the support is nonviolent. *See, e.g.*, Laura Rovner & Jeanne

37    Theoharis, *Preferring Order to Justice*, 61 AM. U. L. REV. 1331, 1348-49 & n.72 (2012)

38    (explaining that sentences subject to the terrorism enhancement tend to be 7.8 times

39    longer than those that are not); James P. McLoughlin, Jr., *Deconstructing United States*

40    *Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for*

2

[handwritten: (2)]

[handwritten: Comment 7:]

41    *Foreign Terrorist Organizations*, 28 LAW & INEQ. 51, 57-58 (2010) (explaining how the

42    terrorism enhancement results in sentences "often disproportionate to the conduct of

43    conviction" (footnote omitted)).

44        Ultimately, Kourani received a fair trial and was properly adjudicated guilty by a

45    jury. His crimes were undeniably serious. It is not lost on me that Kourani's actions

46    could have culminated in far more injurious results. Nevertheless, they did not, and

47    accordingly, the sentence imposed is disproportionately high.

## EXHIBIT TEXT MESSAGES

The defendant was not able to retrieve the text messages between him
and his previous attorney(DENAUX) because he doesn't have the
discovery.  In other words:  THE GOVERNMENT DID NOT GIVE ME THE DISCOVERY
(THE DEFENDANT) AFTER HE PROCEEDED IN PRO SE.

Image



**Photo Id:** 10202817809158600
**Id** 10202817809158600
**Photo** http://scontent.xx.fbcdn.net/v/t34.0-12/10248951_10202817809158600_1794281277
_n.jpg?oh=5158e3e32086168aac29c9821a817993&oe=66BC35EA
**Uploaded** 2014-04-16 22:25:24 UTC
**Upload Ip** 109.110.118.146
**Taken** Unknown
**Camera Make**
**Camera Model**
**Orientation** 1

In one of his tricks, the prosecutor introduce this F.B picture,
one of many, for a person that has the same name of the defendant!
To suggest to the jeuror, it's the defendant.

GOVERNMENT
EXHIBIT
406-F
17 Cr. 417 (AKH)

Trial Exhibit-2. F.B. of Bilal Kassani



This gentleman was 12 years old when the defendant deleted a message with him, few years later he posted their pictures. A prosecutor used this picture to convict the defendant! 40 years sentence for couple irrelevant pictures!

GOVERNMENT
EXHIBIT
406-B
17 Cr. 417 (AKH)
8.697 / 33.771





This man; in the rural organization of Hizbollah, "Amal party" gave orders to defendant to do a military training in the most trained unit in Hizbollah, when he was 12 or 13 years old! 10 years sentence for a picture.

GOVERNMENT
EXHIBIT
406-A
17 Cr. 417 (AKH)

Trial Exhibit 2   FB of Bilal Hourani

Image



Photo Id: 10202783882230448
Id 10202783882230448
Photo http://scontent.xx.fbcdn.net/v/t34.0-12/10168497_10202783882230448_1930810186
_n.jpg?oh=1bac6a568d72875dab4ff8b6650126ef&oe=66A65EDD
Uploaded 2014-04-12 07:38:29 UTC
Upload Ip 109.75.67.191
Taken Unknown
Camera Make
Camera Model
Orientation 1
Exposure 0/1

Those "Benjamins" were never belong to the defendant! Why
Ifispecture introduced to this trial? No one

Page 6 of 14

knows, sure its inflammatory!

GOVERNMENT
EXHIBIT
406-C
17 Cr. 417 (AKH)

Trial Exhibit 2 - F.B of Bilbol Kourani

Image



Photo Id: 10202812780712892
Id  10202812780712892
Photo  http://scontent.xx.fbcdn.net/v/t34.0-12/p720x720/10178322_10202812780712892_87
7904172_n.jpg?oh=3aaff739b1c3bb1b9c8b7d3b87980d75&oe=66E3A335
Uploaded  2014-04-16 06:31:23 UTC
Upload Ip  109.110.118.146
Taken  Unknown
Camera Make
Camera Model
Orientation  1

Who is this guy? Why he was in the defendant's
trial? No one knows, But the picture sure is
inflammatory

GOVERNMENT
EXHIBIT
406-E
17 Cr. 417 (AKH)

Trial Exhibit 3 - F.B "Sadek"

Image



| | |
|---|---|
| **Photo Id:** | 290327608009320 |
| **Id** | 290327608009320 |
| **Title** | |
| **Photo** | http://scontent.xx.fbcdn.net/v/t31.0-0/p180x540/14068459_290327 608009320_1508056211078577207_o.jpg?oh=c3849c92c888c6a5 87c872cde2de301e&oe=66834009 |
| **Link** | http://www.facebook.com/photo.php?fbid=290327608009320&set =a.129864787388937.1073741828.100010962481480&type=3 |
| **Upload Ip** | 94.187.88.66 |
| **Album Name** | Mobile Uploads |
| **Uploaded** | 2016-08-26 17:49:44 UTC |
| **Modified** | 2016-08-26 17:49:13 UTC |
| **Camera Make** | |
| **Camera Model** | |
| **Orientation** | 0 |
| **Original Width** | 1280 |
| **Original Height** | 0 |
| **Exposure** | |
| **Fstop** | |
| **Iso Speed** | 0 |
| **Focal Length** | |
| **Tags** | |
| **Subject Id** | 551231921 |
| **Subject Name** | Mohammad Sadek |
| **Creator Id** | 100010962481480 |

GOVERNMENT
EXHIBIT
407-C
17 Cr. 417 (AKH)

No where the defendant is in this picture!

Trial Exhibit. ISIS Anthem

| | |
|---|---|
| DATE VIEWED: | Apr. 25, 2013 |
| TIME VIEWED: | 23:33:43 UTC |
| PARTICIPANTS: | Chorus<br>Singer |
| ABBREVIATIONS: | [U/I] - Unintelligible in English<br>[U/A] - Unintelligible in Arabic<br>*Italics*- Words spoken in English<br>[PH] - Phonetic rendering |

When the judge during the sentence asked when the defendant last viewed this video, Boose infered it was watched the day the defendant was arrested, to support a misleading fact that the defendant was still active in Hizbollah. Here this evidence shows that it was last viewed in 2013 and this video is an ISIS propaganda

Trial Exhibit ISIS Anthem

| | PARTICIPANT | TRANSLATION/TRANSCRIPTION | TRANSCRIPTION |
|---|---|---|---|
| 1. | Chorus | Show us your wrath, come, show us | أرونا بطشكم هيا أرونا |
| 2. | Chorus | Bring your folly and fill the prisons with us | وطيشوا وأملؤوا منا السجونَ |
| 3. | Chorus | And harm us with all your might | وآذونا بكل قوى لديكم |
| 4. | Chorus | And bring even more; we remain patient | وزيدونا فإنا صابرون |
| 5. | Singer | On the route of jihad, we are resolute | على درب الجهد لنا ثبات |
| 6. | Singer | With grace given to Allah, savior of the faithful | بحمد الله منجي المؤمنين |
| 7. | Singer | We will march despite the hardship | سنمضي رغم ضيق الحال حتي |
| 8. | Singer | Until Allah differentiates the group of the truthful [Translator's note: From the group of the none truthful] | يميز الله منا الصادقين |
| 9. | Chorus | Would someone report us to the tyrants? | ألا من مبلغ عنا طغاةً؟ |
| 10. | Chorus | Ruling over the land of the peninsula | على أرض الجزيرة حاكمين |
| 11. | Chorus | That our swords are parched | بأن سيوفنا متعطشات |

ISIS propaganda talking about Saudia Arabia
Nothing To do with this case. A provocative song only!

Trial Exhibit ISIS Anthem

| PARTICIPANT | TRANSLATION/TRANSCRIPTION | TRANSCRIPTION |
|---|---|---|
| 24. Chorus | That is Salulia, treasonous, and unfaithful | سلوليا نحوسيا خثونا |
| 25. Singer and Chorus | We have targeted the Russians before | وكنا قد قصدنا الروس قبلا |
| 26. Singer and Chorus | When they were an established power | وكانوا قوة متمكنين |
| 27. Singer and Chorus | And with God's help we out maneuvered them | فكدناهم بحول الله كيدأ |
| 28. Singer and Chorus | So, they became a disarrayed few | فصاروا قلة متهالكين |
| 29. Singer and Chorus | And Allah kept but a dispersed small number of them | وأبقى الله منهم شرذمات |

Hizballah fought along the Russian in Syria !

ISIS fought against Russian in Syria th Afganistan,
Misleading, inflamatory evidence. The government didn't
need a $550/hour expert to educate them but to teach
them tricks.

Trial Exhibit 5 Nike Boot



The prosecution was very aware who these Boots for. But NEO)
tried hard to fit the defendant in them (Boots sig 10, defendant sig 11)
Page 1 of 1

③ Don't fit, you must Aquit ☞

*Trial Exhibit eBay Search*

ebay

Hi! Sign in or register | Daily Deals | Gift Cards | Help & Contact

Sell | Orders | My eBay

Shop by category

gun

Advanced

**Black Friday Deals Are Back!**

Related: real gun | bb gun | airsoft gun | guns | airsoft gun | air gun | pistol | toy gun | knife | gun safe | air...

All Categories

☐ Include description

View ☐

**Categories**

All

Sporting Goods

Hunting Gun Holsters

Gun Cleaning Supplies

Spring Airsoft Pistols

Spring Airsoft Rifles

Toys & Hobbies

Military & Adventure Action Figures

Other Military Models & Kits

Dart Guns & Soft Darts

Clothing, Shoes & Accessories

Men's T-Shirts

Women's Tops & Blouses

Everything Else

Personal Security Stun Guns

see all

**Guaranteed Delivery**

⦿ No Preference

◯ 1 day shipping

All Listings | Auction | Buy It Now

2,225,692 results

Accepts Offers

Save this search

**Price**

Under $6.00 | $6.00 - $18.00 | Over $18.00

Sort



**Smith & Wesson S&W M&P Shield 9mm 40 & Shield M2.0 IWB Concealed Gun Holster**

SHIPS SAME DAY OR NEXT - INCLUDES FREE ALLEN KEY

Brand New

**$18.50**

or Best Offer

Free Shipping

Free Returns

1,075 Sold

FAST 'N FREE

Guaranteed by **Mon, Apr. 15**

⭐ Top Rated Plus

**Bulldog Right handed Leather Gun Holster for Smith & Wesson M&P Shield 40 & 9mm**

Brand New

70 product ratings

**$21.97**

Buy It Now

Free Shipping

Free Returns

214 Sold

FAST 'N FREE

Guaranteed by **Sat, Apr. 13**

⭐ Top Rated Plus

*62 pages of this misleading evidence was presented to the appeal court & trial*

**Forget You're Wearing It!**
SHIPS SAME DAY OR NEXT - CAN BE WORN W/ SHIRT TUCKED IN

Brand New

**$17.79**
Buy It Now
**Free Shipping**
**Free Returns**
**37+ Sold**

FAST 'N FREE
Guaranteed by **Mon, Apr. 15**
✪ Top Rated Plus

**VIPERTEK PINK VTS-880 50 BV Mini Rechargeable LED Police Stun Gun + Taser Case**
50 Billion New In Box + FREE Case + Lifetime Warranty

Brand New

**$7.95**
Buy It Now
**Free Shipping**
**10,000+ Sold**

FAST 'N FREE
Guaranteed by **Sat, Apr. 13**

**Concealed Carry Inside the Waistband Pistol Gun Holster IWB**

Brand New

**$14.99 to $15.99**
Buy It Now
**Free Shipping**
**Free Returns**
**48+ Sold**

FAST 'N FREE
Guaranteed by **Mon, Apr. 15**
✪ Top Rated Plus

**Magnet Concealed Gun Pistol Mount Holder 25lb Rating (Buy more and save more)**
Brand New

Its obvious here, no one is looking to buy a gun on eBay, its just what eBay algorithem is suggesting. Notice the prices! AUSA misled the court again!

Exhibit on Mr. Bove Misleading the Court
(side bar)

1       THE COURT:  Mr. Bove, you were arguing that the

2   father's application relating to citizenship in Belgium was

3   fraudulent?

4       MR. BOVE:  That it was false, yes.

5       THE COURT:  What's the proof of that?

6       MR. BOVE:  The defendant admitted that to the FBI in

7   the interviews at Seton Hall.

8       THE COURT:  Was that an admission.

9       MR. BOVE:  Yes.

10      THE COURT:  OK.

11      (Continued on next page)

12

13

14   Mr. Bove make up evidence on the fly! No

15   such passport exist, neither did the

16   defendant talk about a "Belgium" passport

17   in any 302 reports!

18

19

20

21

22

23

24

25

*Trial Trans.-1-*

1   specific weapons that he was trained on.  So, it's not just,

2   the evidence is not just what the agent said.

3          THE COURT:  And there's a picture in particular of him

4   brandishing a machine gun under the photographs of Ayatollah

5   Khomeini and --

6          MR. BOVE:  That photograph, your Honor, is from a

7   Facebook record and it is not a photograph of the defendant

8   just so we're clear.  And so, we're not relying on that for

9   purposes of this was argument.  What we are relying on though

10  is that it's Government Exhibit 807.  It's a packet of photos

11  of weapons that the agents showed to the defendant at Seton

12  Hall.  And he said, I'm concerned about initialing them myself

13  but Mr. Denbeaux can put a mark on them.  These are the ones

14  that are used.  So he identified an Glock, an MP5, an AK-47, a

15  PKM, that belt-fed machine gun and a rocket propelled grenade

16  launcher.  So, that's a physical document, Government Exhibit

17  807, that corroborates what he said in the interview.

18          In addition, there are travel records in evidence that

19  show that the defendant went to Lebanon in June of 2011 just

20  before the training started.  He left in August right after.

21  So, we're entitled at this phase to all the inferences in our

22  favor.  So, the agents' testimony is enough but there is some

23  corroboration here and I just described it.

24          THE COURT:  Thank you, Mr. Bove.

25          I deny the motion with regard to Three, Four and Five

1    all the activities of the conspiracy or even all the members of

2    the conspiracy.  A conspirator's liability is not measured by

3    the extent or duration of his participation or whether he

4    joined at the outset of the conspiracy or at some later time.

5    Indeed, each member may perform separate and distinct acts and

6    may perform them at different times.  Some conspirators may

7    play major roles, others minor roles.  Sometimes, a single act

8    may be enough to bring a defendant within the membership of a

9    conspiracy, provided that the defendant was aware of the

10   conspiracy and knowingly associated himself with its criminal

11   aims.  There must be knowing association; that is, one must be

12   aware of the conspiracy and knowingly participated in it, with

13   intent to bring about its illegal purpose.  The government must

14   prove all these things beyond a reasonable doubt.

15        Once someone knowingly and intentionally joins the

16   conspiracy, that person remains a conspirator until either the

17   conspiracy ends or the person leaves the conspiracy.

18        Mere association with one or more members of a

19   conspiracy, or even helping another member of a conspiracy,

20   does not automatically make the defendant a member.  Mere

21   knowledge or acquiescence without intentional and knowing

22   participation in the unlawful plan is not sufficient.  What is

23   necessary is that a defendant aid or participate in a

24   conspiracy with knowledge of at least one of its unlawful

25   purposes and with the intention to help accomplish that

1   family members.

2          MS. HOULE:  Most of them are, especially the ones that

3   the special agents were cross-examined about.  And we turned

4   over all the 302s from those interviews.  Those people are in

5   United States, they're in New York, for the most part.  He

6   absolutely had an opportunity to call those people.

7          MR. SCHACHT:  Judge, I can't call those people because

8   they don't have any relevant testimony.  The government would

9   have objected, and you would have rightfully sustained the

10  objection.  I can't call a witness to say, I've never seen the

11  defendant commit a crime.

12         MS. HOULE:  If it wasn't relevant, then why did he

13  cross-examine all of the FBI agents about what those people

14  would have said, including over our objection with regard to

15  the defendant's brother, Moustapha?  It's page 65 of the

16  transcript.

17         MR. SCHACHT:  Judge, the reason I asked FBI agents

18  about who they'd spoken to is because I wanted to point out --

19  and I'm going to point out in summation -- that the FBI has

20  conducted a very thorough, complete investigation, and, as a

21  result of that complete and thorough investigation, they've

22  been unable to bring a single witness to court to implicate --

23         THE COURT:  I don't think that's a proper argument.

24         MR. SCHACHT:  It's not proper for me to say the FBI

25  has conducted a good investigation?

1    think, after interviewing those eight people, he conducted some

2    further investigation as a result of interviewing those eight

3    people.  And I just want to be able to say the government has

4    not brought any cooperating witnesses, or any eyewitnesses, or

5    any witnesses who can say that they've seen or heard my client

6    do anything illegal.

7              MS. HOULE:  Your Honor, the defense does know who all

8    of those witnesses were who were interviewed --

9              THE COURT:  Excuse me.  Why don't I just take out the

10   middle sentence and keep the rest?

11             MS. HOULE:  I'm sorry, your Honor, but we don't think

12   that that's sufficient.  The point is that he had an equal

13   opportunity or lack of opportunity to call these witnesses.

14             THE COURT:  I'm not sure.  I don't know.

15             MS. HOULE:  I'm sorry, your Honor, but I would also

16   note that it's not limited to the cross-examination of Special

17   Agent Costello.  This came up, as well, in the

18   cross-examination of Special Agent Ganci, and there, the

19   defense went so far as to elicit hearsay about what one of

20   those witnesses would say about the defendant's membership in

21   Hezbollah.

22             THE COURT:  I don't know if the defendant had an

23   ability to get information from these witnesses.

24             MS. HOULE:  They're his family members, your Honor.

25             THE COURT:  Not all these people were talking about

*Trial - Trans - 4 -*

know this not just because the defendant described it, but at

the meetings, he actually had his lawyer initial the places

that he surveilled.  So let's talk about them.

    The first two, 26 Federal Plaza and 335 Adams Street,

the Secret Service offices.  And you can see in the top of the

screen, that the defendant actually conducted a Google search

in March 2013 for 26 Federal Plaza.  This is where the Internet

evidence corroborates the evidence of what the defendant was

doing here, it corroborates his admissions.

    Now, the defendant said at Seton Hall what he did for

these two buildings, ultimately, was to download some images

from Google Earth and bring them back to Fadi, so they could

use them in an attack plan.  That's confirmed by the notes

entry, which says:  Everything else of Google Earth, online

research was true.  The defendant told the truth about what he

did to help the IJO target these two facilities.

    Keep in mind what was going on at these two places.

335 Adams Street, Secret Service offices, classified

information handling and a joint operations center, the type of

place where leaders, and law enforcement, and the military get

together in a case of an emergency.  On the right side of the

screen is 26 Federal Plaza.  Those are some of the features of

that building that I've already touched on.  Thirty federal

agencies, more classified information, another operations

center, and a daycare center.  These are the places the

*Trial — Trans. —4—*

it clear that he understood the enormous magnitude of what this

terrorist organization had in mind.  There are a lot of

government buildings in New York City.  The defendant chose 26

Federal Plaza.  Across the street from where you are sitting

right now, one of the largest federal buildings in the country,

a federal building with a daycare center and a playground

outside.  The defendant chose armories, places where the

military stores weapons and equipment to be used to protect the

city in response to a terrorist attack.  The defendant chose

places where classified information is stored and he also chose

places where people work to protect infrastructure that is so

critical and so critical to this city, things like bridges,

tunnels, train stations, utilities.

        Ladies and gentlemen, this wasn't an accident.  These

targets were not random.  The defendant was a sophisticated

terrorist and he was helping the IJO position itself to conduct

a crippling attack here in the city.

        Now, these things that the defendant did for Hezbollah

make him guilty of the charges in the indictment.  And you know

that he did those things.  You know that from his laptop.  You

know it from his e-mail accounts.  You know it from the

Facebook records.  You know it from the evidence that was

seized from the defendant's apartment.  You also know that the

defendant did these things because he confessed five separate

times.  In 2017 the defendant got a lawyer to set up some

Costello - Direct

*Trial Trans - 5 -*

(side bar)

THE COURT:  What's the basis of the objection?

MR. SCHACHT:  I have multiple bases.  The first one is his conversations with his supervisor are hearsay, unless they're offered for some reasonable --

THE COURT:  Ms. Houle.

MS. HOULE:  I didn't ask about the specifics of his conversation with his supervisor, your Honor.  I asked if he had escalated the information about the defendant's intent to flee.  I believe that that's relevant, particularly, since defense counsel has made arguments regarding whether the FBI should have arrested the defendant.

THE COURT:  That's so much of that statement you're OK with.

MR. SCHACHT:  Well, I object first of all, to the use of the word "flee" or "flight".  I've never in my --

THE COURT:  Well, that's his words.  I'll tell the jury --

MR. SCHACHT:  In 30 years of, a defense lawyer never calls the FBI and says my client's fleeing.

THE COURT:  So, you object to that as well?

MR. SCHACHT:  It's not flight.  Flight is when someone secretly runs away.

THE COURT:  I think I'm going to sustain the objection.

*Trial. Trans. 5 -*

take it public before he was arrested.

The next threat is, I'm going to go to Lebanon, on May 17th, and this is where that collect info entry in the notes matters.  He's collected information and intelligence from the FBI at these meetings, and he's threatening to take it back to Lebanon to Hezbollah.

June 1st, this is the defendant's arrest, and here you can see the laptop, the go bag, the notes document, and you can see the combat boots that were seized in the defendant's apartment, because he was getting prepared to go back to Hezbollah and go back and fight.

After the defendant was arrested, he gets a new lawyer, and he decides to come in and talk to the government another time, and he signs an agreement.  That agreement says nothing about confidentiality, because that was not what was motivating the defendant.  The agreement did say that the government may use statements made by the defendant, the client, at the meeting to rebut any evidence or arguments offered by or on behalf of the defendant.  And that provision is important because that's why you heard about what happened in this meeting, because when Mr. Schacht opened in this case, he said, look, my client went to Seton Hall, he didn't tell the truth, he didn't say all the things that happened, it wasn't all true, he was trying to trick them.  That is contradicted directly by this meeting, because the defendant sat down --

*Trial Trans 6—*

```
 1                   (side bar)

 2                   THE COURT:  How is Count Seven different from Count

 3      Two?

 4                   MR. SCHACHT:  Count Two?

 5                   MS. HOULE:  The object of the conspiracy is simply as

 6      to Count Seven that the object of the conspiracy in Count Two

 7      is to provide material support and resources and for Count

 8      Seven it's to violate the executive order regulations that your

 9      Honor just described.

10                   THE COURT:  How do you attempt a conspiracy -- OK.

11      Sorry.

12                   (Continued on next page)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    come.  Because we just don't know what happened with the

2    information that we provided, nor do we know how much

3    information the defendant actually did provide.

4          Again, he admitted to a variety of things in Seton

5    Hall.  I think there's more than enough in the record for you

6    to conclude that he also withheld some of the most serious

7    things that he passed on to this organization.  And we just are

8    not in a position to really even evaluate the extent of what

9    could happen based on that information, other than to know that

10   it presents an ongoing risk.  That's another feature of this

11   that warrants the maximum available punishment.

12         I haven't said anything yet about the naturalization

13   fraud, what it means to abuse the process of immigration.  And

14   you've seen it, the evidence supports a chain of that, starting

15   in 2000, when the defendant's father traveled here illegally

16   over the U.S./Mexico border on behalf of Hizballah, and

17   basically set up a nucleus based on a fraudulent marriage that

18   allowed the defendant to come here, establish a false cover as

19   a student, as a counterfeit --

20         THE COURT:  We're not going to punish Mr. Kourani for

21   the crimes of his father.

22         MR. BOVE:  That's absolutely right, Judge.

23         THE COURT:  So we're talking about what he did.  And

24   he lied about his membership.  He didn't disclose that he was a

25   member of Hizballah.



1  it was still in his laptop on the day he was arrested speaks to

2  his state of mind on that day and today as well; that this is a

3  man who has committed himself to supporting Hizballah.

4  THE COURT:  This is in response to Mr. Schacht's point

5  that there is no further evidence of criminality.

6  MR. BOVE:  That's right, Judge.  This is not a man who

7  stopped this crime.  This is a man who decided in 2017 that he

8  had a deal he wanted to make to get some benefits, a game to

9  play with Mr. Denbeaux to try and extract something from the

10  FBI, and so he would barter some information to try and win.

11  He lost.

12  When this man was arrested, in his apartment were

13  combat boots, yes, made by Nike, but, nevertheless, combat

14  bats.  His laptop his searches -- or website visits for places

15  like militaryboots.com.  He viewed another web page with the

16  title Men's Hot Weather Tactical Combat Boots.  Why does the

17  climate matter?  Because the defendant was getting ready to go

18  back to Lebanon and to join Hizballah in conflict, in combat in

19  Syria.  There are searches on his laptop as he follows

20  Hizballah's activities in Syria.  Mr. Denbeaux called the FBI

21  after the Seton Hall interviews were concluded.

22  THE COURT:  After the what?

23  MR. BOVE:  After the Seton Hall interviews were

24  concluded, Mr. Denbeaux called Special Agent Costello, and he

25  said, My client thinks that the best thing for him to do is

1    obligation to protect the public doesn't stop at our border.

2    It doesn't matter much --

3        THE COURT:  We're protected.  And if a person is at

4    all likely to commit criminality is small.

5        MR. BOVE:  Well, Judge, that's what distinguishes this

6    terrorism case from the types of violent crime cases that

7    you've just cited from your past experience.

8        The defendant is ideologically committed to this

9    cause, a cause of harming the United States and creating

10    violence on behalf of this organization around the world.

11        This is something from his laptop, Judge.  This is

12    what motivates the defendant:  Fill the prisons with us, and

13    harm us with all your might, and bring even more.  We remain

14    patient.  On the route of Jihad, we are resolute.

15        Judge, that is the defendant's mindset.

16        THE COURT:  How recent were those messages?

17        MR. BOVE:  That's seized from the laptop that was in

18    his apartment.  That is a video, Judge.

19        THE COURT:  But do we know when the message was sent

20    to him?

21        MR. BOVE:  We know that it was a video on his laptop

22    on the day he was arrested.  That is the type --

23        THE COURT:  But we don't know when that video was put

24    into his laptop, do we?

25        MR. BOVE:  No, Judge.  But I submit that the fact that

Email: amanda.houle@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Emil Joseph Bove , III**
US Attorneys Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2444
Fax: (212) 637-2443
Email: Emil.Bove@usdoj.gov
*ATTORNEY TO BE NOTICED*

*Exhibit Docket Sheet*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/31/2017 | | SEALED ORAL ORDER as to Sealed Defendant 1. (Signed by Magistrate Judge Katherine H. Parker on 5/31/2017)(dif) Modified on 6/13/2017 (dif). [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 05/31/2017 | 1 | COMPLAINT as to Ali Kourani (1). In Violation of 18 U.S.C. 2339B, 2339D, 924 (o), 1425 (a); 50 U.S.C. 1705 (Signed by Magistrate Judge Katharine H. Parker) (dif) [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 06/01/2017 | | Arrest of Ali Kourani. (dif) [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 06/02/2017 | 3 | CJA 23 Financial Affidavit by Ali Kourani. (Signed by Judge Magistrate Judge Barbara C. Moses) (Federal Defender Peggy Cross-Goldenberg Appointed) (dif) [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 06/02/2017 | 4 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Ali Kourani. Peggy Cross-Goldenberg for Ali Kourani appointed.. (Signed by Magistrate Judge Barbara C. Moses on 6/2/2017)(dif) [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 06/02/2017 | 5 | Minute Entry for proceedings held before Magistrate Judge Barbara C. Moses: Initial Appearance as to Ali Kourani held on 6/2/2017., Deft Appears with Federal Defender Peggy Cross-Goldenberg and AUSA Emil Bove, III and Amanda Houle for the government. Detention on Consent w/o Prejudice; ( Preliminary Hearing set for 7/5/2017 at 10:00 AM before Judge Unassigned.) (dif) [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 06/02/2017 | 6 | SEALED DOCUMENT as to JOHN DOE.. (Signed by Magistrate Judge Gabriel W. Gorenstein on 6/2/2017)(dif) [1:17-mj-04151-UA] (Entered: 06/13/2017) |
| 06/28/2017 | 7 | INDICTMENT FILED as to Ali Kourani (1) count(s) 1, 2, 3, 4, 5, 6, 7, 8. (jm) (Entered: 06/29/2017) |
| 06/28/2017 | | Case Designated ECF as to Ali Kourani. (jm) (Entered: 06/30/2017) |
| 06/30/2017 | 8 | NOTICE OF ATTORNEY APPEARANCE: Sabrina P. Shroff appearing for Ali Kourani. Appearance Type: Public Defender or Community Defender Appointment. (Shroff, Sabrina) (Entered: 06/30/2017) |
| 07/02/2017 | 9 | NOTICE OF ATTORNEY APPEARANCE Emil Joseph Bove, III appearing for USA. |

| | | (Bove, Emil) (Entered: 07/02/2017) |
|---|---|---|
| 07/03/2017 | 10 | NOTICE of INTENT TO USE FOREIGN INTELLIGENCE SURVEILLANCE ACT INFORMATION as to Ali Kourani (Bove, Emil) (Entered: 07/03/2017) |
| 07/07/2017 | | Minute Entry for proceedings held before Judge Alvin K. Hellerstein:Arraignment as to Ali Kourani (1) Count 1,2,3,4,5,6,7,8Ali Kourani (1) Count 1,2,3,4,5,6,7,8 held on 7/7/2017 Not Guilty. Deft. pres. w/attys. Sabrina Shroff and Peggy Cross-Goldenberg; AUSAs Bove and Amanda Houle pres.; Court reporter Jennifer Thun pres.; Deft. enters a plea of not guilty to the indictment; Next PTC is set for 9/7/17 at 11:00 a.m.; Time excluded until 9/7/17; in the interest of justice; Deft. contd. remanded. (jw) (Entered: 07/10/2017) |
| 07/19/2017 | 11 | NOTICE OF ATTORNEY APPEARANCE: Alexei Marc Schacht appearing for Ali Kourani. Appearance Type: Retained. (Schacht, Alexei) (Entered: 07/19/2017) |
| 08/01/2017 | 12 | LETTER by USA as to Ali Kourani addressed to Judge Alvin K. Hellerstein from Emil Bove dated August 1, 2017 re: Protective Order Document filed by USA. (Attachments: # 1 Text of Proposed Order)(Bove, Emil) (Entered: 08/01/2017) |
| 08/03/2017 | 13 | STIPULATED PROTECTIVE ORDER as to Ali Kourani...regarding procedures to be followed that shall govern the handling of confidential material.... (Signed by Judge Alvin K. Hellerstein on 8/2/2017)(ft) Modified on 8/3/2017 (ft). (Entered: 08/03/2017) |
| 08/09/2017 | 14 | TRANSCRIPT of Proceedings as to Ali Kourani re: Conference held on 7/7/17 before Judge Alvin K. Hellerstein. Court Reporter/Transcriber: Jennifer Thun, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/30/2017. Redacted Transcript Deadline set for 9/11/2017. Release of Transcript Restriction set for 11/7/2017. (McGuirk, Kelly) (Entered: 08/09/2017) |
| 08/09/2017 | 15 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ali Kourani. Notice is hereby given that an official transcript of a Conference proceeding held on 7/7/17 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 08/09/2017) |
| 08/23/2017 | 16 | LETTER by USA as to Ali Kourani addressed to Judge Alvin K. Hellerstein from Emil Bove dated August 23, 2017 re: Adjournment Request Document filed by USA. (Bove, Emil) (Entered: 08/23/2017) |
| 08/30/2017 | 17 | ORDER as to Ali Kourani ( Pretrial Conference set for 12/8/2017 at 11:00 AM before Judge Alvin K. Hellerstein.), ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Ali Kourani. Time excluded from 9/7/17 until 12/8/17. IT IS HEREBY ORDERED that the September 7, 2017 conference is adjourned until December 8, 2017 at 11:00am. IT IS FURTHER ORDERED that the time between September 7, 2017 and December 8, 2017 is excluded in the interest of justice under the Speedy Trial Act. (Signed by Judge Alvin K. Hellerstein on 8/25/17)(jw) (Entered: 08/31/2017) |
| 12/07/2017 | 18 | ORDER as to Ali Kourani. TO: Concerned Parties. FROM: Brigitte Jones, Courtroom |

Ali Koar
USP Marion
P.O. Box 1000
Marion, IL 62959

March 3rd, 2023

79 legal pages

CERTIFIED MAIL

7021 2720 0001 8199 1541

U.S. POSTAGE PAID
MARION, IL
62959
MAR 10, 23
AMOUNT
$0.00
R2305K132136-12

RDC 04     10007




Pro Se
IF

RECEIVED
MAR 16 2023
PRO SE OFFICE

RECEIVED
MAR 15 2023
CLERK'S OFFICE
S.D.N.Y



U.S. District Court
Southern District of New York
Clerk of the Court
500 Pearl St
New York, NY 10007

79196-054
Clerk Of The Court
S.District OF NEW YORK
500 Pearl ST
US District Court
NEW YORK, NY 10007
United States